IRELL & MANELLA LLP
Morgan Chu (70446) (mchu@irell.com)
Benjamin W. Hattenbach (186455) (bhattenbach@irell.com)
Melissa R. McCormick (180384) (mmccormick@irell.com)
Richard W. Krebs (278701) (rkrebs@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Tessera, Inc.*

FOLEY & LARDNER LLP
Eileen R. Ridley (151735) (eridley@foley.com)
555 California Street, Suite 1700
San Francisco, California 94104-1520
Telephone: (415) 438-6469

Matthew B. Lowrie (*Pro Hac Vice*) (mlowrie@foley.com)
Aaron W. Moore (*Pro Hac Vice*) (amoore@foley.com)
111 Huntington Ave, Suite 2600
Boston, Massachusetts 02199-7610
Telephone: (617) 342-4000

*Attorneys for Defendant Sony Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC., | Case No. 5:11-CV-04399-EJD (HRL) |
| Plaintiff, | JOINT CASE MANAGEMENT STATEMENT AND DISCOVERY PLAN |
| v. | |
| SONY CORPORATION, | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9(a), and the July 1, 2011 Standing Order For All Judges Of The Northern District Of California, Plaintiff Tessera, Inc. ("Tessera") and Defendant Sony Corporation ("Sony"), by and through their counsel of record, hereby respectfully submit this Joint Case Management Statement And Discovery Plan ("Joint Statement").

On January 13 and January 25, 2012, counsel for Tessera and Sony met and conferred by telephone regarding the submission of this Joint Statement.

## JOINT CASE MANAGEMENT STATEMENT

**1. JURISDICTION AND SERVICE**

Sony has been served. No party has challenged personal jurisdiction or venue in this case. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). Tessera is incorporated in Delaware with its principal place of business in San Jose in the State of California, and Sony is a corporation existing and operating under the laws of Japan with its principal place of business in Tokyo. The amount in controversy in this case is greater than $75,000.

**2. FACTS**

   A.   Tessera's Position

The Plaintiff, Tessera, is a company whose business includes the development of semiconductor packaging technologies. The PTO has awarded Tessera hundreds of patents. Many of the largest companies in the semiconductor industry, including Intel, Texas Instruments, and Motorola, have signed patent license agreements with Tessera, whose terms grant them limited licenses under specified circumstances to practice certain Tessera patents. Tessera receives royalties on billions of semiconductor packages annually.

The Defendant, Sony, is one of the semiconductor companies that entered into a license agreement with Tessera involving hundreds of Tessera's patents and other technology. Tessera and Sony entered into this Agreement in October 1997. The parties subsequently supplemented the Agreement by an October 1997 First Addendum and by a January 2004 Second Addendum.

Under the Agreement, Tessera has the right to examine and audit all records of Sony that may contain information bearing upon the amounts due under the Agreement. In August 2010, the Connor Group, an independent third party auditing firm, conducted an audit of Sony's records pursuant to the Agreement. The Agreement further provides that Sony shall, within thirty (30) days after receiving a final audit report, pay Tessera any amounts found by the auditors to be payable. To date, Sony has refused to pay Tessera the royalties it owes to Tessera under the Agreement, including amounts found by the auditors to be owing. As a result of Sony's breaches, Tessera filed the Complaint in this action for breach of contract and breach of the implied covenant of good faith and fair dealing on May 26, 2011.

B. <u>Sony's Position</u>

Sony is and has long been a worldwide leader in the design, development, manufacture, and sale of a wide range of electronics.

This dispute arises from a license agreement entered into by Tessera and Sony in 1997. Following a 2010 audit performed under the agreement, Tessera provided Sony with a document that purported to be a final audit report substantiating a royalty shortfall of approximately $21,000. Sony immediately paid the amount identified in the audit report as being due.

In addition to the amount paid by Sony, however, Tessera alleges that a relatively small amount of additional royalties are owed for material that was scrapped and never made into products. Scrap is not royalty-bearing under the agreement.

Tessera also asserts that the audit document evidences a significant additional underpayment. This also is not true. The portion of the agreement upon which Tessera relies in making this assertion was not part of the audit. Instead, it was a "reasonableness check" performed that was admittedly based on unidentified "publically available information" concerning "examples" of "products that could use Licensed Product" or "potentially containing Licensable Product." The "reasonableness check" was in no sense a proper audit and cannot support the fantastical amount of underpayment now alleged by Tessera. Tessera's gross mischaracterization of the audit report constitutes a violation of the covenant of good faith and fair dealing.

