**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
555 CALIFORNIA STREET, 17TH FLOOR
SAN FRANCISCO, CA 94104
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507
Eileen R. Ridley CA Bar No. 151735
    eridley@foley.com

**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
111 HUNTINGTON AVE., STE. 2600
BOSTON, MA 02199-7610
TELEPHONE: 617.342.4000
FACSIMILE: 617.342.4001
Matthew B. Lowrie *(Pro Hac Vice)*
    mlowrie@foley.com
Aaron W. Moore *(Pro Hac Vice)*
    amoore@foley.com

**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
321 NORTH CLARK ST., STE. 2800
CHICAGO, ILL. 60654-5313
TELEPHONE: 312.832.4568
FACSIMILE: 312.832.4700
Ruben J. Rodrigues *(Pro Hac Vice)*
    rrodrigues@foley.com

ATTORNEYS FOR DEFENDANT SONY
CORPORATION

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC., A DELAWARE CORPORATION. | ) CASE NO: 5:11-CV-04399-EJD (HRL) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) **SONY'S ARGUMENT CONCERNING** |
| | ) **DISCOVERY DISPUTE JOINT REPORT** |
| | ) **#2** |
| SONY CORPORATION, A JAPANESE | ) |
| CORPORATION, | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |
| | ) |
| | 1 |

Sony submits this response to the Discovery Dispute Joint Report #2 filed by Tessera on August 25, 2012.  Sony's position regrettably is being submitted separately because Tessera's filing was made on a schedule that Tessera unilaterally imposed in a deliberate attempt to impair Sony's ability to respond to Tessera's arguments.  Tessera refused to provide its arguments or positions in advance—after repeatedly refusing to engage in *substantive* pre-filing discussions— and its schedule would have allowed Sony less than twenty-four hours to prepare its response after seeing Tessera's arguments for the first time.  Tessera's schedule also would have prevented Sony's counsel from conferring with its client in Japan after drafting Sony's response to Tessera's arguments.  Sony proposed a more fair, but still expedited, schedule, but Tessera refused to even discuss a mutually acceptable approach for bringing this issue before the Court.

## I.   **SONY'S POSITION**

As an initial matter, Tessera's request for Court intervention should be denied because Tessera repeatedly refused to make its lead counsel available for an in-person meet-and-confer, as required by the Court's Standing Order Re: Civil Discovery Disputes, and refused to negotiate these issues in good faith.

This case arises from an audit conducted by an entity called the Connor Group of royalty payments made by Sony under a License Agreement.  The audit period was from January 2006 though June 2010.  After the auditor visited Sony, Tessera sent Sony a document that it claims is a "final audit report."  The document has no cover page and is not even signed by the auditor.

According to that document, ███████████████████████████████ ████████████████████████████████████████████████████ Upon being notified of that issue, and in an abundance of caution, Sony paid that amount.  The document also indicated ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ That was the extent of the audit portion of the document.

CASE NO.5:CV 11-04399-EJD (HRL)                    SONY'S ARGUMENT CONCERNING
                                                   DISCOVERY DISPUTE JOINT REPORT #2

The auditor also included a "reasonableness check," in which he looked at *unidentified* public sources for information about *unspecified* Sony products that he *guessed* might include royalty bearing products.  Based on this series of unsupported assumptions, the auditor surmised that if all of those (unspecified) products did contain licensed chips (and there was absolutely no evidence of that), Sony would owe ███████████ times the amount the auditor actually did find that Sony owed.  The astronomical amount that Tessera is seeking in this case corresponds to the "reasonableness check," not the actual audit.

The instant discovery dispute arises for three reasons:  (1) Tessera's document requests do not call for the information it is now seeking, (2) the scope of the documents that Tessera now demands (despite not requesting them) is completely unreasonable and unjustified, and (3) Tessera refuses to negotiate additional discovery of a reasonable scope.[1]

Tessera buries the document requests at issue (Nos. 2 and 8) in a footnote for good reason—as discussed in more detail below, they are excessively broad and vague, and bear no resemblance to the categories of documents Tessera is now seeking.

**A.    "Documents Showing the Number and Type of Royalty Bearing Products."**

Tessera first seeks documents "relevant to ascertaining the number and type of Royalty Bearing Tessera Licensed Products made or used by Sony, whether made by Sony or a third party (e.g., documents sufficient to identify *potentially royalty bearing products* under the Agreement and how many of each such product were made or used by Sony)."

