UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| TESSERA, INC., | ) | Case No. 5:11-CV-04399-EJD (HRL) |
| Plaintiff, | ) ) | [REDACTED] DISCOVERY DISPUTE |
| v. | ) ) | JOINT REPORT #4 |
| SONY CORPORATION, | ) ) | |
| Defendant. | ) ) | Judge: Howard L. Lloyd |
| | ) | |

**Issue:** Whether the Court should compel Defendant Sony Corporation ("Sony") to comply with Tessera, Inc.'s ("Tessera") Second Sets of Requests for Production and Interrogatories.

**Joint Meeting:** The parties met and conferred by telephone on August 28, 2012. Following the telephonic meet and confer, Ben Hattenbach, co-lead counsel for Tessera, and Eileen Ridley, co-lead counsel for Sony, met in person on September 10, 2012 in San Jose, California, for forty-five minutes. The parties engaged in further meet and confers via letters and emails in the days following the in-person meeting. The parties reached impasse on September 14, 2012.

**Close Of Discovery:** The fact discovery cut-off is October 19, 2012.

**Attestation Of Compliance:** Undersigned counsel for Tessera and Sony hereby certify that they have read and complied with Judge Lloyd's Standing Order Re: Civil Discovery Disputes.

**Background And Dispute**: In this breach of contract case, (1) Tessera has filed claims alleging that Sony has breached the parties' Master License Agreement (the "Agreement") by, among other things, failing to pay royalties owed and found owing in an audit report, and (2) Sony has filed a

1    counterclaim alleging that Tessera breached the implied covenant of good faith and fair dealing.

2    The present dispute involves Tessera's contention that Sony has failed and refused to produce any

3    documents or information in response to Tessera's Second Set of Requests for Production and

4    Tessera's Second Set of Interrogatories.

5    **Tessera's Position**

6           Sony asserted only objections and refused to comply with any of the requests contained in

7    Tessera's Second Set of Requests for Production (Exhibit A) and Tessera's Second Set of

8    Interrogatories (Exhibit B).  Sony's outright refusal to respond to these requests is inexplicable.

9    The requests are specifically tailored to a central issue in this litigation: ███████████████

10   ███████████████████████████████████████████████████

11   ███████    For example, ██████████████████████████████████

12   ████████████████████████████ Tessera requested:

13          "Documents sufficient to show, for each BGA and LGA package included in any Sony

14          Product, whether the chip(s) within the package are in a face up or face down orientation;

15          the location and pitch of the terminals relative to the IC(s) in the package; and whether the

16          package substrate is reinforced, and if so, its thickness."

17   Ex. A at RFP 22; *see also* Sony's Position statement at 8 (stating the Agreement's definition of

18   Royalty Bearing Product).  Sony refused to provide any responsive documents.  *See* Ex. C.

19          Similarly, for each BGA and LGA package included in any Sony Product, Tessera asked

20   Sony to "describe with specificity: whether the chip(s) within the package are in a face up or face

21   down orientation; the location and pitch of the terminals relative to the IC(s) in the package; and

22   whether the package substrate is reinforced, and if so, its thickness." Ex. B at Interrogatory No.

23   9. Sony refused to provide any responsive information.  *See* Ex. D.

24          The other interrogatories and requests within Tessera's Second Sets of Requests for

25   Production and Interrogatories also are directly targeted to identifying Sony BGA and LGA

26   packages subject to the Royalty Bearing Tessera Licensed Products definition, the technical

27   characteristics of such packages, and other information relevant to calculating royalties, such as

28   the number of "billable pins" contained in each package and the total quantity of each package

1    used by Sony. Ex. A (Tessera's Request Nos. 17-22); Ex. B (Tessera's Interrogatories Nos. 4-

2    10). Sony refused to provide *any* responsive documents or information. *See* Exs. C, D.

3        Sony's refusal to provide Tessera the information necessary to calculate the full amount of

4    royalties owed Tessera is remarkably consistent with Sony's conduct during the audit conducted

5    under the "Reasonable Audit" provision of the Agreement. In both instances, Sony took the

6    position that Tessera should simply accept at face value Sony's position as to which of its products

7    should be deemed Royalty Bearing Tessera Licensed Products—based on records that Tessera has

8    not seen and an interpretation of the Agreement with which Tessera vehemently disagrees. This is

9    not the law, and it would defeat the entire purpose of the underlying audit and of discovery.

10       Although Sony was contractually obligated to provide the auditors with all information

11    bearing on its royalty obligations, Sony improperly refused many of the auditors' requests for

12    information with little or no explanation. *See* (Agreement ¶ VI) ███████████████

13    ████████████████████████████████████████████████

14    ███████████████ Sony's refusal to provide this information to Tessera in litigation not only

15    violates Rules 26(b), 33 and 34 of the Federal Rules of Civil Procedure, it also materially impedes

16    Tessera's ability to understand, and ultimately explain to the trier of fact, the full scope of the

17    unpaid royalties that Sony owes under the Agreement.

18       During meet and confer, Sony did not dispute that Tessera's requests sought relevant

19    information. It is beyond dispute that the nature and quantity of Sony's use of Royalty Bearing

20    Tessera Licensed Products is relevant to Tessera's claims for breach of the Agreement. Tessera's

21    complaint alleges that Sony breached the Agreement by, among other things, (1) failing to pay

22    royalties found owing by the auditors, (2) failing to pay additional royalties that the auditors could

23    not calculate because Sony provided no information, and (3) failing to cooperate with the auditors

24    by refusing to provide the auditors with relevant information. The evidence Tessera is seeking is

25    relevant to each of Sony's breaches. Indeed, as to the part of Tessera's claim relating to royalties

26    that the auditors could not calculate (because Sony provided no information and nothing relevant

27    could be identified from public sources), discovery in this litigation is the *only* available avenue

28

1  for Tessera to determine the scope of the royalties Sony owes.  Not surprisingly, Sony is

2  vigorously withholding the evidence needed to quantify these missing royalties.

3  　　　　The auditors also requested, among other things, information relating to royalty-bearing

4  products from Sony Corporation as a whole.  *See, e.g.,* ███████████████████████

5  ████████████████████████████████████████████████████████; Sony's

6  Position Statement at FN 3 (disputing this but acknowledging that the auditors requested "lists of

7  licensed products and lists of all Sony products for the audit period").  Sony refused to provide the

8  auditors with any information outside of the Semiconductor Business Group.  █████████████

9  ███████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████  Through discovery of Sony products containing BGA

12 or LGA packages with the requisite characteristics, Tessera can determine the extent of

13 information from divisions other than the Semiconductor Business Group that were withheld from

14 the auditors, and the extent of royalties owed by Sony for those divisions.

15 　　　　Because Sony provided no information regarding entire divisions that use BGA and LGA

16 packages in their products, the auditors were unable to fully calculate the royalties owed to

17 Tessera. ███████████████████████████████████████████████████████

18 ██████████████████████████████████████████████  For such

19 products (*e.g.,* Sony televisions, audio-visual products, and eReaders), there is simply no way to

20 comprehensively determine the amount of additional royalties owed by Sony without discovery.

