UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC.,<br>A DELAWARE CORPORATION.<br><br>PLAINTIFF<br><br>vs.<br><br>SONY CORPORATION, A JAPANESE CORPORATION,<br><br>DEFENDANT. | CASE NO: 5:CV-11-04399-EJD<br><br>**DISCOVERY DISPUTE**<br>**JOINT REPORT #3**<br><br>Judge: Hon. Edward S. Davila<br>Mag. Judge: Hon. Howard R. Lloyd |

**Issue:** Whether the Court should compel Plaintiff Tessera, Inc. ("Tessera") to produce two categories of documents requested in Defendant Sony Corporation's ("Sony") First Set of Requests for Production.

**Joint Meeting:** The parties met and conferred by telephone on August 28, 2012. Following the telephonic meet and confer, Ben Hattenbach, counsel for Tessera, and Eileen Ridley, counsel for Sony, met in person on September 10, 2012 in San Jose, California, for a total of forty-five minutes, a portion of which addressed this issue. Sony contends that the parties reached impasse on September 14, 2012.

**Close of Discovery:** The fact discovery cutoff is October 19, 2012.

**Attestation of Compliance:** Undersigned counsel for Sony hereby certify that they have read and complied with Judge Lloyd's Standing Order Re: Civil Discovery Disputes. Tessera has cooperated in the filing of this Joint Report, but contends that Sony did not satisfy the meet and confer requirement.

**Background And Dispute:** This is a breach of contract case in which Tessera alleges that Sony has breached a License Agreement (the "Agreement") between the parties by failing to pay royalties alleged to be found owing in an audit report, and has breached the covenant of good faith and fair dealing. Sony has counterclaimed that Tessera has breached the implied covenant of good faith and fair dealing by causing to be prepared an audit report that is not independent and improperly and unfairly using the audit report as a basis to demand payment far beyond what it is entitled under the Agreement.

The present dispute involves Sony's request for audit reports concerning Tessera's third party licensees.

**Sony's Position:**

The categories of documents that are the subject of the present dispute are central to the issues to be decided in this case and there is no legitimate basis for Tessera's refusal to produce them.

The parties' claims center around an October 13, 2010 audit report (the "Audit Report"), prepared by any entity called Connor Group NV. In the Audit Report, Connor Group claimed to have obtained insufficient information to complete its audit and, for that reason, conducted a "reasonableness check," which applied a series of assumptions (but failed to observe the actual language of the License Agreement) to arrive at a figure that was approximately eighteen times the total of the royalties that had been paid during the entire audit period, and more than one thousand times the underpayment actually found by Connor Group's review of Sony's records during the audit. Tessera's entire case is based on the "reasonableness check," which it claims is an "audit," but which no reasonable person would consider an "audit," at least because the auditor (admittedly) did not even try to determine whether the products upon which it was based were royalty-bearing. Tessera's assertion that "[t]he auditors found that Sony owed Tessera considerable unpaid royalties" is a grotesque distortion of the actual document.

Sony served its First Set of Request for Production of Documents to Tessera ("Requests") on February 2, 2012. Tessera responded on March 9. Sony's Request No. 3 seeks "[a]ll documents that refer or relate to the Connor Group." (See Exhibit A.) Sony's Request No. 4 seeks "[a]ll documents that refer or relate to the preparation of audit reports for the purposes of calculating royalties pursuant to agreements that Tessera has entered into." *Id.* at 7.

During subsequent correspondence and conferences between counsel, including the in-person meet-and-confer on September 10, Sony identified two specific categories of documents falling within the scope of Request Nos. 3 and 4 that Tessera has failed to produce: (1) documents concerning audit reports prepared for Tessera other than the Audit Report; and (2) documents concerning other audits conducted by the Connor Group for Tessera. Tessera has refused to produce these documents on the grounds that they are not relevant.

Rule 26 of the Federal Rules of Civil Procedure broadly permits discovery of information that is

1  "reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1). Evidence is
2  relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the
3  evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

4      The categories of information that are the subject of this Joint Report clearly meet the
5  requirements for discoverability under Rule 26.

