**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
555 California Street, 17th Floor
San Francisco, CA 94104
Telephone: 415.434.4484
Facsimile: 415.434.4507
Eileen R. Ridley, CA Bar No. 151735
eridley@foley.com

**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
111 Huntington Ave., Ste. 2600
Boston, Ma 02199-7610
Telephone: 617.342.4000
Facsimile: 617.342.4001
Matthew B. Lowrie *(Pro Hac Vice)*
mlowrie@foley.com
Aaron W. Moore *(Pro Hac Vice)*
amoore@foley.com

**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
321 North Clark St., Ste. 2800
Chicago, Ill. 60654-5313
Telephone: 312.832.4568
Facsimile: 312.832.4700
Ruben J. Rodrigues *(Pro Hac Vice)*
rrodrigues@foley.com

Attorneys for Defendant SONY CORPORATION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TESSERA, INC., a Delaware Corporation.<br><br>Plaintiff,<br><br>vs.<br><br>SONY CORPORATION, a Japanese Corporation,<br><br>Defendant | CASE NO: 5:11-CV-04399-EJD (HRL)<br><br>SONY CORPORATION'S OPPOSITION TO TESSERA'S MOTION TO PRECLUDE DEFENDANT SONY CORPORATION FROM SUBMITTING REBUTTAL REPORTS TO EXPERT REPORTS OF JOHN C. BRA VMAN AND JULIE L. DAVIS<br><br>Demand for Jury Trial<br><br>Judge: Hon. Edward J. Davila |

I.     **INTRODUCTION**

Tessera's motion is nothing more than a transparent, and *utterly frivolous*, attempt to *create a diversion* and *distract attention* from Tessera's actual litigation misconduct which, in the case of the expert reports, has gotten to be quite severe.

Sony requests that Tessera' motion be denied *before* the hearing on Sony's Motion to Strike, and that Sony be awarded the fees and costs incurred in opposing this baseless and vexatious filing. Sanctions for frivolous filings such as Tessera's may be imposed under 28 U.S.C. § 1927, the Federal Rules, the Local Rules, and the court's inherent power. *See Rumbaua v. Wells Fargo Bank, N.A.*, No. 11-998, 2011 U.S. Dist. LEXIS 95533 at *21 (N.D. Cal. Aug. 25, 2011).

Tessera did not disclose the manufacturers or part numbers of the chips[1] for which it is seeking ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ during the fact discovery period. That is undeniable.

Tessera's "technical" expert then engaged other third parties to secretly reverse engineer ▬▬▬▬▬▬▬▬▬▬ Sony products so that Tessera could serve a massive expert report identifying ▬▬▬▬▬ newly accused chips, the identities of which Tessera had never disclosed to Sony during the discovery period.

Even though Tessera supplemented its answers to interrogatories from Sony seeking the complete basis of its claims for unpaid royalties just before the close of fact discovery (at which time it had already commenced its reverse engineering project), Tessera withheld even the fact that it would be undertaking such a project from the interrogatory answers and, then, refused to tell Sony that it was preparing such a report *when directly asked shortly after discovery closed*. And Tessera tried to negotiate an even smaller amount of time for Sony to respond to the expert reports, while still hiding the nature of the reports Tessera would be serving.

When Tessera did serve its huge, surprise expert reports, it deliberately structured them to make them nearly impossible to rebut without third-party discovery. Tessera did this by having

---

[1] While Tessera chides Sony for using the term "chip" instead of "package," both parties have used the terms interchangeably throughout this case.

1

the actual analysis of the third-party chips done by *another company* that the "technical" expert hired.  ***All the work of photographing, x-raying, and measuring the chips was done by the other company, or yet another company that the first company hired.***  The "technical" expert, Bravman, did not even analyze any of the chips himself.

Because the actual work was done by the other companies, the Bravman report does not explain the methods that were used and *it does not include the original photos or data*.  Instead, Bravman includes only a spreadsheet listing measurements allegedly taken by the other company (or companies) of the third-party chips and blurry, reduced size, scale-less versions of a subset of the images taken by the other company reproduced in PowerPoint slides.

Immediately upon receiving the Bravman report, Sony asked Tessera to "produce the data, reports, photos, etc. underlying" the analysis.  Tessera *refused*, taking the astonishing position that work done by the companies that actually took the pictures and did the measurements *that formed the basis of its expert's conclusions* was "not discoverable" because those companies were "non-testifying experts."  In other words, Tessera is trying to prevent Sony from rebutting its "technical" expert's testimony by having the actual technical work done by someone else, who Tessera claims is shielded from discovery as a "non-testifying expert."  Sony believes that this must render Bravman's opinions inadmissible under Rule 702 because Tessera cannot possibly show that his conclusions are reliable but, in the meantime, it substantially impairs Sony's ability to prepare a substantive response to the report, which is obviously what is intended by Tessera.