## 3. LEGAL ISSUES

The parties believe that the following legal issues are relevant and in dispute. Additional legal issues, however, may come to light during discovery. The parties reserve their rights to modify their positions on these points as discovery proceeds and further information becomes available.

Tessera anticipates the disputed legal issues in this action include: (1) whether Sony has satisfied its royalty obligations under the Agreement; (2) whether Sony is obligated to pay Tessera the amounts found by the auditors to be payable; and (3) whether either party has breached the implied covenant of good faith and fair dealing.

Sony anticipates the disputed legal issues in this action to include: (1) whether Sony has satisfied its royalty obligations under the Agreement; (2) the scope and identification of products that are royalty-bearing; (3) whether Tessera's audit was conducted by an independent auditor, (4) whether Tessera's audit report was ever made final; (5) whether Tessera's audit report complies with the applicable professional standards; (6) whether Tessera's reading of the audit report is incorrect and improper; and (7) whether Tessera has breached the implied covenant of good faith and fair dealing in reading the audit report to state a shortfall that it does not, in fact, identify.

## 4. MOTIONS

On September 2, 2011, Sony filed an administrative motion to seal which was denied. Subsequently, on October 11, 2011, Sony filed a renewed motion to seal which was granted by the Court on October 18, 2011. The parties anticipate that summary judgment motions or other dispositive motions may be filed at an appropriate time.

## 5. AMENDMENT OF PLEADINGS

No specific amendments to existing pleadings are anticipated at the present time. Both parties reserve their rights to amend their respective pleadings pursuant to Federal Rule of Civil Procedure 15 and the Local Rules for the United States District Court for the Northern District of California, except that the parties agree that amendments to any pleadings in this action should occur on or before April 9, 2012.

**6.   EVIDENCE PRESERVATION**

Counsel for Tessera and Sony have instructed their clients to preserve evidence, including electronically-stored information, relevant to the issues in this case.

**7.   DISCLOSURES**

Both parties have agreed to serve their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a) by January 27, 2012.

**8.   DISCOVERY**

**A.   INITIAL DISCLOSURES**

The parties agree to abide by the requirements of Federal Rule of Civil Procedure 26(a) with respect to the timing, form, and any and all other requirements for disclosures.  The parties agree that initial disclosures must be served on or before January 27, 2012.

**B.   THE SUBJECTS ON WHICH DISCOVERY MAY BE NEEDED**

Tessera anticipates discovery may be needed relating to the following subjects:  (1) Sony's performance of its obligation to pay royalties, including amounts found by the auditors to be payable; and (2) any other subject reasonably related to the claims or defenses presented in this lawsuit.

At this time the parties do not believe that discovery should be conducted in phases or be limited to or focused on particular issues.  Tessera anticipates that fact discovery should be completed by July 2012; Sony anticipates that fact discovery should be completed in January 2013.

**C.   DISCOVERY OF ELECTRONICALLY-STORED INFORMATION**

The parties expect that discovery in this case will include discovery of electronically-stored information ("ESI").  The parties agree to discuss in good faith reasonable date restrictions, a list of key custodians and search terms for use to search for relevant electronically-stored information.  Each party will then conduct a reasonably diligent search of those reasonably accessible sources identified by the key custodians to likely include relevant ESI responsive to discovery requests.

The parties have discussed which ESI should be produced in TIFF format and which should be produced in native format. The parties stipulate to the form of document production as follows:

**Electronically Stored Information ("ESI")**

ESI shall be provided in the following format:

- TIFFs.  Single-page 300 dpi CCITT Group IV black and white TIFFs shall be provided.  The parties will accommodate reasonable requests for production of specific images in color.

- Database Load Files/Cross-Reference Files.  Documents shall be provided with (1) a Concordance delimited load file(s) and (2) an Opticon delimited cross-reference file(s) showing document breaks.

  Example of Concordance Delimited File:

  þBegDocþ þEndDocþ þBegAttachþ þEndAttachþ þCustodianþ

  Example of Opticon Delimited File:

  ```
  MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
  MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,
  MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,,
  MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
  MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,
  ```

- Unique IDs.  Each image shall have a unique file name which will be the Bates number of that page (e.g., BATES000001.TIFF). The Bates number must appear on the face of the image (e.g., BATES000001).