The most fundamental problem with this is that "potentially royalty bearing products" is undefined and *not limited to products that are covered by the technical definition in the License Agreement*—it includes, apparently, *technical documents for every iteration of <u>every</u> Sony product made over a four and a half year period*.[2]  Tessera has refused Sony's efforts to discuss

---

[1] While Tessera references its Second Set of Document Requests in its argument, Sony's responses to those were just served a week ago and the parties have yet to meet-and-confer on issues arising from those requests.

[2] In correspondence leading up to this filing, Tessera even refused to limit its request for these documents to the period covered by the audit.

CASE NO.5:CV 11-04399-EJD (HRL)                    SONY'S ARGUMENT CONCERNING
                                                   DISCOVERY DISPUTE JOINT REPORT #2

ways to limit this, and is either unable or unwilling to identify *any* specific product for which it

believes royalties were not paid.  This broad category would also apparently include chips made

by third parties that are not subject to the License Agreement.

Tessera's demands that Sony produce technical and sales documents for every single

Sony product made over a more than four year period, regardless of whether or not there is any

basis for believing that they could include royalty bearing chips, cannot be justified.  Moreover,

because even the auditor did not request this information (likely because virtually all of it would

have been completely irrelevant), it is not sought in any of Tessera's first set of document

requests.

This is not the first time Tessera has improperly sought excessively broad discovery of

Sony about this technology.  In a patent case that is currently pending in Delaware concerning

Tessera's allegations that Sony is infringing since the License Agreement expired, Tessera

sought a similarly board scope of documents about Sony's products.  Earlier this month,

Magistrate Judge Williams rejected those efforts, requiring Tessera to substantially narrow its

definition of the products for which discovery was being sought to approximately what claimed

in the patents.  *See Tessera v. Sony Corp., et al.*, D. Del. No. 10-cv-00838, Dkt. 169, at 7 ("The

Court finds that Tessera's 'Your Products' definition, as directed to defendants, is overly broad,

as it includes the production of information beyond the patents-in-suit and is not limited to the

applicable time frame. . . . Moreover, requiring defendants to abide by such a definition in the

discovery process would be unduly burdensome, as the nature of Sony's and Renesas's

businesses would require the production of numerous products that are not alleged to infringe

upon the patents-in-suit.").[3]

---

[3] The other *Tessera v. Sony* case is substantially more analogous than the twenty and forty year
old cases cited by Tessera.  *Columbia Cascade Co. v. Interplay Design, Ltd.*, 1990 U.S. Dist.
LEXIS 16621 (D. Or. Dec. 6, 1990) does not support Tessera's position because the material
being sought in that case was financial information about specific products that were covered by
the patent, not information about every product without regard for whether or not there was a
colorable basis to believe that they infringed.  *Nat. Utility Serv., Inc. v. Wisconsin Centrifugal
Foundry, Inc.*, 49 F.R.D. 30, 30-32 (E.D. Wisc. 1970), concerning a dispute between a company

4

1    Tessera is not entitled to technical and sales documents concerning *every Sony product*.

2    Instead, it must provide either some reason to believe that a specific product infringes or

3    technical limitations on the scope of its requests so that they are reasonably calculated to capture

4    potentially royalty bearing products.  Because Tessera is unwilling to do either of these things,

5    its request for relief should be denied.

6    Tessera also demands information from Sony business units other than the semiconductor

7    business unit, information about products made for Sony by third paries, production records from

8    the semiconductor business units, and records for scrap units.  With respect to scrap, Sony has

9    already provided to the auditor and produced the records that exist.  The audit report confirms

10   that "information from Sony business units other than the semiconductor business unit" is not

11   relevant because the semiconductor business unit is "the business unit responsible for the

12   production of Licensed Product."  Sony is not aware of any Licensed Product that did not

13   originate in the semiconductor business unit.  The auditor elected to finalize his report

14   (apparently) without "production records," and Sony did provide the auditor with information

15   about royalty-bearing products made by others for Sony, which information has been produced

16   to Tessera.

17   **B.      "Internal Sony Communications Relating to the Agreement"**

18   Tessera next argues that "Sony also refuses to produce documents concerning or

19   constituting internal Sony communications relating to the Agreement."  Neither of the overly

20   broad document requests at issue calls for such documents, however.

21   Request No. 2 seeks "[a]ll Documents relating to Tessera's claims."  As an initial matter,

22   this request is unreasonably vague, as, for example, Sony has no way to know what documents

23   Tessera would think relate to its claims, and Sony objected to the request on that basis.  But even

24   assuming that the request refers what Tessera ***pled***, it would be limited to documents concerning

25

26   that advises other companies about utility rates and one of its customers, does not appear to have
     any bearing on this case at all.