21 　　　　During the September 10, 2012 in-person meet and confer, Sony expressed only one

22 objection to the requests:   according to Sony, the definition of "Sony Product" used therein

23 includes irrelevant items such as copy paper.  Tessera immediately agreed to clarify that "Sony

24 Product" is limited to products that are "electronic" and "that include at least one BGA or LGA

25 package." But Sony continued to refuse to produce any documents or information, contending

26 that this information did not have to be disclosed to Tessera because "[t]he auditor certainly did

27 not request information on 'all BGA or LGA products.'"  Sony's contention, however, is simply

28 wrong for three independent reasons.  First, Sony's own communications with the auditors plainly

1  show that the auditors requested information from Sony for **all** such packages. ████████

2  ████████████████████████████████████████████████████████████████

3  ████████████████████████  Second, there is no dispute that Sony has an obligation

4  to pay royalties on BGA and LGA packages matching the objective characteristics set forth in the

5  Agreement.  Third, there is no dispute that such packages are precisely the subject of Tessera's

6  requests and interrogatories.  It is axiomatic that Tessera is entitled, in this lawsuit for breach of

7  Sony's obligations to pay royalties, to determine the full extent of royalties owed by Sony.

8       Sony's position in this discovery dispute, as in the litigation and underlying audit, is that

9  Sony alone determines, behind its iron curtain, which products are royalty-bearing.  This position

10  is unsupportable and undermines the entire purpose of auditing.  The very premise underlying the

11  audit and this litigation is that Tessera is not required to trust Sony's self-serving contentions as to

12  whether the Agreement was satisfied.  Rather, Tessera has the right to verify the full amount of

13  royalties due under the Agreement.

14       Sony's position is especially problematic because Sony's determination of which products

15  are royalty-bearing apparently excluded all packages used by Sony outside its Semiconductor

16  Business Group (such as Royalty Bearing Tessera Licensed Products used by Sony's television

17  division to manufacture Sony televisions). ████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████  Sony's interpretation is contrary to

21  the Agreement's plain language.  *See* Agreement ¶ III.B ████████████████

22  ████████████████████████████████████████████████████████████████

23       Sony's contention that "the vast majority" of products containing at least one BGA or

24  LGA package are not royalty-bearing is just that – Sony's contention, based upon Sony's disputed

25  contract interpretation arguments.  Sony refuses to provide the technical information about those

26  products necessary for the trier of fact to objectively determine whether any of Sony's BGA or

27  LGA packages is, in fact, outside the scope of the Agreement.  Sony short-circuited the audit by

28  providing the auditors only with information relating to the products Sony had unilaterally

1  determined to be royalty-bearing and nothing else.  That is why it is imperative that Tessera

2  acquire through discovery now what Sony wrongfully withheld from the auditors. [1]

3        Finally, Sony's argument that the New Jersey court sided with Sony in a similar discovery

4  dispute is simply wrong.  Sony fails to disclose that, after instructing Tessera to narrow a

5  definition term to more closely track its infringement allegations, the Court **expressly rejected**

6  **Sony's attempt to foreclose discovery into additional Sony products**.  Specifically, the Court held

7  that Sony's attempt to prevent Tessera from investigating through discovery the existence of

8  additional, infringing Sony products was "contrary to 'the broad and liberal' policy of discovery

9  promoted by the Federal Rules of Civil Procedure," and that "the inherent purpose of discovery

10  would be stymied" if Sony did not disclose information about its potentially infringing products.

11  *Tessera, Inc. v. Sony Corp., et al.*, No. 10-cv-00838, Dkt. 169 at 8.  Here, Tessera has already

12  tailored its requests to the specific technical characteristics that define the scope of the Agreement

13  at issue, yet Sony seeks to block discovery by refusing to provide ***any*** information about its own

14  products.  This is improper.  Sony is required to provide discovery relevant to Tessera's

15  allegations and may not limit discovery based on its unilateral, self-serving, and inaccurate

16  interpretation of the Agreement.

17  **Sony's Position**

18        Tessera persists in its demands for overly broad and extremely burdensome discovery from

19  Sony, while refusing all of Sony's efforts to negotiate.  Tessera's requests are not reasonably

20  calculated to lead to the discovery of admissible evidence.  Instead, they are specifically intended

21  to impose extraordinary costs and burden on Sony.  This is improper, but it unfortunately is

22  Tessera's *modus operandi*.  In fact, the District of Delaware has recently rejected Tessera's efforts

23  to obtain excessively broad discovery of Sony in a related patent case on the same subject matter.

24  *See Tessera, Inc. v. Sony Corp., et al.*, No. 10-cv-00838 (D. Del. August 8, 2012), Dkt. 169 at 7

25  ("The Court finds that Tessera's 'Your Products' definition, as directed to defendants, is overly

26

27      [1] Sony also mischaracterizes Tessera's breach claims as being limited to royalties owed during the audit period.  This is false.  Tessera's claims allege breaches by Sony for failing to pay

28  royalties owed to Tessera, including but not limited to royalties found owing by the auditors.  *E.g.*, (Tessera's Complaint ¶¶ 14, 19).

1   broad, as it includes the production of information beyond the patents-in-suit and is not limited to

2   the applicable time frame… Moreover, requiring defendants to abide by such a definition in the

3   discovery process would be unduly burdensome, as the nature of [their] business would require the

4   production of numerous products that are not alleged to infringe upon the patents-in-suit.").

5       Discovery is limited to information "that is relevant to any party's claim or defense." Fed.

6   R. Civ. P. 26(b)(1).  This is a breach of contract case in which Tessera has accused Sony of not

7   paying royalties that Tessera claims were found to be unpaid in an audit conducted pursuant to a

8   License Agreement between the parties.  The License Agreement in question expressly describes,

9   in no uncertain terms, the specific products that are subject to royalties.  But rather than limit

10  discovery to relevant products, Tessera continues to demand documents concerning a much

11  broader set of Sony products that have *absolutely nothing* to do with the License Agreement, the

12  audit, or any of the claims or defenses at issue.

13      Tessera's second set discovery requests were based on an ***extremely*** broad definition of

14  "Sony Products":  "any products or goods, finished or unfinished, that were made, used, sold,

15  offered for sale, imported or exported, or transferred by Sony between October 15, 1997 and

16  September 24, 2010."  Literally read, this includes every physical thing at Sony, down to the copy

17  paper and the actual kitchen sinks, for a thirteen year period.

18      Recognizing that its original request was absurd, Tessera has since narrowed the request to

19  "electronic" products "that include at least one BGA or LGA package."  This is still far too broad,

20  however, because *the vast majority of products meeting that definition have no relationship*

21  *whatsoever to the products covered by the License Agreement.*  Production of documents

22  according to this definition would pose an extraordinary and unreasonable burden on Sony, as it

23  could cover more than 10,000 products, most of which have nothing to do with this case.

24  ████████████████████████████████████████████████

25  █████████████████████████████████████████████████████████████

26

27  _____

    **2** BGA and LGA stands for "ball grid array" and "land grid array," respectively, which
28  refer to two very common types of surface-mount packaging for integrated circuits (ICs).  *See e.g.*
    http://en.wikipedia.org/wiki/Ball_grid_array and http://en.wikipedia.org/wiki/Land_grid_array.

1 ████████████████████████████████████████████████████

2 █████████████████████████████████████████████████

3 █████████████████████████████████████████████████

4 ████████████████████████████████████████████ This

5 alone is narrower than what Tessera is now seeking in discovery. ███████████████

6 ████████████████████████████████████████████████

7 █████████████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ██████████████████████████████████████████████████

14      Tessera's definition—all electronic products "that include at least one BGA or LGA

15 package"—ignores all of the bolded language that dramatically limits the range of royalty bearing

16 products.  This is not a minor omission.  Because BGA or LGA packaging is common in

17 electronic products, to accept Tessera's definition would be to sweep in a vast quantity of wholly

18 irrelevant information in the case of party with a broad product range like Sony's.  As framed,

19 Tessera's discovery requests would actually require Sony to explain why thousands of irrelevant

20 products are *not* royalty bearing, without Tessera having *any* basis to think that they are.