6  ████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████
8  ███████████████████████████████████████ The auditor also conducted
9  a "reasonableness check" in which he made a series of assumptions to arrive at a guess about an amount
10 of royalties that would be owed if a percentage of Sony's products all contained royalty bearing chips.
11 Although the reasonableness check made no effort to determine whether the chips that it identified were
12 royalty bearing, it forms the basis for Tessera's claims of unpaid royalties in this case.

13     Sony's view is that the reasonableness check is not an "audit," and that it is unreasonable and
14 improper for Tessera to maintain that it is. It is also Sony's view that the auditor was not "independent"
15 as required by the Agreement. This view is now supported by the correspondence and other documents
16 recently produced by Tessera and the Connor Group, which show that they collaborated and conspired
17 to create a false and misleading audit report, likely in retaliation for Sony's decision to not renew the
18 Agreement. ████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████████
22 ████████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████████
25 ████████████████████████████████████████████████████████████████████
26 ████████████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████████████████
28

1  ███████████████████████████████████████████████████████████
2  ████████████████████████████████████████████████████
3  ███████████████████████████████████████████████████████████
4  ████████████████████████████████████

5   Against this background, the information about other audits conducted for Tessera, by Connor
6  Group in particular and by others, is relevant at least because ████████████████████████████
7  ███████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████
9  ██████████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████████
13 ███████████████████████████████████████████████████████████
14 █████████████ (f) these facts and other circumstances of the prior audits would bear on the assertion
15 that Connor Group was "independent." This would not amount to a "mini-trial regarding Tessera's third
16 party licensees," as Tessera suggests, it simply would provide comparison information relevant to
17 Sony's claim that Connor Group did not provide an objective, independent audit of Sony.

18   The cases cited by Tessera are irrelevant because Sony is not seeking this information to
19 interpret the License Agreement. Instead, the conduct of other audits of other licensees of Tessera's
20 patent portfolio are directly relevant to whether Connor Group's audit was proper or whether, as the
21 correspondence that has been produced indicates, it was a sham.

22   Moreover, none of Tessera's March 9, 2012 boilerplate objections to Sony's Request Nos. 3 and
23 4 provide a legitimate basis to withhold the requested information. Tessera first objected on the basis
24 that the Requests were "vague and ambiguous insofar as it does not describe with particularity the items
25 or categories of information sought." Any genuine uncertainty that Tessera once had has been resolved
26 by Sony's subsequent explanation of the documents sought.

27   Tessera also objected that the Requests seek "information and documents that are the subject of

28

confidentiality agreements with third parties or that are the subject of a protective order in a separate proceeding." This is not a legitimate objection. The Court entered a protective order in this case in June 2012. (D.I. 41.) Yet, despite repeated requests from Sony, Tessera has refused even to explain what steps it has taken, if any, to obtain any permission that may be required from third parties to produce any documents it is currently withholding. Tessera's complaint about third-party confidentiality is not a reason to not provide discovery, particularly were Tessera has already produced the other licenses themselves, which include confidentiality provisions—Tessera either obtained permission for those or produced them without regard to confidentiality. While Tessera may have to advise the other parties that the documents are being produced, that is common in litigations such as this one. Two private parties cannot shield relevant information from a third simply by agreement.

Tessera also objected "on the grounds that the time frame for which information is sought is vague and ambiguous." *Id.* at 8. While the meaning of this objection is not clear, any objection based on the time period should be disregarded because information about prior audits by the Connor Group or others is relevant to the reasonableness and independence of the audit at issue in this case, regardless when they occurred. Nevertheless, in order to address this concern, Sony would agree to limit the requests to the time period between October 15, 1997 (the date of the Agreement) and the present.

Tessera also objects that the Requests are "not reasonably calculated to lead to the discovery of relevant and admissible evidence, and seek irrelevant information." As explained herein, however, the two categories of information Sony is seeking are likely to lead to the discovery of admissible evidence and, therefore, appropriately discoverable under Rule 26.

Tessera's objection that it would be "burdensome" to provide audit reports for seventy other licensees is remarkable given that ████████████████████████. If Tessera did not want to participate in discovery, it should not have filed a lawsuit.

Tessera' argument that it would agree to produce reports of other audits if Sony agrees to do the same is irrelevant and not before the Court, because no Tessera discovery request seeks this information (Tessera certainly does not identify one) and the parties have not met-and-conferred on that issue.