In addition, Tessera refused during the discovery period to produce documents concerning royalty payments by its licensees, some of whom are Sony's suppliers.  Instead, at the very close of discovery, Tessera produced what it claims is a database of all royalty payments made to Tessera by its licensees.  Many of the third-party chips in the Bravman report were made by Tessera's licensees.  For this reason, Tessera's damages expert, Davis, purports to check the "royalty database" to see whether Tessera had already been paid for the chips identified by Bravman.  In virtually every case, however, Davis does not find the chip in the "royalty

2

1  database" and, therefore, concludes that Sony should pay since Tessera did not already receive a
2  royalty on that chip.
3        Once Sony learned (for the first time in the expert reports) the manufacturers and part
4  numbers of the specific chips that are being accused, Sony asked its suppliers whether they had
5  already paid royalties on those chips.  The answers that have been coming back have been
6  remarkable.          for example, has informed Sony that it reported, and paid, royalties to
7  Tessera *for every           chip identified in the Bravman report*.  This means that Tessera
8  withheld specific documents (the royalty reports from          ) that would have completely
9  undermined its claim of entitlement to royalties on          chips in Sony products, which might
10 amount to more than           in royalties that Tessera is seeking in this case.
11       Because Tessera withheld the identities of the third-party chips during the discovery
12 period, refused to produce the technical data underlying the Bravman report, refused to produce
13 correspondence with its licensees and instead produced a "royalty database" that is demonstrably
14 incomplete, Sony moved to strike the Bravman and Davis reports or, in the alternative to reopen
15 fact discovery for the purpose of rebutting the reports that are based on withheld information.
16       In connection with the motion to strike, Sony moved to shorten the briefing schedule,
17 because the schedule set by the rules would have run the briefing on the motion to strike past the
18 due date for the rebuttal reports.  Tessera filed an opposition to the motion to shorten time, Sony
19 filed a reply, and the motion was granted.
20       Now, amazingly, Tessera files a motion to preclude Sony from filing rebuttals to the
21 completely improper expert reports that are based Tessera's complicated scheme of withholding
22 information, on the grounds that Sony made "four misrepresentations" in the reply brief filed in
23 support of the motion to shorten time.  The motion is both frivolous and abusive, and Sony
24 should be awarded the costs and fees incurred in preparing this opposition.  The four
25 "misrepresentations" are nothing of the sort.
26       *First*, Tessera claims that Sony made a "misrepresentation" in asserting that "Tessera still
27 has not produced any of the images, reports, or data underlying the technical experts analysis,
28

3

1  and refuses to do so." *That is undeniably true.* Tessera **has** refused—in writing, no less—to
2  produce that data generated by the two companies Bravman retained to actually analyze the
3  chips. Bravman specifically references this material in his report.
4       Sony most certainly does not have "all the information it needs to evaluate Dr.
5  Bravman's analysis," as Tessera knows full well because its intention in having Bravman hire
6  others to do the work was to shield that information, as is evident from Tessera's refusal to
7  produce the underlying data. Tessera's claim that the "[t]he physical parts are available for
8  inspection" is essentially meaningless (as Tessera surely knows) because the definition in the
9  Agreement concerns the *internal* structures of the chips. Inspection of the external elements of
10 the chips would be useful only for purposes of verifying part numbers or origin. That is why
11 Bravman and the two companies he hired spent three months preparing images of the chips,
12 which Tessera now refuses to produce.
13     *Second*, Tessera claims that Sony made a "misrepresentation" in asserting that the
14 Bravman and Davis reports "are, without question, based on theories that were never disclosed
15 during the fact discovery period." *Again, that is undeniably true.* During the fact discovery
16 period, Tessera failed to identify the chips for which royalties were not paid. That failure
17 prevented Sony from taking discovery on those chips, as explained in the motion to strike.
18     *Third,* Tessera claims that Sony made a "misrepresentation" in asserting that Sony's
19 interrogatories asked for the identities of the chips for which royalties were not paid. *Once*
20 *again, that is true.* Sony's Interrogatory No. 3, for example, asked Tessera to "[e]xplain in full
21 detail Tessera's contention that Sony breached the License Agreement," and Interrogatory No. 5
22 requested that Tessera "[e]xplain in full detail Tessera's contention that Sony failed to pay any
23 royalties under the License Agreement." Tessera's original interrogatory answers
24     and the supplemental answers, served just days before discovery
25 closed, and well after the Tessera 30(b)(6) deposition, were deliberately vague, failing to even
26 mention that Tessera would be reverse-engineering specific chips, when Tessera knew, at the
27 time, that it planned to do that.
28