- Text Files. For each document, a document-level text file shall be provided. The text of ESI shall be extracted directly from the native file and each text file will be named for the beginning Bates number of its corresponding document (e.g., BATES000001.TXT).  Alternatively, the text of ESI may be provided as separately fielded data within the Concordance delimited file described above. With respect to documents containing redacted text, no text will be provided for the entire document. No party shall be obligated to OCR ESI that contains no extractable text, but the producing party shall provide such OCR in its possession.

- Unique Documents. The parties shall attempt to de-duplicate ESI to avoid substantially duplicative productions.

- Metadata Fields. The following metadata shall be provided within the Concordance delimited file described above for each document to the extent reasonably accessible:

> Filename
> Extracted text (per A.4. above)
> Last Modified Date
>
> Additionally, for E-mails, the following additional metadata shall be provided:
>
> To
> From
> CC
> BCC
> Date Sent
> Time Sent
> Subject
> Parent-child relationships (attachment information)

- Additional Metadata. Should additional metadata (such as the original filepath of documents) exist that if provided would significantly aid a receiving party in understanding or using the documents, if requested, the producing party shall not unreasonably withhold such metadata.

- Native Form. The following documents shall be produced in native form: standalone database files such as Microsoft Excel or Access files; project management files such as Microsoft Project files; CAD or similar engineering drawings or schematics; source code or other software; complete, functional copies of websites. The parties shall not unreasonably refuse a request for the production of other documents in native form.

- Other Databases. Extracts from non-standalone databases, e.g., financial databases, shall be produced in a uniform standard form, e.g., as a text delimited file, or where possible as an MS Excel or MS Access file.

- TIFF Placeholder. Where documents produced natively are displaced from the production TIFF images of the documents with which they are kept in the ordinary course of business, the parties shall produce a Bates-numbered TIFF placeholder image, and associate the displaced native document with that Bates number.

**Hard-Copy Documents**

Hard-Copy documents shall be provided in the following format:
- TIFFs. Single page 300 dpi CCITT Group IV black and white TIFFs shall be provided. The parties will accommodate reasonable requests for production of specific images in color.
- Database Load Files/Cross-Reference Files. Documents shall be provided with (1) a Concordance delimited load file(s) and (2) an Opticon delimited cross-reference file(s) showing document breaks.

Example of Concordance Delimited File:

þBegDocþ þEndDocþ þBegAttachþ þEndAttachþ þCustodianþ

Example of Opticon Delimited File:

MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,

- Unique IDs. Each image shall have a unique file name which will be the Bates number of that page (e.g., BATES000001.TIFF). The Bates number must appear on the face of the image (e.g., BATES000001).
- OCR.  For each document for which the producing party possesses OCR, a document-level text file shall be provided. Each file will be named for the beginning Bates number of its corresponding document (e.g., BATES000001.TXT). Alternatively, the text of ESI may be provided as separately fielded data within the Concordance delimited file described above.  With respect to documents containing redacted text, no OCR file will be provided for the entire document.
- Unitizing of Documents. When scanning paper documents, the parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.*, the parties shall attempt to logically unitize scanned hard copy documents).
- Objective Coding Fields. The following objective coding fields shall be provided to the extent reasonably available: (i) Beginning Bates Number; (ii) Ending Bates Number; (iii) Beginning Attachment Bates Number; (iv) Ending Attachment Bates Number; (v) OCR (per B.4. above).

**Production Media**

Documents will be produced on CD-ROM or DVD discs or on portable hard drives.

**Objective Coding/Metadata Format**

The objective coding and/or electronic file metadata, including extracted text, shall be provided in the following format:

- Fields shall be delimited by the default Concordance field delimiter for ANSI character 20 ( )
- String values within the fields file shall be enclosed with a text delimiter (þ)

- The first line shall contain objective coding and/or electronic file metadata headers and below the first line there shall be exactly one line for each document
- Each row of objective coding and/or electronic file metadata must contain the same amount of fields as the header row
- Multi-values shall be separated by a semicolon (;)
- All files containing non-Western characters shall be provided in Unicode-compliant form.

**Form of Productions From Other Actions**

As a general matter, the parties will not challenge the form of production of documents produced in prior actions or in any other action which are re-produced in the same form in this action.