27

28
     CASE NO.5:CV 11-04399-EJD (HRL)                    SONY'S ARGUMENT CONCERNING
                                                         DISCOVERY DISPUTE JOINT REPORT #2

the audit, not the underlying Agreement, because Tessera's allegations are that (a) Sony failed

the pay what the Connor Group said was owing and (b) Sony failed to provide the Connor Group

with certain information.  *See* Complaint, ¶¶ 20-21.  Because "Tessera's claims" in the

Complaint are about *the audit*, not the underlying *Agreement*, Tessera cannot complain that Sony

did not produce documents about the Agreement in response to Request No. 2.

Request No. 8 is for "All documents relating to the Audit."  Again, this request seeks

documents about *the Audit*, not documents about the underlying *Agreement*.

Despite the fact that Tessera had not actually requested these documents, Sony would

have considered collecting and producing a negotiated subset of documents relating to the

Agreement, telling Tessera that "[e]ven though this material was not included in any reasonable

document request, please tell us exactly what types of documents you are now seeking and we

will consider what I understand to be your proposal to narrow improperly broad Request 2," and

that "[we] asked you to identify what types of documents about the license agreement Tessera

expects Sony to produce.  You did not answer. . . . We are willing to discuss these issues, but

Tessera seems only interested in making vague, unreasonable demands and threats."

Tessera responded to these offers only with more inflammatory rhetoric and unfounded

accusations.  Because Tessera did not request these documents in the first instance, and has

ignored good faith efforts to negotiate about them, Sony should not be required to produce them.

### C.    "Internal Sony Communications Relating to the Audit"

Tessera complains that "Sony refuses to produce documents concerning or constituting

internal Sony communications relating to the audit."  Not true.

Sony has agreed to produce these documents, has produced such documents, and will

complete that production shortly.  The review and production process has been delayed slightly

due to the fact that all of Sony's internal documents are written in Japanese, but Sony is not

refusing to produce these documents, and Tessera knows that.

### D.    "Information Requested or Received by the Auditors from Sony."

6

CASE NO.5:CV 11-04399-EJD (HRL)        SONY'S ARGUMENT CONCERNING
DISCOVERY DISPUTE JOINT REPORT #2

Aside from the material discussed in section (1) above, Tessera complains that Sony failed or refuses to produce "all communications between Sony and the Connor Group" and "[a]ll documents relating to assessing, fulfilling, denying, considering, responding to, or otherwise addressing the Connor Group's requests for information in connection with the [a]udit." That is also untrue.

As noted above, Sony is in the process of producing its internal communications. Sony has ***already*** produced all of its correspondence with the Connor Group, which includes all written requests for information from the auditor and all of the material provided to the auditor by Sony, which is found in the emails themselves and in the attachments to the emails. The fact that this material constitutes only "small handful of e-mails" is reflective of the poor, superficial quality of the audit, not Sony's document production.

## II.   SONY'S FINAL AND "MOST REASONABLE" PROPOSAL FOR RESOLUTION

Sony's final proposal is that Tessera be required to negotiate in good faith to address the issues raised in Sections (1) and (2).

DATE: AUGUST 29, 2012

FOLEY & LARDNER LLP
AARON W. MOORE

By:  /s/ *Aaron W. Moore*

AARON W. MOORE
ATTORNEYS FOR DEFENDANT SONY CORPORATION

## CERTIFICATE OF SERVICE

I am employed in the **County of Cook**, **State of Illinois**.  I am over the age of 18 and not a party to this action; my current business address is **321 N. Clark St, Suite 2800, Chicago, IL 60654**.

On **August 29, 2012**, I served the foregoing document(s) described as: **DEFENDANT SONY CORPORATION'S NOTICE OF DEPOSITION OF NIGEL SHEPHERD** on the interested parties in this action as follows:

 X      BY THE FOLLOWING MEANS:

BY ELECTRONIC MAIL to:

mchu@irell.com
bhattenbach@irell.com
mmccormick@irell.com
rkrebs@irell.com
#Tessera-SonyAudit@irell.com

 X      Executed on **August 29, 2012**, at **Chicago, Illinois**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATE: AUGUST 29, 2012

By:  *Ruben J. Rodrigues*

RUBEN J. RODRIGUES

CASE NO.5:CV 11-04399-EJD (HRL)                    SONY'S ARGUMENT CONCERNING
                                                   DISCOVERY DISPUTE JOINT REPORT #2