21      Tessera's definition is also faulty for two other very significant reasons.

22      *First*, the definition would include every BGA or LGA IC package in any Sony product,

23 regardless of who designed or manufactured the package.  The License Agreement is not that

24 broad.  Instead, █████████████████████████████████████████████

25 ████████  This includes chips that are manufactured by Sony itself, in its Semiconductor

26 Business Group, as well as chips that are made by others for Sony, namely by third-parties that

27 Sony engages to manufacture chips to Sony's specifications, for capacity or other reasons.

28

1   Tessera's definition includes "off-the-shelf" chips made by third parties and used in Sony

2   products.  Such chips are *not* covered by the plain language of the Agreement.

3            Nor were "off-the-shelf" chips included in the royalties paid by Sony and accepted by

4   Tessera during the ***entire thirteen year duration of the License Agreement***, including after a

5   previous audit.  There is a practical reason for this, which is that Sony would not even be able to

6   know whether a third party IC was one that would be covered by the definition in the License

7   Agreement because Sony would not have enough information about the internal structures of the

8   chips to determine whether a given chip was royalty bearing.  In any event, if the plain language of

9   the contract does not resolve this issue, the thirteen years of conduct under the Agreement

10  certainly does.  Thus, Tessera's discovery requests are also overbroad because they are not limited

11  to products "made by or for Sony."

12           ***Second***, Tessera's definition would include every BGA or LGA IC package in any Sony

13  product, *over the entire thirteen year term of the License Agreement*.  This is far too broad,

14  because this case, as plead, concerns the period of the audit.  Tessera's allegations are that Sony is

15  in breach because (a) it failed to provide the auditor with all information the auditor requested

16  (although the documents show that all requested data was provided, and Tessera has yet to identify

17  any auditor request that was unfulfilled), and (b) Sony purportedly failed to pay royalties under the

18  agreement (although Sony did pay the amount the auditor actually found owing, and Tessera's

19  claims are based on a demonstrably flawed "reasonability estimate," not any audited information).

20  There is no basis for requiring Sony to produce documents outside the period of the audit.  Sony

21  has repeatedly asked Tessera to identify *any* product for which it has *any* reason to believe that

22  royalties were unpaid, and Tessera has never identified even one.

23           During the meet-and-confer process, Tessera at one point agreed to limit the production to

24  the time period of the audit, but when the parties failed to reach an agreement because the

25  substantive scope was still far too broad, Tessera backed away from the temporal limitation,

26  apparently hoping to ask for *everything* in the hope that the Court will "split the baby," limiting

27  the request to the period of the audit, but granting the Tessera the excessive technical scope it

28  seeks.  That would be wrong.  Tessera's requests are improper for each of three separate reasons:

1  (a) they are not tailored to capture royalty bearing products, (b) they are not limited to chips "made

2  by or for Sony," and (c) they are not limited to the time period covered by the audit.

3        Tessera has repeatedly complained that it would not be appropriate to limit the request to

4  the products that are actually ***defined*** in the License Agreement because that is "a disputed issue in

5  the case."  But even if that were true (Tessera has never identified any such dispute, and the

6  express language of the License Agreement certainly bars any claim that Tessera is entitled to

7  royalties on "all BGA or LGA products"), the appropriate course would be to negotiate a mutually

8  acceptable definition, not demand production of information on thousands of irrelevant products.

9        Tessera maintains that it was entitled to documents pertaining to *all* BGA and LGA chips

10  because, according to Tessera, the auditor requested such information and that Sony refused to

11  provide it.  Despite Tessera's unsupported assertions to the contrary, ***that simply is not true.***  With

12  respect to the actual audit portion of the audit (which of course was limited to the audit period),

13  the auditor used a spreadsheet called the "Open Items Tracker" to track the information that it

14  requested and received.  The various versions of the Open Item Tracker and the associated

15  correspondence confirm that the auditor most certainly did ***not*** request information about "all

16  BGA and LGA chips."[3]  Nor did the auditor request information about all BGA and LGA chips as

17  part of his "reasonability estimate."  Instead, the auditor created his own spreadsheet based on

18  public data and a series of "guestimates," and then actually ignored multiple requests from Sony

19  for an identification of any chips for which royalties were believed to have not been paid.  ***Not***

20  ***only did the auditor not request information about "all BGA or LGA chips," he actually***

21  ***withheld from Sony the identities of the BGA and LGA chips used in his "reasonability"***

22  ***analysis.***  Tessera's claims that the auditor requested this information, and that Sony withheld it,

23

24

_____

25     [3] Tessera has pointed to the fact that the auditor's initial request for information included

26                    ██████  Tessera fails to acknowledge, however, that after Sony pointed out that this
boilerplate request would cover more than 10,000 products in Sony's case, ***the auditor limited the***

27  ***request to lists of licensed products and lists of all Sony products for the audit period.***  Tessera
additionally points to the fact that the auditors also requested information on all "royalty-bearing

28  Product."  This, however, only proves Sony's point that only products that are "royalty-bearing"
under the License Agreement are relevant.

1 | are completely false.  Nor is it true that Sony withheld information from other parts of Sony.  The
2 | auditor *never asked for this material* and, tellingly, the audit report never says that he did.

3 |       In attempt to resolve this dispute, and to provide Tessera with documents that it actually is
4 | entitled to, Sony has offered to provide documents related to royalty bearing Sony products, as
5 | those products are defined in the License Agreement.  Rather than agree to this reasonable
6 | proposal, Tessera is intent on seeking discovery on products that have no bearing on this case, the
7 | only conceivable goal of which is to waste Sony's time and resources.

8 | **Tessera's Final And "Most Reasonable" Proposal For Resolution**

9 |       Tessera believes that the scope and subject matter of Tessera's Second Sets of Requests for
10 | Production and Interrogatories are proper and that Tessera is entitled to the discovery requested
11 | therein.  However, Tessera made the reasonable proposal, rejected by Sony, to narrow the scope of
12 | Tessera's second sets of discovery requests by limiting the time period to the period covered by
13 | the audit.  As noted above, Tessera also has expressly limited the definition of "Sony Product" to
14 | products that are "electronic" and "that include at least one BGA or LGA package."  Tessera
15 | remains willing to agree to both limitations for purposes of resolving this dispute.

16 | **Sony's Final And "Most Reasonable" Proposal For Resolution**

17 |       Sony's proposal is that Tessera be limited to discovery of products that are relevant to this
18 | litigation, namely those made "by or for Sony" during the period of the audit and that are covered
19 | by the specific definition provided in Section IV.C of the Second Addendum of the Agreement.

20 | Dated:  September 21, 2012          IRELL & MANELLA LLP

21 |

22 |           By:   /s/ Richard W. Krebs      
23 |           Richard W. Krebs
          *Attorneys for Plaintiff Tessera, Inc.*

24 |

25 | Dated:  September 21, 2012          FOLEY & LARDNER LLP

26 |           By:  /s/ Aaron W. Moore      
          Aaron W. Moore
27 |           *Attorneys for Defendant Sony Corp.*

28 |

1

**Attestation Of Concurrence In Filing**

2

     Pursuant to Civil L.R. 5-1(i)(3), I, Richard W. Krebs, hereby attest that concurrence in the

3

filing of this Discovery Dispute Joint Report #4 has been obtained from Aaron W. Moore, counsel

4

for Sony.