5

DISCOVERY DISPUTE JOINT REPORT #3
CASE NO: 5:11-cv-04399-EJD (HRL)

Finally, Tessera's description of the September 10th meet-and-confer is inaccurate. Tessera's complaints that Sony did not earlier seek to involve the Court in this issue are unfounded because Tessera had advised Sony that it was making a "rolling production," which continued until August 31st. It was not until the September 10th meet-and-confer that Tessera informed Sony that it would not be producing more documents, and that it would not be producing the documents sought in this letter. The parties could have discussed the issue in more detail at the in-person meet-and-confer, but Mr. Hattenbach stated that he had to leave for the airport after about forty-five minutes. Sony's procedures for preparing and filing this letter are the same as those Tessera followed in filing its own discovery letters. And Tessera's claim that Sony did not identify Request No. 3 is simply false—that request was specifically called out in an August 3rd email that ultimately led to the meet-and-confer.

**Tessera's Position:**

    A.    <u>Sony's Failure to Meet and Confer</u>

On March 9, 2012, Tessera timely served objections to Sony's Request for Production No. 4 (documents relating to audits of Tessera's third party licensees), including on the ground that the request is "not reasonably calculated to lead to the discovery of relevant and admissible evidence, and seeks irrelevant information."[1] Sony expressed no disagreement with Tessera's objections for more than five months. Sony now asks the Court to compel production. During the parties' September 10, 2012, in-person meeting of counsel, however, Sony could identify no issue in the case to which audits of Tessera's third party licensees are relevant. Sony only stated that it would follow-up to discuss narrowing the request. Tessera sent a confirming letter summarizing this discussion as follows:

> . . . . Sony took the position that Tessera should produce its correspondence and audits concerning confidential license agreements with third parties. You agreed to consider narrowing those requests, as I explained we believe are unduly burdensome, overbroad and seek information that is not relevant. Please let us know what you concluded, and additionally, please state whether Sony would be willing to reciprocate, *i.e.,* by providing all Sony correspondence with third parties regarding Sony's license agreements or audits of the same.

---

[1] Sony in its portion of this Joint Report also contends that Tessera did not comply with Request for Production No. 3, seeking documents which "refer or relate to Connor Group." This was not a subject of the in-person meet and confer, and there is no dispute that Tessera produced all of its communications with the Connor Group relating in any way to Sony, the Sony Agreement, and the Sony audit, which was the subject of the only meet and confer correspondence relating in any way to Request No. 3.

Sony did not respond. Then, on September 14, 2012, Sony sent an e-mail demanding that Tessera produce *every* audit report ever prepared for *every* audit of *every* Tessera licensee (Tessera has dozens of past and present licensees), or alternatively provide Tessera's portion of a Joint Report within three court days. Sony's conduct violates the letter and spirit of the Court's meet and confer requirements. In the event the Court considers Sony's request on the merits, however, it should be denied for the reasons set forth below.

> B. <u>Audits of Third Party License Agreements Are Not Properly Discoverable In This Dispute Solely Concerning Breach by *Sony* of Tessera's Agreement with *Sony*</u>

This is a breach of contract case based on a license agreement between Sony and Tessera ("Agreement"), and Sony's refusal to pay royalties owed to Tessera thereunder. Sony's royalty obligation under the Agreement included submitting quarterly payments to Tessera for products made by or for Sony meeting certain objective, contractually-defined criteria. In 2010, Tessera notified Sony that, pursuant to the "Reasonable Audit" provision in the Agreement, Tessera would audit Sony to determine whether Sony had been fully complying with its royalty obligations. Tessera hired the Connor Group, an independent third party CPA firm, to conduct the audit. The auditors found that Sony owed Tessera considerable unpaid royalties. And now, rather than sensibly focus this case on the facts considered and found by the auditors en route to a decision that Sony agreed would be "final," Sony is endeavoring to make this litigation as difficult, time-consuming and expensive as possible for Tessera. Through the present motion, Sony seeks to turn this case into a referendum on all of Tessera's past audits, of all of Tessera's third party customers, for all time. Sony's demand for documents concerning all audits of Tessera's other seventy-plus licensees is the paradigm of a discovery request designed to harass, rather than to obtain admissible evidence.