4

CASE NO.5:11-CV-04399-EJD (HRL)      SONY'S OPP. TO TESSERA'S MOTION TO PRECLUDE DEFENDANT SONY FROM SUBMITTING REBUTTAL EXPERT REPORTS

1   *Finally,* Tessera claims that Sony made a "misrepresentation" in asserting that "Sony produced the technical information that it maintains concerning the chips it designs, whether the chips are made by Sony or by someone else for Sony." ***That is also true.*** Tessera claims it is untrue because Bravman's report purports to identify ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Sony, however, has reviewed the list of such chips in the Bravman report and has determined that of the ▬ unique chips, Sony paid royalties on ▬ (which payments are not reflected in the incomplete Tessera royalty database), ▬ do not meet the definition the License Agreement, and Sony is still analyzing the rest but does not believe they will be covered by the agreement either. Of course, there is no way to assess the accuracy of Bravman's claims because he did not do the work of analyzing the chips himself, and Tessera to date has refused to produce the underlying data or images, or even produce a witness who could explain how they were generated.

Tessera's machinations have gotten so twisted that they are becoming hard to follow, but the result of this is that Tessera's claimed "misrepresentations" ***are themselves misrepresentations***.

This latest motion is just another desperate effort to push through claims that have no business even being in Court (because there is no colorable argument that the Agreement even requires Sony to pay royalties on chips designed and made by others) by hiding and suppressing information, and to prolong what has now become a two-year campaign to punish Sony for declining to renew the Tessera license agreement.

## II.     THERE ARE NO MISREPRESENTATIONS

### A.     Tessera Refuses to Produce The Data Underlying The Bravman Report

Alleged "misrepresentation" number 1 is Sony's assertion that "Tessera still has not produced any of the images, reports, or data underlying the technical experts analysis, and refuses to do so." ***It is undeniably true.***

Tessera's careful claim that "[a]ll of the reverse engineering data Dr. Bravman analyzed were served with the report" is deceptive because ***Dr. Bravman never reviewed the original***

28

5

CASE NO.5:11-CV-04399-EJD (HRL)                SONY'S OPP. TO TESSERA'S MOTION TO
                                               PRECLUDE DEFENDANT SONY FROM
                                               SUBMITTING REBUTTAL EXPERT REPORTS

*images and data*. Instead, Bravman hired two *other* companies to do the actual work and relied only on a spreadsheet and a set of PowerPoint slides they prepared. The spreadsheet simply lists raw dimensions purportedly taken from the images, and the PowerPoint slides contain reduced, degraded copies of original images, which have no scale and include dimensional labels that are applied with no means for determining where they come from or whether or not they are correct. Forcing Sony to rely exclusively on those versions of the drawings to determine whether a chip is royalty bearing under the Agreement would be like requiring someone to determine the precise distance between Eureka and Bakersfield using a map that does not even have a scale. The "data" attached to the Bravman report is virtually useless. Tessera knows this, of course, and is withholding the underlying information (i.e., the original images and documents and other information showing how the measurements were taken) to prevent Sony from being able to rebut the conclusions reached by the companies that Bravman hired.[2]

Tessera's assertion that the "[t]he physical parts are available for inspection" is essentially meaningless because the definition in the Agreement concerns the *internal* structures of the chips. Inspection of the *external* elements of the chips would be useful only for purposes of verifying part numbers or origin. That is why Bravman and the two companies he hired spent three months preparing images of the chips, which Tessera now refuses to produce.

**B.     Tessera Did Not Disclose Its Theories During the Fact Discovery Period**

Alleged "misrepresentation" number 2 is Sony's assertion that the Bravman and Davis reports are "are, without question, based on theories that were never disclosed during the fact discovery period in this case." ***It is also undeniably true.***

Tessera claims that it had "from the outset of this case contended that Sony has not paid all of the royalties it owes, both on packages made by Sony and on packages made for Sony by third parties." That assertion is belied by Tessera's *original* discovery responses.

Sony's Interrogatory No. 3 asked Tessera to "[e]xplain in full detail Tessera's contention

---

[2] The manner in which these calculations were conducted by the third parties is crucial because, for example, a chip is only royalty bearing under the agreement                                                                  By withholding the basis for the measurements on which Bravman relies, Tessera is completely preventing Sony from responding to his conclusions, or the related conclusions of Ms. Davis, Tessera's damages expert.

6

CASE NO.5:11-CV-04399-EJD (HRL)                              SONY'S OPP. TO TESSERA'S MOTION TO
                                                             PRECLUDE DEFENDANT SONY FROM
                                                             SUBMITTING REBUTTAL EXPERT REPORTS

1 that Sony breached the License Agreement." Sony's Interrogatory No. 5 asked Tessera to

2 "[e]xplain in full detail Tessera's contention that Sony failed to pay any royalties under the

3 License Agreement."

4     Tessera's *original* responses to these interrogatories, served on March 9, 2012, were

5 directed

13 (D.I. 134-1, Ex. B, at 13-14.)