**Parties to Confer in Good Faith**

The parties agree to confer in good faith about disputes regarding the form of document production, including to resolve issues not addressed by this stipulation.

### D. PRIVILEGED AND PROTECTED INFORMATION

The parties agree that discovery in this case will involve the disclosure of highly sensitive and confidential information. Therefore, the parties are negotiating a joint Stipulated Protective Order for the Court. Tessera has provided Sony with a proposed protective order. Until a protective order is issued by the Court, disclosure of produced documents and things designated as "confidential" or "highly confidential" or any other label or designation of confidentiality shall be limited to each party's outside attorneys of record and the employees of such outside attorneys.

The parties agree that privilege logging is not necessary with respect to documents post-dating the filing of the Complaint.

The parties have met and conferred regarding obligations upon learning of the production of privileged or protected information, if any, in the present action and have stipulated as follows:

Any information (including documents) produced in this action that a party or non-party ("producing party") later claims should not have been produced due to a privilege or protection from discovery, including but not limited to any attorney-client privilege, work product privilege,

joint defense privilege, or settlement privilege, shall not be deemed to waive any such privilege or protection. A party or non-party may request the return or destruction of such information, which request shall identify the information and the basis for requesting its return. If a party receives information that the receiving party believes may be subject to a claim of privilege or protection from discovery, the receiving party shall promptly identify the information to the producing party or non-party.

When a producing party or receiving party identifies such privileged or protected information, a receiving party: 1) shall not use, and shall immediately cease any prior use of, such information; 2) shall take reasonable steps to retrieve the information from others to which the receiving party disclosed the information; 3) shall within five (5) business days of the producing party's request return to the producing party or destroy the information and destroy all copies thereof; and 4) shall confirm to the producing party the destruction under 3) above of all copies of the information not returned to the producing party. No one shall use the fact or circumstances of production of the information in this action to argue that any privilege or protection has been waived. Within fourteen (14) days after a producing party or receiving party identifies the information, and not thereafter, the receiving party may file a motion to compel the production of the information on the basis that: (a) the information was never privileged or protected from disclosure; or (b) any applicable privilege or immunity has been waived by some act other than the production of the information in this action. The producing party and the receiving party shall meet and confer in accordance with applicable law or Court rules regarding any such motion to compel. Notwithstanding this provision, no party shall be required to return or destroy any information that may exist on any disaster recovery backup system.

### E. LIMITATIONS ON DISCOVERY

The parties agree to a limit of thirty-five (35) interrogatories for each side. The parties further agree that depositions of witnesses who require translation will be allotted 2 times the normal 7 hour limit.

1                 (i)      <u>Tessera's Position Regarding Deposition Location and Duration</u>

2       Tessera proposes that all depositions of party witnesses located outside the United States

3 shall be conducted either in California or Hawaii. Tessera further proposes that 30(b)(6)

4 depositions be limited to 40 hours, subject to the same agreement noted above for translated

5 depositions, such that time spent in translated 30(b)(6) depositions will only count as ½ time

6 towards this limit. At present, the parties have not yet reached an agreement on the time allotted

7 for 30(b)(6) depositions but are continuing to confer on the matter in the hopes of reaching a

8 resolution.

9                 (ii)      <u>Sony's Position Regarding Deposition Location and Duration</u>

10       Sony does not believe it appropriate to force any party witnesses to travel to the United

11 States for deposition. Sony further proposes that 30(b)(6) depositions be limited to 21 hours.

12     **F.**     **EXPERT DISCOVERY**

13       The parties agree that document discovery from testifying expert witnesses ("Experts") in

14 this litigation will include all materials discoverable under the Federal Rules of Civil Procedure,

15 provided that such discovery will not include drafts of Expert reports, drafts of declarations or

16 affidavits, Expert notes, and communications between Experts and counsel. Notwithstanding the

17 foregoing, nothing herein will prevent a party from discovering information relied upon in

18 forming an Expert's opinions. This provision shall not shield otherwise discoverable

19 communications with, documents of, or other information of a present or former employee and/or

20 inventor who is designated as an Expert.