5

Dated:  September 21, 2012                     IRELL & MANELLA LLP

6

7

                                By:    /s/ Richard W. Krebs

8

                                        Richard W. Krebs
                                        *Attorneys for Plaintiff Tessera, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

IRELL & MANELLA LLP
Morgan Chu (70446) (mchu@irell.com)
Melissa R. McCormick (180384) (mmccormick@irell.com)
Benjamin W. Hattenbach (186455) (bhattenbach@irell.com)
Lisa S. Glasser (223406) (lglasser@irell.com)
Richard W. Krebs (278701) (rkrebs@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199

*Attorneys for Plaintiff Tessera, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>SONY CORPORATION,<br><br>        Defendant. | Case No. 5:11-CV-04399-EJD (HRL)<br><br>PLAINTIFF TESSERA, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SONY CORPORATION |

    Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Tessera, Inc. ("Tessera") hereby propounds the requests for production below and requests that Defendant Sony Corporation ("Sony") produce for inspection and/or copying the following described Documents and things at the offices of Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067, as well as a written response within 30 days.

## DEFINITIONS AND INSTRUCTIONS

    The definitions and instructions below are provided for purposes of responding to the requests for production that follow.

1    A.    "Sony", "You" or "Your" refers to Defendant Sony Corporation; all past or present

2 divisions, departments, parents, subsidiaries, affiliates, partnerships, joint ventures, predecessors

3 or successors thereof, and all past and present officers, directors, employees, agents,

4 representatives, consultants, managers, partners, or attorneys thereof.

5    B.    "Billable Pin" refers to any electrical connection to an IC bond pad made or contained

6 within a package.

7    C.    "IC" refers to integrated circuit.

8    D.    "BGA" refers to ball grid array.

9    E.    "LGA" refers to land grid array.

10    F.    "Sony Product" refers to any products or goods, finished or unfinished, that were made,

11 used, sold, offered for sale, imported or exported, or transferred by Sony between October 15,

12 1997 and September 24, 2010.

13    G.    "Thing" shall be construed under the broadest possible construction under the Federal

14 Rules of Civil Procedure.

15    H.    The terms "Identify" or "Identity" when used in connection with a Thing (including

16 without limitation any products made, used, sold, offered for sale, imported or exported, or

17 transferred by Sony), means to state: the date that the Thing was made; the date the Thing was

18 sold, used, or transferred by Sony; all numbers or codes used to refer to the Thing; all brand names

19 used to advertise or market the Thing; all parts used to make the Thing; and all processes used to

20 make the Thing.

21    I.    "Document" means any tangible thing that comes within the meaning of "writing"

22 contained in Rule 1001 of the Federal Rules of Evidence, or within the meaning of "Document" or

23 "tangible thing" contained in Rule 34 of the Federal Rules of Civil Procedure (including without

24 limitation, all items referenced in Rule 34(a)), along with every form of recording any form of

25 communication or representation upon any tangible thing, including every form of recording

26 letters, words, pictures, sounds, or symbols, or combinations thereof by means such as

27 handwriting, printing, photostatting, photographing, magnetic taping or writing, optically burning

28 or encoding, or any other form of storing, compiling, or mechanically or electrically recording

1  data onto any media including paper, film, plastic, magnetic tape, computer disks, compact discs

2  (CDs), digital video discs (DVDs) and the like.  For example, the term "Document" includes

3  without limitation, correspondence, memoranda, notes, diaries, minutes, statistics, letters,

4  telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures,

5  periodicals, receipts, returns, summaries, pamphlets, books, notebooks, lab notebooks, invention

6  disclosures, prospectuses, interoffice, and intra-office communications, offers, notations of any

7  sort of conversations, working papers, applications, permits, surveys, indices, telephone calls,

8  meetings, printouts, teletypes, telefax, telefax records, invoices, work sheets, graphic or oral

9  representations of any kind (including without limitation, pictures, photographs, charts,

10  microfiche, microfilm, videotape, audiotape, recordings, motion pictures, plans, drawings,

11  surveys), and electronic, mechanical or electric records or representations of any kind (including,

12  without limitation, electronic mail or e-mail, Instant Messages, tapes, cassettes, discs, and

13  recordings).

14  J.       In producing Documents and things responsive to these requests, Sony shall furnish all

15  Documents within its possession, custody, or control, regardless of whether these Documents are

16  possessed directly by Sony, or by its present or past agents, employees, affiliates, related companies,

17  subsidiaries, representatives, investigators, contractors, sub-contractors, or attorneys.  Where

18  knowledge or information in Your possession is requested, the request extends to knowledge or

19  information in the possession of Your predecessors and/or successors, as well as to information in

20  the possession of Your officers, directors, agents, employees, servants, representatives and, unless

21  privileged, attorneys.  Whenever an answer to these requests for production contains information

22  which is not based upon Your personal knowledge, state the source and nature of such

23  information.

24  K.       Every draft, version, revision or non-identical copy of a "Document," including copies

25  that differ from the original because of hand notation(s), shall be considered a separate

26  "Document," as that term is used herein, but exhibits, appendices and attachments to a

27  "Document" shall be considered part of the "Document" itself.

28

1     L.     Electronic mail or messages produced under these requests for production shall include

2 extracted text and metadata, fields showing the date and time that the Document was sent and

3 received, the complete distribution list, and attachments.

4     M.     In producing the Documents requested herein, produce them with, and in sequence,

5 copies of their original file folders, if any, or in lieu thereof, copies of all information appearing on

6 or otherwise associated with the original file folder.  In addition, the Documents shall be produced

7 in the same sequence as they are contained or found in the original file folder.  The integrity and

8 internal sequence of the requested Documents within each file folder shall not be disturbed.  Under

9 no circumstances shall Documents from any file folder be commingled with Documents from any

10 other file folder.

11     N.     If a Document or thing responsive to any request is not produced on any ground, such

12 as attorney-client privilege or work product immunity, identify the Document or thing to the

13 extent the request is not objected to, and provide, at the time at which the responses to these

14 requests are served, a log which separately, for each Document or thing not produced, sets forth:

15 (1) the specific ground(s) for not producing the Document or thing in full; (2) the identity

16 (including the name, address, and title) of the author or creator thereof, the addressees and parties

17 thereto, each Person to whom or from which a copy of the Document or thing has been sent or

18 received; and any Person who helped in the preparation of the Document or thing; (3) the title or

19 other Identifying data sufficient to describe the Document or thing for purposes of a subpoena

20 *duces tecum*; (4) the date of the Document or thing, or if no date appears thereon, the approximate

21 date (including information concerning its relationship to other events); (5) the identity of each

22 Person to whom the Document or thing, or any copy thereof, was transmitted, shown, or disclosed

23 by any entity; (6) the identity and location of each Person having or last having possession, care,

24 custody, or control of the Document or thing and each of any copies thereof; (7) the purpose for

25 which the Document or thing was prepared; and (8) each and every fact or basis upon which the

26 privilege or ground for refusing to fully identify is asserted, in such detail as would be required for

27 Tessera to test the claim of privilege on a motion to compel.

28

1      O.      In the event that any Document or thing or portion thereof called for by this set of

2   requests is known to have been lost or destroyed (either as a result of a Document destruction

3   policy or otherwise), provide a written statement setting forth the following information for each

4   such item:  (1) the identity of the item; (2) the nature of the item (e.g. letter, memorandum, chart,

5   engineering drawing, etc.); (3) the identity of each Person(s) who received, reviewed or inspected

6   the item including any sender(s), author(s), or addressee(s) whether indicated as such or not; (4)

7   the date that the item was created, or if there is no record of this information, the approximate date

8   (including information concerning its relationship to other events); (5) a description of the subject

9   matter of the item; (6) if the item is a Document, the number of pages; (7) information regarding

10   whether any attachments or appendices to the item exist or existed, along with a description of any

11   such attachments or appendices; (8) all Persons to whom the item was distributed, shown, or

12   explained; and (9) the circumstances of the loss or destruction of the item including the date of

13   destruction or loss, the identity of the Person(s) who lost or destroyed the item, and if the item was

14   destroyed, the identity of the Person(s) who authorized the destruction.