The contract at issue in this case was specifically negotiated by ***Sony*** and ***Tessera***. Sony has not – and cannot – provide any reason that audits of third parties, relating to different licenses individually negotiated between Tessera and those third parties, and specific to those third parties' business activities, are relevant. Indeed, throughout meet and confer, Sony failed to identify a single element of a claim or defense to which Sony alleges such documents could have any potential bearing.

In addition to lacking relevance, Sony's request for discovery into all previous audits performed of Tessera's other licensees would be extremely burdensome and would implicate third party confidential information of Tessera's numerous current and past licenses, including confidential technical information about third party manufacturing and sales activities.[2]  Tessera has over seventy license agreements, each of which was individually negotiated and tailored to the needs of the particular licensee.  Tessera's licensees include companies engaged in many different areas of expertise, including universities, semiconductor manufacturers, packaging assemblers, material suppliers, and original equipment manufacturers.  Each Tessera licensee is granted its own operative terms – different patents, different types of license grants, different royalty rates, different royalty base definitions, different reporting requirements, and so on.  When Tessera hires a third party to audit a licensee, the auditor's review must therefore be specifically tailored to (1) unique terms of the license at issue, such as the defined scope of activities permitted under the license and definition of products subject to the license, and (2) the particular licensee's unique manufacturing, design, and sales activities.

Comparing the royalty audit of Sony to audits of third parties thus not only would be pointless, but would amount to a mini-trial regarding Tessera's third party licensees and their confidential manufacturing, sales, and business activities – none of which are at issue in this case.  Audits of different Tessera licensees necessarily entail analyses of different products, different license grants, and other negotiated license terms between Tessera and each licensee.  Indeed, Sony has noted the specificity of the particular license grant negotiated by Sony and Tessera in refusing to provide Tessera discovery.  (9/14 Moore email to Hattenbach) ("the license agreement provides a *specific, significantly narrower definition of royalty bearing products*") (emphasis added).

In its section of the Joint Report, Sony now attempts to construct a relevance argument by asserting that Tessera and the Connor Group "conspired and collaborated to create a false and

---

[2] Even if Sony were able to demonstrate some degree of relevance with respect one or more specific audit reports, it is unclear whether Tessera would actually be able to produce them due to confidentiality restrictions.  Audits of licensees are typically highly confidential (the audit report in this case has been designated by the parties HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY).  The information Sony is requesting includes information not only about confidential third party license agreements, but also extensive information about third party licensees' manufacturing, product designs, accounting and sales systems, and internal management.  Tessera likely would have to individually obtain the consent of each past and present licensee to share the confidential audit reports with Sony.

8
DISCOVERY DISPUTE JOINT REPORT #3
CASE NO:  5:11-cv-04399-EJD (HRL)

misleading audit report," that the Connor Group lied in its report, and other, related sensationalized allegations. In addition to being false, these allegations do not make the requests relevant. They relate to the Connor Group's audit of Sony. They simply do not relate to Tessera's third party licensees, their confidential, individually negotiated licenses, or audits performed over the years with respect to those third parties' confidential business activities.

Sony's explanation of what it is looking for in the third party audit reports confirms the complete lack of relevance. Sony states that it wants to see whether other auditors, evaluating other Tessera license agreements, "performed reasonableness checks," "found that royalties were owed for manufacturing scrap," or "modified their reports." But such information, particularly given the myriad of different circumstances attendant to each audit—different parties, different scope of license, different degrees of cooperation in the audit, different manufacturing processes, etc.—has no bearing on the relevant issue of the Connor Group's audit of Sony. ███████████████████████