14     It may be true that "Tessera's May 2011 Complaint states a cause of action for breach of

15 contract," but when Sony served discovery requests seeking information about *the specific*

16 *conduct that allegedly constituted the breach*, Tessera

17     On October 12, 2012, just a week before the close of discovery, Tessera served

18 supplemental responses that still failed to identify any chips for which royalties had allegedly not

19 been paid, and did not even mention that Tessera would be conducting its reverse engineering

20 analysis. It is now clear that the supplement was deliberately vague, as Tessera had already

21 started the reverse engineering project that would culminate in the Bravman and Davis reports.

22     Tessera simply let the entire fact discovery period pass without identifying the chips for

23 which it is seeking royalties. Sony's assertion that Tessera's expert reports are based on theories

24 that were never disclosed during the fact discovery period in this case is accurate.

25     **C.    Sony Did Ask for The Identities of the Chips**

26     Alleged "misrepresentation" number 3 is that "Sony's "interrogatories . . . asked for the

27 identities of the chips that would form the basis of Tessera's claims." ***Also true.***

28

7

An noted above, Sony's interrogatories asked Tessera to "[e]xplain in full detail Tessera's contention that Sony breached the License Agreement" and to "[e]xplain in full detail Tessera's contention that Sony failed to pay any royalties under the License Agreement."

Tessera's original response                                                      and the supplemental response served as discovery closed was so vague ("                          as to also cover claims about the audit report, the bulk of which actually was based on public information.

Not only did Tessera not identify any specific chips for which Sony allegedly failed to pay royalties, *Tessera did not even tell Sony in the discovery responses that it would be accusing specific chips*. Had Tessera made that disclosure, instead of withholding that information until the expert reports, Sony could have moved to compel or taken other action.

As it happened, however, fact discovery closed without Tessera ever identifying any alleged breach other than those associated with the audit report.

The discussion of Tessera's answer to Interrogatories Nos. 2 and 5 on pages 7 and 8 of Tessera's brief misleadingly states that those answers were provided "long ago." In fact, those are the *supplemental answers*, served just before discovery closed. And they *still* (a) fail to identify any specific chip for which royalties were not paid and (b) fail to even state that Tessera would be reverse engineering chips.

Sony most certainly *did* ask for the basis of Tessera's claims, which includes the identities of the chips for which royalties were allegedly not paid.

### D. Sony Did Produce the Technical Documents for the Chips That Meet the Definition in the License Agreement

Alleged "misrepresentation" number 4 is that "Sony produced the technical information that it maintains concerning the chips it designs, whether the chips are made by Sony or by someone else for Sony." *That is also true.*

Tessera claims it is untrue because Bravman's report purports to identify

Sony, however, has reviewed the list of such chips in the Bravman report and has determined

8

1 that of the ▓▓▓ unique chips, Sony paid royalties on ▓▓ (*which payments are not reflected
2 in the incomplete Tessera royalty database*), ▓▓ do not meet the definition the License
3 Agreement, and Sony is still analyzing the rest but does not believe they will be covered by the
4 agreement either.

5      Of course, there is no way to assess the accuracy of Bravman's report because he did not
6 do the work of analyzing the chips himself, and Tessera to date has refused to produce the
7 underlying data or images, or even produce a witness who could explain how they were
8 generated.  Incredibly, Tessera's claim that this is a "misrepresentation" is based on an analysis
9 of those very chips that Tessera's expert claims to have ordered, but that Tessera *refuses to*
10 *disclose*.

11 **II.    CONCLUSION**

12      For these reasons, and those contained in Sony's brief in support of its Motion to Strike
13 the Expert Reports of Dr. Bravman and Ms. Davis, Sony respectfully requests that Tessera's
14 Motion be DENIED.

16 Dated:  March 1, 2013              FOLEY & LARDNER LLP

18                                    Matthew B. Lowrie
                                   Eileen R. Ridley
                                   Aaron W. Moore
19                                    Ruben J. Rodrigues

21                                    By:     /s/ Aaron W. Moore
                                             Aaron W. Moore

22                                    Attorneys For Defendant SONY CORP.

9

CASE NO.5:11-CV-04399-EJD (HRL)          SONY'S OPP. TO TESSERA'S MOTION TO
                                                         PRECLUDE DEFENDANT SONY FROM
                                                         SUBMITTING REBUTTAL EXPERT REPORTS

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March 2013, a copy of the foregoing was filed electronically through the Court's CM/ECF system, with notice of case activity automatically generated and sent electronically to all parties.

By: */s/ Ruben J. Rodrigues*
Ruben J. Rodrigues