21 **9.**    **CLASS ACTIONS**

22       Not applicable.

23 **10.**   **RELATED CASES**

24       Not applicable.

25 **11.**   **RELIEF**

26     A.     <u>Tessera's Position</u>

27       Tessera intends to seek all relief and recover all remedies available under the applicable

28 laws. Defendants are obligated to produce the documents that may be necessary for Tessera to

compute the amount of its damages in this action. Discovery into the nature and extent of Sony's breaches has just begun. Tessera is entitled to at least:

- Damages in excess of $25,000 in an amount to be determined at trial, plus interest calculated from the date of breach to entry of judgment;
- Damages owing as a result of Sony's breaches of the License Agreement;
- Damages owing as a result of Sony's failure to pay Tessera the royalties found owing in the Conner Group Audit;
- Damages owing as a result of Sony's breaches of the implied covenant of good faith and fair dealing;
- Tessera's costs, disbursements and attorneys' fees; and
- Such other and further relief as the Court may deem just and proper, in amounts as yet unknown.

B.  Sony's Position

Sony intends to seek all relief and recover all remedies available under the applicable laws. Sony is entitled to at least:

- Damages owing as a result of Tessera's breaches of the implied covenant of good faith and fair dealing;
- Sony's costs, disbursements and attorneys' fees; and
- Such other and further relief as the Court may deem just and proper, in amounts as yet unknown.

**12. SETTLEMENT AND ADR**

Pursuant to ADR L.R. 3-5, the parties are discussing engagement in mediation efforts before a private mediator at an appropriate time.

**13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Tessera has filed a Declination To Proceed Before a U.S. Magistrate Judge and Request for Reassignment to a United States District Judge on September 12, 2011. On September 15, 2011, the Court issued an Order reassigning the case to Judge Edward J. Davila for all further proceedings and to Magistrate Judge Howard R. Lloyd for all discovery matters.

## 14. OTHER REFERENCES

The parties do not presently believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## 15. NARROWING OF ISSUES

The parties anticipate that one or both will be filing summary judgment motions at the appropriate time, and the resolution of such motion or motions may narrow issues remaining after appeal.

## 16. EXPEDITED TRIAL PROCEDURE

The parties do not consent to an expedited schedule in this case at this time.

## 17. SCHEDULING

The parties propose the following schedules:

| Event | Tessera's Proposed Date (* = deadline per rule or court order) | Sony's Proposed Date (* = deadline per rule or court order) |
| --- | --- | --- |
| The Parties' Rule 26(f) Conference | January 13, 2012* | same |
| Exchange of Rule 26(a)(1) initial disclosures | January 27, 2012* | same |
| Case Management Conference (CMC) | February 3, 2012* | same |
| Deadline for joining additional parties and/or amending pleadings | April 9, 2012 | same |
| Fact discovery deadline | July 13, 2012 | January 31, 2013 |
| Parties to designate experts and serve expert reports for which they bear the burden of proof | July 27, 2012 | February 28, 2013 |
| Parties to serve rebuttal expert reports | August 10, 2012 | March 22, 2013 |
| Expert discovery | August 24, 2012 | April 19, 2013 |

| deadline | | |
|---|---|---|
| Deadline for filing dispositive motions | September 4, 2012 | May 17, 2013 |
| Pretrial motions | September 21, 2012 | May 31, 2013 |
| Pretrial conference | October 26, 2012 | June 28, 2103 |
| Trial | TBD by the Court in November 2012 | TBD by the Court in or after July 2013 |

**18. TRIAL**

Both parties have demanded trial by jury in this case.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Tessera Technologies, Inc. is the parent company of Plaintiff Tessera, Inc., and is the only publicly held company that owns more than ten (10) percent of the stock of Tessera, Inc.

Sony Corporation is a Japanese Corporation whose common stock trades principally on the Tokyo Stock Exchange and whose American Depository Receipts, related to its common stock, are traded publicly on the New York Stock Exchange. No publicly held corporation owns ten percent (10%) or more of Sony Corporation stock.

**20. OTHER MATTERS**

The parties have no other matters to report at this time.

Respectfully submitted,

**IRELL & MANELLA LLP**

Dated: January 27, 2012   By:   /s/ Richard W. Krebs
                                 Richard W. Krebs

*Attorneys for Plaintiff Tessera, Inc.*


**FOLEY AND LARDNER LLP**

Dated: January 27, 2012   By:   /s/ Aaron W. Moore
                                 Aaron W. Moore

*Attorneys for Defendant Sony Corp.*