15                          **REQUESTS FOR PRODUCTION**

16      17.      Documents sufficient to Identify each Sony Product.

17      18.      Documents sufficient to show the quantity of each Sony Product made, used, sold,

18   offered for sale, imported or exported, or transferred by Sony, by quarter from October 15, 1997 to

19   September 24, 2010.

20      19.      Documents sufficient to show, for each Sony Product, each BGA and LGA

21   package that the product contains, and the quantity of each such package contained within each

22   such product.

23      20.      Documents sufficient to show, for each BGA and LGA package included in any

24   Sony Product, the manufacturer of the package.

25      21.      Documents sufficient to show, for each BGA and LGA package included in any

26   Sony Product, the number of Billable Pins contained in the package.

27      22.      Documents sufficient to show, for each BGA and LGA package included in any

28   Sony Product, whether the chip(s) within the package are in a face up or face down orientation; the

1  location and pitch of the terminals relative to the IC(s) in the package; and whether the package

2  substrate is reinforced, and if so, its thickness.

3

4  Dated:  July 18, 2012                  IRELL & MANELLA LLP
                                          Morgan Chu
5                                         Melissa R. McCormick
                                          Benjamin W. Hattenbach
6                                         Lisa S. Glasser
                                          Richard W. Krebs
7

8                                         By:    /s/ Richard W. Krebs
                                                 Richard Krebs
9                                                *Attorneys for Plaintiff Tessera, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2   I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1800 Avenue of the Stars, Suite 900,

3 Los Angeles, California 90067-4276.

4   On July 18, 2012, I served the foregoing document described as **PLAINTIFF TESSERA, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SONY**

5 **CORPORATION** on each interested party, as stated on the attached service list.

6       Aaron W. Moore
         Foley & Lardner LLP

7       111 Huntington Avenue
         Boston, MA 02199

8       Email: (amoore@foley.com)
         Email: (BOST-File-Sony-Tessera-NDCal@foley.com)

9

10   [X]   (BY ELECTRONIC MAIL)  I caused the foregoing document to be served
       electronically by electronically  mailing a true and correct copy through Irell &

11       Manella LLP's electronic mail system to the e-mail address(es), as stated on the
       attached service list, and the transmission was reported as complete and no error

12       was reported.

13   Executed on July 18, 2012, at Los Angeles, California.

14   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

15

16

 _____   _____

  Richard Krebs (rkrebs@irell.com)

17   (Type or print name)         (Signature)

18

19

20

21

22

23

24

25

26

27

28

2674985.2 04

Exhibit B

IRELL & MANELLA LLP
Morgan Chu (70446) (mchu@irell.com)
Melissa R. McCormick (180384) (mmccormick@irell.com)
Benjamin W. Hattenbach (186455) (bhattenbach@irell.com)
Lisa S. Glasser (223406) (lglasser@irell.com)
Richard W. Krebs (278701) (rkrebs@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

*Attorneys for Plaintiff Tessera, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC., | Case No. 5:11-CV-04399-EJD (HRL) |
| Plaintiff, | PLAINTIFF TESSERA, INC.'S SECOND SET OF INTERROGATORIES TO DEFENDANT SONY CORPORATION |
| v. | |
| SONY CORPORATION, | |
| Defendant. | |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Tessera, Inc. ("Tessera") hereby propounds the interrogatories below and requests Defendant Sony Corporation ("Sony") answer separately and fully in writing and under oath within 30 days after service hereof.

## DEFINITIONS AND INSTRUCTIONS

The definitions and instructions below are provided for purposes of responding to the interrogatories that follow.

A.     "Set Forth The Complete Basis For" includes identifying all facts, Documents, and legal support that You may rely upon in support of Your argument, claim, defense, and/or

1    contention and all persons who may offer testimony in support of any such argument, claim,

2    defense, and/or contention.

3         B.      "Sony", "You" or "Your" refers to Defendant Sony Corporation; all past or present

4    divisions, departments, parents, subsidiaries, affiliates, partnerships, joint ventures, predecessors

5    or successors thereof, and all past and present officers, directors, employees, agents,

6    representatives, consultants, managers, partners, or attorneys thereof.

7         C.      ""Billable Pin" refers to any electrical connection to an IC bond pad made or

8    contained within a package.

9         D.      "IC" refers to integrated circuit.

10         E.      "BGA" refers to ball grid array.

11         F.      "LGA" refers to land grid array.

12         G.      "Royalty Bearing Tessera Licensed Product" refers to BGA and LGA packages

13    which (1) have at least one die in a face down configuration, a package substrate terminal pitch of

14    1 mm or less, and at least one package substrate terminal located directly beneath the IC, or (2)

15    have at least one die in a face up configuration, a package substrate terminal pitch of 1 mm or less,

16    at least one package substrate terminal located directly beneath the IC, and in which the package

17    substrate is unreinforced or in which the package substrate is reinforced and the thickness of the

18    reinforced substrate is 0.36 mm or less.

19         H.      "Sony Product" refers to any products or goods, finished or unfinished, that were

20    made, used, sold, offered for sale, imported or exported, or transferred by Sony between October

21    15, 1997 and September 24, 2010.

22         I.      "Thing" shall be construed under the broadest possible construction under the

23    Federal Rules of Civil Procedure.

24         J.      "Document" means any tangible thing that comes within the meaning of "writing"

25    contained in Rule 1001 of the Federal Rules of Evidence, or within the meaning of "Document" or

26    "tangible thing" contained in Rule 34 of the Federal Rules of Civil Procedure (including without

27    limitation, all items referenced in Rule 34(a)), along with every form of recording any form of

28    communication or representation upon any tangible thing, including every form of recording

1   letters, words, pictures, sounds, or symbols, or combinations thereof by means such as

2   handwriting, printing, photostatting, photographing, magnetic taping or writing, optically burning

3   or encoding, or any other form of storing, compiling, or mechanically or electrically recording

4   data onto any media including paper, film, plastic, magnetic tape, computer disks, compact discs

5   (CDs), digital video discs (DVDs) and the like. For example, the term "Document" includes

6   without limitation, correspondence, memoranda, notes, diaries, minutes, statistics, letters,

7   telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures,

8   periodicals, receipts, returns, summaries, pamphlets, books, notebooks, lab notebooks, invention

9   disclosures, prospectuses, interoffice, and intra-office communications, offers, notations of any

10  sort of conversations, working papers, applications, permits, surveys, indices, telephone calls,

11  meetings, printouts, teletypes, telefax, telefax records, invoices, work sheets, graphic or oral

12  representations of any kind (including without limitation, pictures, photographs, charts,

13  microfiche, microfilm, videotape, audiotape, recordings, motion pictures, plans, drawings,

14  surveys), and electronic, mechanical or electric records or representations of any kind (including,

15  without limitation, electronic mail or e-mail, Instant Messages, tapes, cassettes, discs, and

16  recordings).

17      K.      The terms "Identify" or "Identity" when used in connection with a Thing (including

18  without limitation any products made, used, sold, offered for sale, imported or exported, or

19  transferred by Sony), means to state: the date that the Thing was made; the date the Thing was

20  sold, used, or transferred by Sony; all numbers or codes used to refer to the Thing; all brand names

21  used to advertise or market the Thing; all parts used to make the Thing; and all processes used to

22  make the Thing.