███████████████████████████████████████████████████████████

███ What probative value would the fact that a different auditor either did, or did not, determine that a different licensee had underpaid for scrap under that licensee's different agreement with Tessera have? Similarly, the Connor Group performed a "reasonableness check" as part of its analysis of royalty-bearing activities for which Sony refused to provide information. What probative value would the fact that another auditor did, or did not, encounter a similar situation and perform a "reasonableness check" possibly have? Settled California law comports with logic in rejecting Sony's argument for relevance: "[i]t is a general rule that in the absence of a common plan, scheme, habit or usage, contracts between different parties have no probative value in the consideration and interpretation of other and different contracts even though one of the parties may be common to both." *Lande v. Southern Cal. Freight Lines*, 85 Cal. App. 2d 416, 422 (1948). *See Overman v. Bright*, 166 Cal. App. 2d 515, 516-17 (1958) ("the trial court properly excluded the . . . other contracts [because they] were not material in determining the nature of the transaction between plaintiff and defendant"). This logic applies with even greater force here, where Sony's demand not only is based on other contracts, but also the unique details of third party business activities, how those third party activities apply to the other contracts, and the

9

details of a prior auditor's investigation and analysis thereof. ███████████████████
███████████████████████████████████████████████████ making Sony's desired
fishing expedition into other contracts and audits all the more inappropriate. (Master License
Agreement ¶ IX.D).

Finally, in an effort to resolve this dispute, Tessera suggested to Sony that it would consider producing certain audit reports, subject to obtaining third party consents, if Sony would reciprocate by producing third party audits of Sony under Sony's other license agreements. Sony rejected the proposal, ironically, by stating that other Sony audit reports are irrelevant. (9/14/2012 Moore email to Hattenbach). Tessera explained that while "audit reports related to Tessera audits of other companies are not relevant to this case . . . [o]ther audits in which Sony has been audited, in contrast, would provide information such as whether Sony has acted consistently in providing information to auditors, including, for example, with respect to the divisions from which Sony provides information to auditors." (9/17 Hattenbach email to Moore). Sony did not respond or address Tessera's argument or invitation to further discuss this potential compromise.

**Sony's Final and "Most Reasonable" Proposal for Resolution:**

Sony believes that the discrete categories of documents described herein are discoverable and that there is no justification for Tessera's continued refusal to produce them. Although Sony has already narrowed its Request For Production Nos. 3 and 4, it would be willing to further limit the scope of requested documents to the time period of the Agreement—October 15, 1997 to the present.

**Tessera's Final and "Most Reasonable" Proposal for Resolution:**

Audit reports of other audits performed over the years with respect to others among Tessera's seventy-plus licensees, under different Tessera licenses, are not reasonably calculated to lead to the discovery of additional evidence and thus should not be produced. In contrast, as discussed above, audit reports of other audits conducted of Sony are relevant and probative, as they directly relate to the credibility of Sony's representations to the auditors that information outside the Semiconductor Business Group could not be provided, and Sony should be ordered to produce these reports. Nevertheless, in an effort to resolve this dispute and in the interests of streamlining a matter that Sony has already made far

10

DISCOVERY DISPUTE JOINT REPORT #3
CASE NO: 5:11-cv-04399-EJD (HRL)

more complicated than necessary, Tessera would agree to both parties foregoing discovery of third party audit reports.

Dated: September 21, 2012               FOLEY & LARDNER LLP
                                        Matthew B. Lowrie
                                        Eileen R. Ridley
                                        Aaron W. Moore
                                        Ruben J. Rodrigues


                                        By: ___/s/ Aaron W. Moore_____
                                              Aaron W. Moore

                                        *Attorneys for Defendant Sony Corp.*


Dated: September 21, 2012               IRELL & MANELLA LLP
                                        Morgan Chu
                                        Benjamin W. Hattenbach
                                        Melissa R. McCormick
                                        Lisa S. Glasser
                                        Richard W. Krebs


                                        By: ___/s/ Richard W. Krebs_____
                                              Richard W. Krebs

                                        *Attorneys for Plaintiff Tessera, Inc.*


### Attestation Of Concurrence In Filing

Pursuant to Civil L.R. 5-1(i)(3), I, Aaron W. Moore, hereby attest that concurrence in the filing of this Discovery Dispute Joint Report #3 has been obtained from Richard W. Krebs, counsel for Tessera.


Dated: September 21, 2012                              FOLEY & LARDNER LLP


                                                       By: __/s/ Aaron W. Moore____
                                                             Aaron W. Moore

                                                       *Attorneys for Defendant Sony Corp*

11

DISCOVERY DISPUTE JOINT REPORT #3
CASE NO: 5:11-cv-04399-EJD (HRL)