23      L.      The terms "Identify" or "Identity" when used in connection with a written

24  statement or Document means to state: the name of the author; the type of Document or writing;

25  the date; the addressee, or recipient, if practicable, and otherwise a general description of the

26  persons to whom the writing was distributed; the subject matter; and the present location. In lieu

27  of such identification, you may attach a copy of the writing containing said statement and refer

28  thereto in your answer.

M.      The terms "Identify" or "Identity" when used in connection with an oral statement means to state:  the name of the speaker; the date of the statement; the place at which the statement was made; the person or persons to whom the statement was addressed, if practicable, and otherwise a general description of the persons to whom the statement was addressed; the subject matter of the statement; any response provided concerning the statement; and if the statement was memorialized in writing or mechanical or other recording, state the date and present location of said writing or mechanical or other recording.

N.      Where knowledge or information in Your possession is requested, the request extends to knowledge or information in the possession of Your predecessors and/or successors, as well as to information in the possession of Your officers, directors, agents, employees, servants, representatives and, unless privileged, attorneys.  Whenever an answer to these interrogatories contains information which is not based upon Your personal knowledge, state the source and nature of such information.

## INTERROGATORIES

4.      Identify each Sony Product.

5.      State the quantity of each Sony Product made, used, sold, offered for sale, imported or exported, or transferred by Sony, by quarter from October 15, 1997 through September 24, 2010.

6.      Separately for each Sony Product, identify each BGA and LGA package that the product contains, and the quantity of each such package contained within each such product.

7.      Separately for each BGA and LGA package included in any Sony Product, state the manufacturer of the package.

8.      Separately for each BGA and LGA package included in any Sony Product, state the number of Billable Pins contained in the package.

9.      Separately for each BGA and LGA package included in any Sony Product, describe with specificity: whether the chip(s) within the package are in a face up or face down orientation; the location and pitch of the terminals relative to the IC(s) in the package; and whether the package substrate is reinforced, and if so, its thickness.

10.     If You contend that any BGA or LGA package included in any Sony Product is not a Royalty Bearing Tessera Licensed Product, Identify each such Product and package and Set Forth The Complete Basis For Your contention separately for each applicable product-and-package combination.

11.     Identify all requests for information (including any Documents) made by the Connor Group auditors to Sony and all information (including any Documents) provided by Sony to the Connor Group auditors.


Dated:  July 18, 2012                              IRELL & MANELLA LLP
                                                   Morgan Chu
                                                   Melissa R. McCormick
                                                   Benjamin W. Hattenbach
                                                   Lisa S. Glasser
                                                   Richard W. Krebs

                                                   By:    /s/ Richard W. Krebs
                                                          Richard Krebs
                                                          *Attorneys for Plaintiff Tessera, Inc.*

**PROOF OF SERVICE**

  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276.

  On July 18, 2012, I served the foregoing document described as **PLAINTIFF TESSERA, INC.'S SECOND SET OF INTERROGATORIES TO DEFENDANT SONY CORPORATION** on each interested party, as follows:

        Aaron W. Moore
        Foley& Lardner LLP
        111 Huntington Avenue
        Boston, MA 02199
        Email: (amoore@foley.com)
        Email: (BOST-File-Sony-Tessera-NDCal@foley.com)

  ☒   (BY ELECTRONIC MAIL)  I caused the foregoing document to be served electronically by electronically  mailing a true and correct copy through Irell & Manella LLP's electronic mail system to the e-mail address(es), as set forth above, and the transmission was reported as complete and no error was reported.

  Executed on July 18, 2012, at Los Angeles, California.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Richard Krebs (rkrebs@irell.com)
  (Type or print name)          (Signature)

2674035.10 05

Exhibit C

**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, STE. 1700
SAN FRANCISCO, CA 94104-1520
TEL.: (415) 438-6469
FAX: (415) 434-4507
EILEEN R. RIDLEY (CA BAR NO. 151735)
ERIDLEY@FOLEY.COM

**FOLEY & LARDNER LLP**
111 HUNTINGTON AVE, STE. 2600
BOSTON, MA 02199-7610
TEL.: (617) 342-4000
FAX: (617) 342-4001
MATTHEW B. LOWRIE (*PRO HAC VICE*)
MLOWRIE@FOLEY.COM
AARON W. MITS SEEKS(*PRO HAC VICE*)
AMOORE@FOLEY.COM

**FOLEY & LARDNER LLP**
321 NORTH CLARK ST., STE. 2800
CHICAGO, IL 60654-5313
TEL.: (312) 832-4568
FAX: (312) 832-4700
RUBEN J. RODRIGUES (*PRO HAC VICE*)
RRODRIGUES@FOLEY.COM

ATTORNEYS FOR DEFENDANT SONY CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| Tessera, Inc., a Delaware corporation,<br><br>    Plaintiff<br><br>    v.<br><br>Sony Corporation, a Japanese corporation,<br><br>    Defendants. | Case No. 5:CV 11-04399-EJD<br><br>**SONY CORPORATION'S RESPONSE TO TESSERA'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 17-22)** |

Defendant Sony Corporation ("Sony"), by and through its attorneys, responds to Tessera, Inc.'s ("Tessera") Second Set of Requests for Production of July 18, 2012 as follows:

**GENERAL OBJECTIONS**

1.      Sony incorporates by reference its General Objections contained in its Responses to Tessera's First Set of Requests For Production to Sony Corporation, dated March 2, 2012, its Responses to Tessera's Second Set of Requests For Production, date August 20, 2012, its Responses to Tessera's First Set of Interrogatories, dated March 2, 2012, and its Responses to Tessera's Second Set of Interrogatories, dated August 20, 2012.

2.      Sony further objects to the Tessera's Requests to the extent that they call for the production of "all" documents pertaining to a specific subject, on the ground that such language is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a search is required, Sony will search those files in its possession, custody, or control where there is a reasonable likelihood that responsive documents may be located.

3.      Sony further objects to these Requests to the extent that they are directed to products other than those covered by the license agreement in dispute on the ground that such requests are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Sony further objects to these Requests to the extent they seek information that is proprietary to a third party and/or that is subject to a confidentiality agreement with a third party.

5.      Sony further objects to these Requests to the extent that they call for information outside the possession, custody, and control of Sony on the ground that such requests are overly broad, unduly burdensome, would subject Sony to undue annoyance, oppression, burden and expense, seek to impose upon Sony an obligation to investigate information and materials from third parties or services that are equally accessible to Tessera, and are not reasonably calculated to lead to the discovery of admissible evidence.

6.      Sony further objects to these Requests to the extent that they seek any information protected by attorney-client privilege and/or attorney work product immunity.  To the extent that privileged or work product immune information is called for by Tessera's Requests, and is embodied in documents, the documents will be identified in a listing of privileged and work

product documents (a "Privileged Document Log") as required by law.  Any inadvertent disclosure of such information shall not be deemed a waiver of the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

7.     Sony objects to the definition of "Sony," "You," or "Your" as overly broad and unduly burdensome to the extent it calls for information not in Sony's possession, custody, or control, would subject Sony to undue annoyance, oppression, burden, and expense, and seek to impose upon Sony an obligation to investigate information and materials from third parties or services that are equally accessible to Tessera.

8.     Sony objects to the definition of "Billable Pin" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant to any claim or defense of any party and as vague, ambiguous, and confusing to the extent Tessera's definition attempts to conflate the definition of this term as it is used in agreements between Tessera and Sony.

9.     Sony objects to the definition of "Sony Product" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to the claim or defense of any party.  Sony further objects to this definition to the extent the terms "finished or unfinished" and "transferring" are vague and ambiguous.

10.     Sony objects to the definition of "Document" to the extent it attempts to impose any requirements beyond those of the Federal Rules.

11.     Sony objects to the definition of "Identify" or "Identity" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant to the claim or defense of any party and vague, and ambiguous for reciting "general description."

12.     Sony objects to Tessera's requests to the extent they are overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any claim or defense of any party.

**RESPONSES TO REQUESTS FOR PRODUCTION**

**REQUEST NO. 17:**

    Documents sufficient to Identify each Sony Product.

**RESPONSE TO REQUEST NO. 17:**

    In addition to its General Objections, and in particular the objection to the term 'Sony Product," Sony further objects to this request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any claim or defense of any party.

**REQUEST NO. 18:**

    Documents sufficient to show the quantity of each Sony Product made, used, sold, offered for sale, imported or exported, or transferred by Sony, by quarter from October 15, 1997 to September 24, 2010.

**RESPONSE TO REQUEST NO. 18:**

    In addition to its General Objections, and in particular the objection to the term 'Sony Product," Sony further objects to this request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any claim or defense of any party. Sony further objects to the extent the term "transferred" is vague and ambiguous.

**REQUEST NO. 19:**

    Documents sufficient to show, for each Sony Product, each BGA and LGA package that the product contains, and the quantity of each such package contained within each such product.

**RESPONSE TO REQUEST NO. 19:**

    In addition to its General Objections, and in particular the objection to the term 'Sony Product," Sony further objects to this request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any claim or defense of any party.  Sony further objects to this request to the extent the term "package" is vague and ambiguous.

1  **REQUEST NO. 20:**

2      Documents sufficient to show, for each BGA and LGA package included in any Sony

3  Product, the manufacturer of the package.

4  **RESPONSE TO REQUEST NO. 20:**

5      In addition to its General Objections, and in particular the objection to the term 'Sony

6  Product," Sony further objects to this request as overly broad, unduly burdensome, not

7  reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

8  claim or defense of any party.  Sony further objects to the extent the terms "package" and

9  "manufacturer" are vague and ambiguous.

10  **REQUEST NO. 21:**

11      Documents sufficient to show, for each BGA and LGA package included in any Sony

12  Product, the number of Billable Pins contained in the package.

13  **RESPONSE TO REQUEST NO. 21:**

14      In addition to its General Objections, and in particular the objection to the term 'Sony

15  Product," Sony further objects to this request as overly broad, unduly burdensome, not

16  reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

17  claim or defense of any party.  Sony further objects to this request to the extent the term

18  "package" is vague and ambiguous.

19  **REQUEST NO. 22:**

20      Documents sufficient to show, for each BGA and LGA package included in any Sony

21  Product, whether the chip(s) within the package are in a face up or face down orientation; the

22  location and pitch of the terminals relative to the IC(s) in the package; and whether the package

23  substrate is reinforced, and if so, its thickness.

24  **RESPONSE TO REQUEST NO. 22:**

25      In addition to its General Objections, and in particular the objection to the term 'Sony

26  Product," Sony further objects to this request as overly broad, unduly burdensome, not

27  reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

28  claim or defense of any party.  Sony further objects to the extent the terms "face up or face down

orientation," "location and pitch," "relative to the IC(s)," "whether the package substrate is reinforced," and "thickness" are vague and ambiguous.

Dated:  August 20, 2012

By: /s/ *Aaron W. Moore*
_____

AARON W. MOORE

1

## CERTIFICATE OF SERVICE

2

3       I certify that I caused to be served copies of the foregoing document on August 20, 2012,

4   upon the following by electronic mail:

5

6                           Counsel of Record
                           Irell & Manella LLP
7                       1800 Avenue of the Stars, Suite 900
                        Los Angeles, CA  90067-4276
8                        Telephone:  (310) 277-1010
                           Fax:  (310) 203-7199

9                       #Tessera-SonyAudit@irell.com

10

11   Dated:  August 20, 2012

12                                   By:  /s/ Ruben J. Rodrigues

13                                        Ruben J. Rodrigues

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Exhibit D

**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, STE. 1700
SAN FRANCISCO, CA 94104-1520
TEL.: (415) 438-6469
FAX: (415) 434-4507
EILEEN R. RIDLEY (CA BAR NO. 151735)
ERIDLEY@FOLEY.COM

**FOLEY & LARDNER LLP**
111 HUNTINGTON AVE, STE. 2600
BOSTON, MA 02199-7610
TEL.: (617) 342-4000
FAX: (617) 342-4001
MATTHEW B. LOWRIE (*PRO HAC VICE*)
MLOWRIE@FOLEY.COM
AARON W. MOORE (*PRO HAC VICE*)
AMOORE@FOLEY.COM

**FOLEY & LARDNER LLP**
321 NORTH CLARK ST., STE. 2800
CHICAGO, IL 60654-5313
TEL.: (312) 832-4568
FAX: (312) 832-4700
RUBEN J. RODRIGUES (*PRO HAC VICE*)
RRODRIGUES@FOLEY.COM

ATTORNEYS FOR DEFENDANT SONY CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| Tessera, Inc., a Delaware corporation,<br><br>    Plaintiff<br><br>    v.<br><br>Sony Corporation, a Japanese corporation,<br><br>    Defendants. | Case No. 5:CV 11-04399-EJD<br><br>**SONY CORPORATION'S RESPONSE TO TESSERA'S SECOND SET OF INTERROGATORIES (NOS. 4-11).** |

        Defendant Sony Corporation ("Sony"), by and through its attorneys, responds to Tessera, Inc.'s ("Tessera") Second Set of Interrogatories (Nos. 4-11) of July 18, 2012 as follows:

## **GENERAL OBJECTIONS**

1.      Sony incorporates by reference its General Objections contained in its Responses and Objections to Tessera's First Set of Interrogatories to Sony Corporation, dated March 2, 2012 and its General Objections contained in its Responses and Objections to Tessera's First Set of Requests for Production, dated March 2, 2012.

2.      Sony objects to Tessera's Interrogatories to the extent that they seek information that is not reasonably calculated to lead to the discovery of admissible evidence and not relevant to the claim or defense of any party.

3.      Sony objects to these Interrogatories to the extent they seek information protected by attorney-client privilege and/or attorney work product immunity.  To the extent that privileged or work product immune information is called for by Tessera's Interrogatories, and is embodied in documents, the documents will be identified in a listing of privileged and work product documents (a "Privileged Documents Log").  Any inadvertent disclosure of such information shall not be deemed a waiver of the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

4.      Sony objects to these Interrogatories to the extent they purport to seek information or documents no longer in existence or not in Sony's possession, custody, or control on grounds that such interrogatories are overly broad, would subject Sony to undue annoyance, oppression, burden, and expense, and seek to impose upon Sony an obligation to investigate information and materials from third parties or services who are equally accessible to Tessera.

5.      Sony further objects to these Interrogatories to the extent they seek information that requires further investigation and discovery.  Discovery in this matter is continuing and Sony reserves the right to supplement and amend these responses with additional or different information that discovery or further investigation may disclose.

2

6.      Sony further objects to these Interrogatories to the extent such interrogatories seek information or production of documents protected by any joint defense or joint interest privilege or the work product doctrine.  Such information or documents shall not be provided in response to the interrogatories and any inadvertent disclosure or production of such information or documents shall not be deemed a waiver or any privilege with respect to such information or documents or of any work product immunity which may attached to such information or documents.

7.      Sony objects to the definition of "Set Forth The Complete Basis For" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant to any claim or defense of any party, and vague and ambiguous to the extent that it calls for "all facts, Documents, and legal support that You may rely upon."

8.      Sony objects to the definition of "Sony," "You," or "Your" as overly broad and unduly burdensome to the extent it calls for information not in Sony's possession, custody, or control, would subject Sony to undue annoyance, oppression, burden, and expense, and seek to impose upon Sony an obligation to investigate information and materials from third parties or services that are equally accessible to Tessera.

9.      Sony objects to the definition of "Billable Pin" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant to any claim or defense of any party and as vague, ambiguous, and confusing to the extent Tessera's definition attempts to conflate the definition of this term as it is used in agreements between Tessera and Sony.

10.     Sony objects to the definition of "Royalty Bearing Tessera Licensed Product" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant to the claim or defense of any party and as vague, ambiguous,

and confusing to the extent Tessera's definition attempts to conflate the definition of this term as it is used in agreements between Tessera and Sony, or as it purports to describe any products covered by those agreements.

11.   Sony objects to the definition of "Sony Product" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to the claim or defense of any party.  Sony further objects to this definition to the extent the terms "finished or unfinished" and "transferring" are vague and ambiguous.

12.   Sony objects to the definition of "Document" to the extent it attempts to impose any requirements beyond those of the Federal Rules.

13.   Sony objects to the definition of "Identify" or "Identity" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant to the claim or defense of any party and vague, and ambiguous for reciting "general description."

14.   Sony's responses herein reflect its present knowledge, information, and belief, and may be changed or modified based on further discovery or as additional facts and circumstances come to Sony's attention.

15.   Sony further objects to these Interrogatories to the extent they seek information that is proprietary to a third party and/or that is subject to a confidentiality agreement with a third party.

16.   Sony's responses herein are made without waiving or intending to waive any objections as to relevancy, privilege, or admissibility of any documents produced in response to Tessera's interrogatories or requests for production, or any information contained therein, in any subsequent proceedings or at the trial of this or any other action, on any ground.

4

17.    A willingness to produce documents in response to any particular one of Tessera's Interrogatories is in no way a concession that such documents exist, or that such documents are within Sony's possession, custody or control.  Nothing in these responses shall be deemed to limit or waive Sony's right to assert attorney-client privilege and/or attorney work product protections.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 4

Identify each Sony Product.

### RESPONSE TO INTERROGATORY NO. 4:

In addition to its General Objections, and in particular the objection to the term 'Sony Product," Sony further objects to this interrogatory as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any claim or defense of any party.

### INTERROGATORY NO. 5

State the quantity of each Sony Product made, used, sold, offered for sale, imported or exported, or transferred by Sony, by quarter from October 15, 1997 through September 24, 2010.

### RESPONSE TO INTERROGATORY NO. 5:

In addition to its General Objections, and in particular the objection to the term 'Sony Product," Sony further objects to this interrogatory as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any claim or defense of any party.  Sony further objects to the extent the term "transferred" is vague and ambiguous.

### INTERROGATORY NO. 6

Separately for each Sony Product, identify each BGA and LGA package that the product contains, and the quantity of each such package contained within each such product.

1    **RESPONSE TO INTERROGATORY NO. 6:**

2      In addition to its General Objections, and in particular the objection to the term 'Sony

3    Product," Sony further objects to this interrogatory as overly broad, unduly burdensome, not

4    reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

5    claim or defense of any party.  Sony further objects to this interrogatory to the extent the term

6    "package" is vague and ambiguous.

7    **INTERROGATORY NO. 7**

8      Separately for each BGA and LGA package included in any Sony Product, state the

9    manufacturer of the package.

10    **RESPONSE TO INTERROGATORY NO. 7:**

11      In addition to its General Objections, and in particular the objection to the term 'Sony

12    Product," Sony further objects to this interrogatory as overly broad, unduly burdensome, not

13    reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

14    claim or defense of any party.  Sony further objects to the extent the terms "package" and

15    "manufacturer" are vague and ambiguous.

16    **INTERROGATORY NO. 8**

17      Separately for each BGA and LGA package included in any Sony Product, state the

18    number of Billable Pins contained in the package.

19    **RESPONSE TO INTERROGATORY NO. 8:**

20      In addition to its General Objections, and in particular the objection to the term 'Sony

21    Product," Sony further objects to this interrogatory as overly broad, unduly burdensome, not

22    reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

23    claim or defense of any party.  Sony further objects to this interrogatory to the extent the term

24    "package" is vague and ambiguous.

25    **INTERROGATORY NO. 9**

26      Separately for each BGA and LGA package included in any Sony Product, describe with

27    specificity: whether the chip(s) within the package are in a face up or face down orientation; the

28

         SONY'S RESPONSES TO TESSERA'S
SECOND SET OF INTERROGATORIES

1  location and pitch of the terminals relative to the IC(s) in the package; and whether the package

2  substrate is reinforced, and if so, its thickness.

3  **RESPONSE TO INTERROGATORY NO. 9:**

4  In addition to its General Objections, and in particular the objection to the term 'Sony

5  Product," Sony further objects to this interrogatory as overly broad, unduly burdensome, not

6  reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

7  claim or defense of any party.  Sony further objects to the extent the terms "face up or face down

8  orientation," "location and pitch," "relative to the IC(s)," "whether the package substrate is

9  reinforced," and "thickness" are vague and ambiguous.

10 **INTERROGATORY NO. 10**

11 If You contend that any BGA or LGA package included in any Sony Product is not a

12 Royalty Bearing Tessera Licensed Product, Identify each such Product and package and Set

13 Forth The Complete Basis For Your contention separately for each applicable product-and

14 package combination.

15 **RESPONSE TO INTERROGATORY NO. 10:**

16 In addition to its General Objections, and in particular the objection to the term 'Sony

17 Product," Sony further objects to this interrogatory as overly broad, unduly burdensome, not

18 reasonably calculated to lead to the discovery of admissible evidence, and not relevant to any

19 claim or defense of any party.  Sony further objects to the extent the term "package" is vague and

20 ambiguous.

21 **INTERROGATORY NO. 11**

22 Identify all requests for information (including any Documents) made by the Connor

23 Group auditors to Sony and all information (including any Documents) provided by Sony to the

24 Connor Group auditors.

25 **RESPONSE TO INTERROGATORY NO. 11:**

26 In addition to its General Objections, Sony further objects to this interrogatory as overly

27 broad and unduly burdensome to the extent information is equally available to Sony as it is to

28 Tessera.  Sony further objects to the extent the terms "all requests for information," "all

7

1    information," and "Connor Group auditors" is vague and ambiguous.

2         Subject to and without waiving the foregoing General and Specific objections, and to the

3    extent Sony understands this interrogatory, Sony responds as follows:

4         Sony has produced documents, namely the correspondence between Sony and the Connor

5    Group, from which information sought in this Interrogatory may be ascertained pursuant to Fed.

6    R. Civ. P. 33(d).

7

8

     Dated:  August 20, 2012

9                                                   By: /s/ Aaron W. Moore

10                                                       AARON W. MOORE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    8

1

## **CERTIFICATE OF SERVICE**

2

3        I certify that I caused to be served copies of the foregoing document on August 20, 2012,

4    upon the following by electronic mail:

5

6                              Counsel of Record
                               Irell & Manella LLP
7                      1800 Avenue of the Stars, Suite 900
                           Los Angeles, CA  90067-4276
                            Telephone:  (310) 277-1010
8                                Fax:  (310) 203-7199

9                          #Tessera-SonyAudit@irell.com

10

11   Dated:  August 20, 2012

                                   By: /s/ Ruben J. Rodrigues
12                                                             _____

13                                     Ruben J. Rodrigues

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          1
28   Case No. 5:CV-11-04399-EJD                          CERTIFICATE OF SERVICE