```
 1                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                          SAN JOSE DIVISION


 3
        TESSERA, INC.,
 4
                    PLAINTIFF,            CASE NO.  CV-11-4399-EJD
 5
           VS.                           SAN JOSE, CALIFORNIA
 6
        SONY CORPORATION,                 MARCH 22, 2013
 7
                    DEFENDANT.            PAGES 1 - 23
 8


 9


10
                       TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
12


13                      A-P-P-E-A-R-A-N-C-E-S


14
          FOR THE PLAINTIFF:    IRELL & MANELLA
15                              BY:  MELISSA MCCORMICK
                                     BEN HATTENBACH
16                              840 NEWPORT CENTER DRIVE, SUITE 400
                                NEWPORT BEACH, CALIFORNIA 92660
17


18        FOR THE DEFENDANT:    FOLEY & LARDNER
                                BY:  AARON W. MOORE
19                              111 HUNTINGTON AVENUE
                                BOSTON, MASSACHUSETTS 02199
20


21        OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, CRR
                                      CERTIFICATE NUMBER 8074
22


23           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
        TRANSCRIPT PRODUCED WITH COMPUTER.
24


25
```

|    |    |
|----|----|
| 1  | SAN JOSE, CALIFORNIA                    MARCH 22, 2013 |
| 2  | P R O C E E D I N G S |
| 3  | (COURT CONVENED.) |
| 4  | THE CLERK:  CALLING CASE NUMBER 11-4399, TESSERA V. |
| 5  | SONY.  ON FOR MOTION TO STRIKE AND MOTION FOR SANCTIONS.  ON |
| 6  | FOR PRETRIAL CONFERENCE. |
| 7  | COUNSEL, COULD YOU COME FORWARD AND STATE YOUR |
| 8  | APPEARANCES.  PLEASE BE SEATED. |
| 9  | MS. MCCORMICK:  GOOD MORNING, YOUR HONOR.  MELISSA |
| 10 | MCCORMICK FOR THE PLAINTIFF TESSERA AND WITH ME IS MY PARTNER |
| 11 | BEN HATTENBACH. |
| 12 | MR. HATTENBACH:  GOOD MORNING. |
| 13 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 14 | MR. MOORE:  GOOD MORNING, YOUR HONOR.  MY NAME IS |
| 15 | AARON MOORE.  I'M FROM FOLEY & LARDNER AND I'M HERE FOR SONY |
| 16 | CORPORATION. |
| 17 | THE COURT:  ALL RIGHT.  THANK YOU.  GOOD MORNING. |
| 18 | THANK YOU FOR YOUR PLEADINGS.  THEY ARE HERE.  AND I |
| 19 | RECEIVED THESE, AND I DON'T MEAN ANYTHING PEJORATIVE ABOUT |
| 20 | THIS, BUT WHEN I DID I WAS REMINDED OF WINSTON CHURCHHILL AND |
| 21 | YOU PROBABLY KNOW WINSTON CHURCHHILL'S QUOTE THAT I'M ABOUT TO |
| 22 | RECITE, DON'T YOU? |
| 23 | WHEN HE RECEIVED SOME DOCUMENTS DIDN'T HE SAY, I THINK HE |
| 24 | SAID SOMETHING ALONG THE LINES OF THE SHEER SIZE OF THE |
| 25 | DOCUMENT ACTS AS AN ABSOLUTE DEFENSE AS TO THE THREAT THAT IT |

11:08AM  1     MIGHT BE READ.

11:08AM  2          DO YOU REMEMBER THAT?

11:08AM  3          NOW, I DID READ THESE.  THESE HAVE BEEN READ, I WANT YOU

11:08AM  4     TO KNOW THAT.  AND THIS IS NOT THE FIRST TIME THAT I HAVE

11:09AM  5     QUOTED WINSTON CHURCHHILL IN THAT REGARD.  THERE WAS ANOTHER

11:09AM  6     TIME THAT SOMEONE PUT PAPERS ON THE LECTERN AND IT STOOD ABOUT

11:09AM  7     21 INCHES HIGH I THINK WHEN WE MEASURED IT OR SOMETHING LIKE

11:09AM  8     THAT.

11:09AM  9          BUT WHEN THE PLEADINGS ARE THOROUGH, AS THESE HAVE BEEN,

11:09AM  10    AND YOU BOTH HAVE CARVED OUT THE ISSUES AS YOU HAVE SEEN THEM

11:09AM  11    VERY THOROUGHLY.

11:09AM  12         WHAT I THOUGHT I WOULD DO THIS MORNING IS TO GIVE YOU EACH

11:09AM  13    FIVE MINUTES TO TELL ME WHAT YOU WOULD LIKE ME TO DO.  AND LET

11:09AM  14    ME LET SONY GO FIRST HERE.

11:09AM  15         SO, MR. MOORE, IS THERE ANYTHING ELSE YOU WOULD LIKE ME TO

11:09AM  16    KNOW?

11:09AM  17              MR. MOORE:  GOOD MORNING AGAIN, YOUR HONOR.  I THINK

11:09AM  18    IT'S PROBABLY ACCURATE TO SAY THAT WE HAVE PUT EVERYTHING IN

11:09AM  19    THE PAPERS FOR SURE.

11:09AM  20         THERE IS ALSO A LOT IN THE PAPERS I THINK THAT IS REALLY

11:09AM  21    NOT RELEVANT TO THE ISSUES.  THERE'S A WHOLE LOT OF CHATTER IN

11:09AM  22    THERE BUT FOR US WHAT THIS COMES DOWN TO, AND I'M TALKING FIRST

11:10AM  23    ABOUT OUR MOTION TO STRIKE EXPERT REPORTS.

11:10AM  24         THE FACT IS THAT THE PLAINTIFF DID NOT DISCLOSE TO US

11:10AM  25    DURING THE DISCOVERY PERIOD THE IDENTITIES OF THE CHIPS THAT IT

11:10AM 1    INCLUDED IN THE EXPERT REPORTS FOR WHICH IT NOW CLAIMS

11:10AM 2    $140 MILLION IN DAMAGES.

11:10AM 3        AND THEIR FAILURE TO DISCLOSE THAT INFORMATION TO US

11:10AM 4    DURING THE DISCOVERY PERIOD PREVENTED US FROM OBTAINING

11:10AM 5    DISCOVERY FROM THE THIRD PARTIES WHO ACTUALLY MADE THESE CHIPS,

11:10AM 6    OR ALMOST ALL OF THE CHIPS, ABOUT THE STRUCTURES AND THE SIZE

11:10AM 7    OF THE CHIPS WHICH IS WHAT MATTERS TO DETERMINE WHETHER THEY

11:10AM 8    COULD POSSIBLY BE ROYALTY BEARING UNDER THE LICENSE AGREEMENT.

11:10AM 9        THE FAILURE TO IDENTIFY THE NUMBER OF THE CHIPS DURING THE

11:10AM 10   DISCOVERY PERIOD ALSO PREVENTED US FROM GOING TO MANY OF THESE

11:10AM 11   MANUFACTURERS WHO ARE ALSO TESSERA LICENSEES AND DETERMINING

11:10AM 12   WHETHER THOSE MANUFACTURERS HAVE ALREADY PAID TESSERA ROYALTIES

11:10AM 13   FOR THESE CHIPS.

11:10AM 14       NOW, WE HAVE BEEN ABLE TO DO OUR OWN INFORMAL

11:10AM 15   INVESTIGATION AND AT THIS POINT WE DON'T HAVE THE TOOLS OF

11:11AM 16   DISCOVERY AVAILABLE TO US.

11:11AM 17       BUT TO THE EXTENT THAT WE HAVE BEEN ABLE TO INVESTIGATE,

11:11AM 18   IT'S OUR BELIEF THAT VIRTUALLY EVERY CHIP MADE BY A TESSERA

11:11AM 19   LICENSEE, FOR WHICH TESSERA IS NOW SEEKING DAMAGES FROM SONY,

11:11AM 20   IS A CHIP FOR WHICH TESSERA HAS ALREADY PAID ROYALTIES

11:11AM 21   EXTINGUISHING THE PATENT RIGHTS.

11:11AM 22       SO HONESTLY I THINK THAT'S REALLY WHAT IT COMES DOWN TO

11:11AM 23   FOR US.  THERE'S A LOT OF CLAIMS IN THE BRIEFS ABOUT SONY

11:11AM 24   WITHHOLDING DOCUMENTS.  THERE'S AN EXTENDED DISCOVERY DISPUTE

11:11AM 25   AND THE COURT HAD A CONFERENCE IN CHAMBERS IN DECEMBER.  I

11:11AM 1    DON'T KNOW IF YOU RECALL.

11:11AM 2         THE COURT:  I DO.  I HAD INVITED COUNSEL BACK IN

11:11AM 3    CHAMBERS TO JUST HAVE AN INFORMAL MEETING ABOUT THIS ISSUE AND

11:11AM 4    I DID THAT, BECAUSE AS YOU POINT OUT, THERE HAD BEEN EXTENSIVE

11:11AM 5    DISCOVERY DISPUTES AND MY COLLEAGUE, MAGISTRATE JUDGE LLOYD,

11:11AM 6    NEXT DOOR PRESIDED OVER A COUPLE OF THOSE THINGS, AND I THINK

11:11AM 7    GAVE YOUR LAWYERS AN OPPORTUNITY TO SPEAK AS TO SOME DISCOVERY

11:11AM 8    ISSUES ON A COUPLE OF OCCASIONS.

11:11AM 9         AND I THINK I DID, TOO, AT A SUBSEQUENT HEARING TO EXPLAIN

11:12AM 10   IF YOU WOULD PROVIDE THE DIFFICULTY IN FINDING WHATEVER THE

11:12AM 11   OBJECTS WERE.

11:12AM 12        THERE WAS SIGNIFICANT DISCUSSION ABOUT THAT PRIOR TO MY

11:12AM 13   RECEIVING IT.  AND I LOOKED AT THAT AND I GUESS IT'S JUST MY

11:12AM 14   PERSONAL PRACTICE AS A FORMER LITIGATOR OR WHATEVER, BUT I

11:12AM 15   LOOKED AT THAT AND THOUGHT, YOU KNOW, IS THIS THE KIND OF CASE

11:12AM 16   WHERE WE COULD JUST SIT DOWN FOR A MOMENT?

11:12AM 17        NOT ALL CASES ARE THIS WAY.  BUT SOME CASES, IF WE JUST

11:12AM 18   SIT DOWN AND TRY TO CUT THROUGH THE FOG OF DISCOVERY SOMETIMES

11:12AM 19   AND SEE IF WE CAN JUST KIND OF FINE TUNE, WHAT ARE THE ISSUES

11:12AM 20   HERE?

11:12AM 21        I GUESS I SHOULD TELL YOU THIS -- AND FORGIVE ME, I'M NOT

11:12AM 22   INTENDING TO LECTURE YOU, DON'T GET ME WRONG, I WOULD SAY TO

11:12AM 23   YOUR COLLEAGUE OPPOSITE IF SHE WERE STANDING AT THE LECTERN NOW

11:12AM 24   IT WOULD JUST SEEM TO ME THAT THE LEVEL OF LITIGATION AT THAT

11:12AM 25   POINT AS THE CASE WAS DEVELOPING GAVE ME PAUSE TO JUST SAY, LET

11:13AM 1      ME SIT DOWN WITH THE LAWYERS AND SEE WHAT IS THIS ALL ABOUT?

11:13AM 2      WHY IS THERE A FAILURE TO COMMUNICATE?  WHAT APPEARED TO BE AT

11:13AM 3      FIRST BLUSH RELATIVELY A SIMPLE REQUEST AND OPPORTUNITIES TO

11:13AM 4      RESPOND AND THAT WAS THE NATURE OF THE INVITATION TO MY OFFICE.

11:13AM 5           AND IT WAS A WONDERFUL OPPORTUNITY TO MEET THE LAWYERS

11:13AM 6      INVOLVED, AND I DISCOVERED A LITTLE ABOUT THEM.  THEY ALL HAD

11:13AM 7      CLERKED BEFORE.  MY CLERKS WERE INVOLVED IN THAT DISCUSSION AS

11:13AM 8      WELL WITH THE PERMISSION OF THE LAWYERS.

11:13AM 9           AND WE HAD WHAT I HOPED TO BE A MEANINGFUL DISCUSSION TO

11:13AM 10     TRY TO MOVE FORWARD WITH SOME OF THESE THINGS, THESE ISSUES.

11:13AM 11          IT DIDN'T QUITE HAPPEN THAT WAY, BUT I NONETHELESS ENJOYED

11:13AM 12     THE OPPORTUNITY TO MEET THE LAWYERS IN THE CASE AND TO PUT A

11:13AM 13     PERSONAL SIDE TO THE CASE.

11:13AM 14          I KNOW MY LAW CLERKS ENJOYED THE OPPORTUNITY TO MEET, AND

11:13AM 15     NOW PRACTICING WELL ESTABLISHED LITIGATORS, GIVE THEM AN IDEA

11:13AM 16     OF WHAT THE FUTURE IS FOR THEM, PERHAPS.

11:13AM 17          SO THAT'S WHY I HAD THAT MEETING TO TRY TO SEE IF WE COULD

11:13AM 18     SOMEHOW, YOU KNOW, CANDIDLY, YOU KNOW, VERY CANDIDLY, TRY TO

11:14AM 19     PUT SOME TYPE OF, NOT CONTROL, BUT GUIDANCE TO OFFER SOME

11:14AM 20     GUIDANCE TO THE PARTIES FOR WHAT I HAD INTERPRETED AT THAT TIME

11:14AM 21     TO BE LITIGATION THAT MIGHT BE SOMEWHAT SPIRALLING OUT OF

11:14AM 22     CONTROL.

11:14AM 23          AND I WANTED TO TRY TO AFFORD THE OPPORTUNITY AND THE

11:14AM 24     BENEFIT OF CHAMBERS.  SOMETIMES I'M TOLD, YOU KNOW, THE POWER

11:14AM 25     OF CHAMBERS HAS SOMETHING UNIQUE ABOUT IT, AND I WANTED TO

11:14AM  1      AFFORD THAT TO THE PARTIES TO SEE IF THAT COULD SOMEHOW ASSIST

11:14AM  2      IN THE LITIGATION PROCESS.

11:14AM  3          AND I'M NOT SURE IT DID, BUT I AM GLAD I MADE THE EFFORT.

11:14AM  4      I'M HAPPY I MADE THE EFFORT, AND I'M HAPPY TO MAKE THE

11:14AM  5      ACQUAINTANCE OF COUNSEL HERE.

11:14AM  6          BUT THAT WAS THE GENESIS OF THAT OVERTURE.  AND HERE WE

11:14AM  7      ARE.

11:14AM  8              MR. MOORE:  SO THE FUNDAMENTAL ISSUE, I THINK, YOUR

11:14AM  9      HONOR, IS THAT THERE WAS THE EXPECTATION ON THE PART OF THE

11:14AM  10     PLAINTIFF THAT SONY HAD DOCUMENTS ABOUT THE STRUCTURE OF THESE

11:15AM  11     CHIPS THAT IT JUST BUYS FROM OTHERS.  SONY DOESN'T HAVE THOSE

11:15AM  12     DOCUMENTS.

11:15AM  13         FOR WHATEVER REASON, THAT DIDN'T GET FLUSHED OUT UNTIL THE

11:15AM  14     VERY END OF THE DISCOVERY PERIOD.

11:15AM  15             THE COURT:  YEAH, THAT WAS A PITY BECAUSE HAD WE

11:15AM  16     KNOWN THAT EARLIER, I SUPPOSE, THINGS MIGHT HAVE TAKEN A

11:15AM  17     DIFFERENT TURN.

11:15AM  18             MR. MOORE:  IT MAY HAVE.  THERE COULD HAVE BEEN

11:15AM  19     DISCOVERY OF THE THIRD PARTIES DIRECTLY, FOR EXAMPLE, BUT THERE

11:15AM  20     WASN'T.

11:15AM  21         AND SO WHEN IT TURNED OUT THAT SONY DIDN'T HAVE THOSE

11:15AM  22     DOCUMENTS, RATHER THAN, FOR EXAMPLE, SEEKING TO EXTEND THE

11:15AM  23     DISCOVERY PERIOD TO TAKE DISCOVERY OF THESE OTHER PARTIES,

11:15AM  24     PLAINTIFFS INSTEAD LET THE DISCOVERY CLOSE, AND LET THE TIME

11:15AM  25     PERIOD PASS TO EXPERT REPORTS AND THEN SERVE THESE MASSIVE

11:15AM  1   EXPERT REPORTS ON US THAT DISCLOSE, AGAIN, MILLIONS OF DOLLARS

11:15AM  2   IN CLAIMS FOR CHIPS THAT WE NEVER SAW IN THE DISCOVERY PERIOD

11:15AM  3   AND IN OUR VIEW THAT IS EXTRAORDINARILY PREJUDICIAL AND

11:15AM  4   FUNDAMENTALLY UNFAIR.

11:15AM  5            THE COURT:  AND I KNOW WE CAN'T TALK VERY

11:15AM  6   SPECIFICALLY.  IT SEEMS LIKE THERE ARE SO MANY DOCUMENTS IN

11:15AM  7   THIS CASE THAT ARE UNDER SEAL.

11:15AM  8       AND I DON'T WANT TO SPEAK ON THE RECORD HERE AS TO TOUCH

11:16AM  9   ON ANY OF THOSE SEALED DOCUMENTS OR ANYTHING LIKE THAT.  SO I

11:16AM 10   WOULD HAVE TO BE VERY LIMITED IN WHAT I CAN DISCUSS HERE.  I'M

11:16AM 11   SURE YOU APPRECIATE AS DOES YOUR COLLEAGUE.

11:16AM 12       AND I UNDERSTAND THAT PART OF THE HISTORY OF THE CASE, I

11:16AM 13   JUST -- I LOOKED AT IT AND I WONDERED WHY THERE WASN'T A MOTION

11:16AM 14   TO COMPEL OR SOMETHING BASED ON THE RESPONSES TO YOUR INTEROGS

11:16AM 15   FROM TESSERA.

11:16AM 16            MR. MOORE:  I CAN ANSWER THAT.

11:16AM 17       SO THE ORIGINAL INTERROGATORY ANSWERS, WHICH WERE SERVED

11:16AM 18   BACK IN THE SPRING, WERE LIMITED TO CLAIMS ABOUT THE AUDIT

11:16AM 19   REPORTS.

11:16AM 20       SO THERE ARE SORT OF TWO PIECES TO THIS CASE.  ONE IS THIS

11:16AM 21   AUDIT REPORT THAT TESSERA COMMISSIONED OF SONY AND THAT'S SORT

11:16AM 22   OF WHAT STARTED THE CASE.

11:16AM 23       THE AUDITOR CAME BACK AND SAID HERE'S THE REPORT AND

11:16AM 24   TESSERA SAID, WELL, SONY, YOU NEED TO PAY US THIS LARGE AMOUNT

11:16AM 25   OF MONEY.  AND TESSERA SAID THAT'S NOT ACTUALLY WHAT IT SAYS.

11:16AM 1          AND THEIR DISCOVERY ANSWERS WERE LIMITED TO THE AUDIT

11:16AM 2    REPORT.  AND THAT WAS THE CASE THROUGHOUT THE CASE UNTIL A WEEK

11:17AM 3    BEFORE DISCOVERY CLOSED WHEN THEY SERVED SUPPLEMENTAL

11:17AM 4    INTERROGATORY ANSWERS.

11:17AM 5          BUT EVEN WHEN THEY SERVED SUPPLEMENTARY INTERROGATORY

11:17AM 6    ANSWERS, THEY STILL DIDN'T SAY WE'RE GOING TO ACCUSE X, Y OR Z

11:17AM 7    CHIPS.  THEY SAID WE'RE GOING TO USE ANY PUBLICLY AVAILABLE

11:17AM 8    INFORMATION THAT WE HAVE TO PURSUE OUR CLAIMS.

11:17AM 9          THE COURT:  AND I'LL HEAR FROM THEM, BUT I WONDERED,

11:17AM 10   WAS THAT BECAUSE DO YOU THINK THAT THEY FELT THAT THEY WERE NOT

11:17AM 11   GETTING SUFFICIENT INFORMATION FROM YOU?

11:17AM 12         MR. MOORE:  WELL, THEY MAY FEEL THAT WAY, BUT THE

11:17AM 13   FACT IS THAT WE DON'T HAVE THE DOCUMENTS THAT THEY WERE LOOKING

11:17AM 14   FOR.

11:17AM 15         SO OUR VIEW IS THAT AS PLAINTIFFS, IF THEY CAN'T GET IT

11:17AM 16   FROM US BECAUSE WE DIDN'T MAKE THESE CHIPS, THEY NEED TO GO

11:17AM 17   FIND THAT INFORMATION FROM SOMEONE ELSE OR THEY CAN DO WHAT

11:17AM 18   THEY ULTIMATELY DID IN THEIR EXPERT REPORTS AND DO A REVERSE

11:17AM 19   ENGINEERING ANALYSIS OF THINGS THAT THEY HAVE IN THE MARKET BUT

11:17AM 20   EVEN THAT THEY COULD TELL US IN FACT DISCOVERY PERIOD SO WE CAN

11:17AM 21   TAKE OUR OWN DISCOVERY ON THESE CLAIMS.  AS IT STANDS WE'RE

11:17AM 22   DEPRIVED OF DOING THAT COMPLETELY.

11:17AM 23         THE COURT:  I SEE.  OKAY.  ALL RIGHT.  ANYTHING ELSE

11:18AM 24   YOU WANT ME TO KNOW?

11:18AM 25         MR. MOORE:  NOT ON --

11:18AM 1      THE COURT:  ALL RIGHT.  THANK YOU.  MS. MCCORMICK.

11:18AM 2      MS. MCCORMICK:  GOOD MORNING, YOUR HONOR.  MELISSA

11:18AM 3  MCCORMICK FOR THE PLAINTIFF TESSERA.

11:18AM 4      SO, YES, THE PARTIES HAVE SUBMITTED VERY THOROUGH AND

11:18AM 5  DETAILED PAPERS, AND I APPRECIATE THAT THE COURT HAS TAKEN THE

11:18AM 6  TIME TO REVIEW THOSE.

11:18AM 7      SO VERY BRIEFLY FROM TESSERA'S PERSPECTIVE WE VIEW THIS

11:18AM 8  MOTION, SONY'S MOTION TODAY TO STRIKE OUR EXPERT REPORTS AND

11:18AM 9  THE RELIEF THEY REQUEST AS MORE OF A PATTERN IN THE CASE OF

11:18AM 10  RESOLVING RESOLUTION ON THE MERITS AND DELAY.

11:18AM 11      YOUR HONOR MAY RECALL IT SOUNDS LIKE A GOOD RECOLLECTION

11:18AM 12  OF OUR MEETING IN CHAMBERS WHEN I WAS HERE THREE MONTHS AGO AND

11:18AM 13  ONE OF THE THINGS YOU ASKED BOTH OF US, MR. LOWRIE FOR SONY AND

11:18AM 14  MYSELF, WAS WHAT YOU COULD DO TO HELP US AT THAT TIME IN THE

11:18AM 15  CASE BECAUSE IT APPEARED, AS YOU EXPRESSED, THAT THE PARTIES

11:18AM 16  MAY BE AT LAGGER HEADS AND WE WERE AT A JUNCTURE WHERE TESSERA

11:18AM 17  HAD OBTAINED TWO DISCOVERY ORDERS COMPELLING SONY TO PROVIDE

11:19AM 18  DISCOVERY THAT THEY HAD NEVER PROVIDED.

11:19AM 19      AND I SAID TO YOU THE SINGLE MOST IMPORTANT THING FROM

11:19AM 20  TESSERA'S PERSPECTIVE IS TO SET A SCHEDULE AND GET THE CASE TO

11:19AM 21  A RESOLUTION BECAUSE WE AT THAT TIME HAD ALREADY HAD A LOT OF

11:19AM 22  DELAY.

11:19AM 23      AS THE COURT KNOWS FROM THE PAPERS IN THE PRIOR

11:19AM 24  PROCEEDINGS, WE SPENT MONTHS ATTEMPTING TO OBTAIN THIS

11:19AM 25  DISCOVERY FROM SONY.  WE SERVED DETAILED INTERROGATORIES AND

11:19AM 1    DOCUMENT REQUESTS.  WE OBTAINED -- THERE WAS A LONG HEARING

11:19AM 2    BEFORE JUDGE LLOYD.  WE OBTAINED AN ORDER FROM JUDGE LLOYD.

11:19AM 3         SONY FOUGHT US EVERY STEP OF THE WAY.  THIS COURT

11:19AM 4    ULTIMATELY DENIED SONY'S APPEAL OF THAT ORDER AND DIRECTED SONY

11:19AM 5    TO PROVIDE THE DISCOVERY THEN.

11:19AM 6         THE CRUX OF THE ISSUE WITH RESPECT TO THOSE DISCOVERY

11:19AM 7    PROCEEDINGS IS SONY SPENT ALL OF THOSE MONTHS, TEN BRIEFS

11:19AM 8    PROBABLY FROM BOTH SIDES, CLAIMING THAT IT WAS TOO BURDENSOME

11:19AM 9    TO PROVIDE THAT INFORMATION AND ONLY AFTER WE OBTAINED TWO

11:19AM 10   ORDERS DID WE LEARN WHAT WAS REPEATED HERE THIS MORNING WHICH

11:20AM 11   WAS THAT SONY CONTENDS THAT IT DOESN'T PROVIDE THE INFORMATION,

11:20AM 12   I MEAN, THAT IT DOESN'T POSSESS THE INFORMATION AT ALL.

11:20AM 13        SO WHAT WE WERE CONFRONTED WITH AS FACT DISCOVERY WAS

11:20AM 14   CLOSING WAS A SCENARIO WHERE WE HAD EVERY REASON TO BELIEVE

11:20AM 15   THAT SONY POSSESSED THIS INFORMATION, WHICH IMPORTANTLY, YOUR

11:20AM 16   HONOR, TO ORIENT THE DISCUSSION THIS MORNING, IS ABOUT SONY

11:20AM 17   PACKAGES, LARGELY, AND IN SOME CASES THIRD PARTY PACKAGES, BUT

11:20AM 18   ALSO SONY PACKAGES CONTAINED IN SONY'S OWN PRODUCTS.

11:20AM 19        WE LEARNED THROUGH DISCOVERY IN THE CASE FROM SONY'S

11:20AM 20   WITNESSES THAT THE SINGLE BEST SOURCE OF THE INFORMATION THAT

11:20AM 21   WE WERE SEEKING WAS SONY ITSELF AND WITNESS AFTER WITNESS

11:20AM 22   TESTIFIED THAT THE SECOND BEST SOURCE, IF SONY WOULDN'T PROVIDE

11:20AM 23   THE INFORMATION, WAS GOING TO BE THE TYPE OF TEARDOWN ANALYSIS

11:20AM 24   THAT OUR EXPERTS ULTIMATELY DID USING PUBLICLY AVAILABLE

11:20AM 25   INFORMATION.

11:20AM 1      BUT WITH RESPECT TO THIS ARGUMENT THAT WE SHOULD HAVE DONE

11:20AM 2  THIS SOONER, WE DIDN'T DO IT SOONER BECAUSE WE WERE SEEKING IT

11:20AM 3  ACTIVELY FROM SONY IN DISCOVERY OBTAINING COURT ORDERS IN

11:21AM 4  OPPOSITION TO ARGUMENTS THAT IT WAS TOO BURDENSOME TO PROVIDE

11:21AM 5  THE INFORMATION, NOT THAT THEY DIDN'T HAVE IT.

11:21AM 6      SO WE HAD EVERY REASON TO BELIEVE THAT THEY DID POSSESS

11:21AM 7  IT.  IN ADDITION, PARALLEL TO THOSE FORMAL DISCOVERY

11:21AM 8  PROCEEDINGS, WE HAD INITIATED A PROPOSAL TO SONY ABOUT AGREEING

11:21AM 9  ON A REPRESENTATIVE PRODUCTS APPROACH, WHICH THEN JUDGE LLOYD

11:21AM 10 AND THIS COURT ALSO ECHOED.

11:21AM 11     SO WE HAD TWO TRACKS GOING WHERE WE HAD EVERY REASON TO

11:21AM 12 BELIEVE THAT SONY, A PARTY IN THIS LAWSUIT, POSSESSED THE

11:21AM 13 INFORMATION AND WOULD PROVIDE IT.

11:21AM 14     AND BEFORE WE EMBARKED ON WHAT WAS AN EXTRAORDINARILY

11:21AM 15 EXPENSIVE UNDERTAKING, WE WANTED TO EXHAUST DISCOVERY IN THIS

11:21AM 16 CASE, EXPECTED SONY TO COMPLY WITH THE COURT ORDERS, AND/OR TO

11:21AM 17 COMPLY WITH THE SUGGESTIONS OF TWO DIFFERENT JUDGES THAT THEY

11:21AM 18 ENGAGE WITH US IN A DISCUSSION OF REPRESENTATIVE PRODUCTS.

11:21AM 19     OUR EXPERTS AT THE CLOSE OF DISCOVERY, AND IF YOUR HONOR

11:21AM 20 LOOKS AT THE TIMELINE IN THE PAPERS, THIS WAS JUST A WEEK TO

11:21AM 21 TWO WEEKS BEFORE THE CLOSE OF DISCOVERY WE AND OUR EXPERT

11:22AM 22 CONFRONTED THE REALIZATION THAT, PERHAPS, SONY WAS NOT GOING TO

11:22AM 23 COMPLY WITH JUDGE LLOYD'S ORDER.

11:22AM 24     AND AT THAT POINT WE EMBARKED UPON OBTAINING THE PUBLICLY

11:22AM 25 AVAILABLE SONY PRODUCTS, DOING WHAT IS BREAD AND BUTTER EXPERT

11:22AM  1    WORK, WHICH IS ANALYZING PUBLICLY AVAILABLE MATERIALS.

11:22AM  2         THERE ARE NUMEROUS CASES CITED IN OUR PAPERS, AND I'M SURE

11:22AM  3    YOUR HONOR HAS SEEN THIS IN THE MANY CASES OVER WHICH YOU HAVE

11:22AM  4    PRESIDED.  EXPERTS COMMONLY RELY UPON PUBLIC INFORMATION.  THAT

11:22AM  5    WORK WAS COMPLETED ONLY SHORTLY BEFORE THE EXPERT REPORTS WERE

11:22AM  6    SERVED AND EVERYTHING WAS THEN PROVIDED TO SONY.

11:22AM  7         SO FROM OUR PERSPECTIVE THIS MOTION TO STRIKE IS NOT ONLY

11:22AM  8    MERITLESS, IT'S JUST AN EFFORT TO AVOID WHAT IS IRREFUTABLE

11:22AM  9    EVIDENCE OF A BREACH IN THIS CASE BECAUSE DESPITE ALL OF THE

11:22AM 10    DISCUSSION IN THE CASE, DESPITE DR. BRAVMAN'S LONG RESUME AS AN

11:22AM 11    ENGINEERING EXPERT, AT THE END OF THE DAY THE ANALYSIS IN THIS

11:22AM 12    CASE TURNS ON A VERY SPECIFIC CONTRACTUAL DEFINITION AND WITH

11:22AM 13    ALL DUE RESPECT TO ANY ENGINEERS IN THE COURTROOM ESSENTIALLY

11:23AM 14    MEASURING PRACTICALLY WITH A RULER WHETHER THESE PARTICULAR

11:23AM 15    PACKAGES MEET THAT DEFINITION.

11:23AM 16         IT DOESN'T TAKE A LONG TIME.  SONY HAD EVERYTHING THEY

11:23AM 17    NEEDED TO REFUTE IT, BUT NO MATTER HOW LONG THEY LOOK AT THESE

11:23AM 18    PACKAGES, THE RESULTS ARE GOING TO BE THE SAME.

11:23AM 19         THE OTHER TROUBLING THING, YOUR HONOR, FROM OUR

11:23AM 20    PERSPECTIVE, BECAUSE WE, TOO, ARE A MOVING PARTY TODAY, WAS,

11:23AM 21    AND AGAIN I'LL REMIND YOU OF OUR DISCUSSION IN DECEMBER, WE

11:23AM 22    WANTED TO AVOID DELAY.  WE WOULD LIKE THIS CASE TO END.  WE

11:23AM 23    DON'T THINK WE SHOULD HAVE HAD TO FILE IT AND NOW IT'S DRAGGING

11:23AM 24    ON AND ON.

11:23AM 25         EACH MONTH THAT GOES BY PUTS TESSERA, WHICH IS A MUCH

| | |
|---|---|
| 11:23AM | 1 | SMALLER COMPANY THAN SONY CORPORATION, IN THE POSITION OF |
| 11:23AM | 2 | CONTINUING TO INCUR FEES ON A CASE THAT IT THOUGHT IT HAD A |
| 11:23AM | 3 | CONTRACT TO AVOID, THAT SONY IN CONNECTION WITH THIS MOTION TO |
| 11:23AM | 4 | STRIKE OBTAINED AN ADDITIONAL SIX WEEKS ON ITS REBUTTAL |
| 11:23AM | 5 | REPORTS. |
| 11:23AM | 6 | WE'RE NOW STANDING AT NINE WEEKS TOTAL THAT THEY'VE HAD |
| 11:23AM | 7 | THESE EXPERT REPORTS. |
| 11:23AM | 8 | AND TO GET THAT THEY MADE MISREPRESENTATIONS IN THE PAPERS |
| 11:23AM | 9 | TO THE COURT THAT RESULTED IN THIS EXTENSION AND THAT WAS |
| 11:24AM | 10 | TROUBLING TO US AND WE ALSO FELT THAT THERE SHOULD BE SOME |
| 11:24AM | 11 | CORRECTION OF THE FACTUAL RECORD BECAUSE WE DID PROVIDE ALL OF |
| 11:24AM | 12 | THE INFORMATION TO THEM. |
| 11:24AM | 13 | WE ALSO MADE THE SPECIFIC PACKAGES AND PRODUCTS AVAILABLE |
| 11:24AM | 14 | FOR THEM TO INSPECT.  THEY HAVEN'T EVEN ASKED TO SEE THEM. |
| 11:24AM | 15 | SO FROM OUR PERSPECTIVE TODAY'S PROCEEDINGS ARE MORE OF |
| 11:24AM | 16 | WHAT WE'VE SEEN IN THE CASE PREVIOUSLY, AVOIDING RESOLUTION ON |
| 11:24AM | 17 | THE MERITS IN WHAT SHOULD BE A VERY SIMPLE, STRAIGHTFORWARD |
| 11:24AM | 18 | CASE AND DELAYING THE RESOLUTION. |
| 11:24AM | 19 | SO AS WE GET FURTHER INTO THE DISCUSSION TODAY, MY REQUEST |
| 11:24AM | 20 | TO THE COURT REMAINS WHAT IT WAS THREE MONTHS AGO WHICH WAS |
| 11:24AM | 21 | THAT HOPEFULLY WE WILL BE IN A POSITION TO GET THE SCHEDULE SET |
| 11:24AM | 22 | AND JUST GET THIS CASE MOVING FORWARD AND GET IT OFF YOUR |
| 11:24AM | 23 | DOCKET AND GET IT RESOLVED FOR TESSERA. |
| 11:24AM | 24 | THANK YOU. |
| 11:24AM | 25 | THE COURT:  THANK YOU.  SO, MR. MOORE, YOU ARE THE |

11:24AM 1    PRIMARY MOVING PARTY, I SHOULD SAY, SO YOU WILL HAVE AN

11:24AM 2    OPPORTUNITY FOR THE LAST WORD AS TO YOUR MOTION.

11:24AM 3            MR. MOORE:  THANK YOU, YOUR HONOR.  GOSH, I DON'T

11:24AM 4    KNOW WHERE TO START WITH THAT.

11:24AM 5        THEY CLAIM THEY HAVE EVERY REASON TO BELIEVE THAT SONY HAD

11:25AM 6    THESE DOCUMENTS.

11:25AM 7        WELL, THE FACT IS THAT WE SPENT THREE SOLID WEEKS IN JAPAN

11:25AM 8    DEPOSING SONY WITNESSES.  THEY'VE NEVER ASKED ANY SONY WITNESS

11:25AM 9    WHETHER THEY HAD THESE DOCUMENTS.  SO THERE'S NO REASONABLE

11:25AM 10   BELIEF WHEN THEY DIDN'T EVEN FOLLOW UP OR THEY DIDN'T TAKE THE

11:25AM 11   DISCOVERY IN THE FIRST PLACE LONG AGO, THIS WAS BACK IN JULY,

11:25AM 12   LONG BEFORE THEIR SUPPOSED SURPRISE THAT SONY DIDN'T HAVE THESE

11:25AM 13   DOCUMENTS.

11:25AM 14           THE COURT:  WELL, THAT'S WHAT I REMEMBER READING THE

11:25AM 15   TRANSCRIPT FROM JUDGE LLOYD'S HEARING, AND I DON'T REMEMBER

11:25AM 16   WHICH ONE IT WAS, BUT I THINK HE ASKED, AND I'M CERTAIN IT

11:25AM 17   WASN'T YOU, BUT HE ASKED ONE OF YOUR COLLEAGUES, YOU KNOW, HOW

11:25AM 18   BURDENSOME IS IT?  WHAT IS IT GOING TO ENTAIL?

11:25AM 19       AND FOR WHATEVER REASON, HE WASN'T GIVEN AN ANSWER, WELL,

11:25AM 20   THIS IS WHAT IT WOULD ENTAIL.  MAYBE THEY DIDN'T KNOW AT THAT

11:25AM 21   TIME.

11:25AM 22       BUT MY RECOLLECTION IS THAT JUDGE LLOYD REALLY, REALLY

11:25AM 23   TRIED TO DRILL DOWN AND GIVE AN OPPORTUNITY JUST WHAT ARE WE

11:25AM 24   TALKING ABOUT?  IT'S SO DIFFICULT, TELL ME WHAT IS IT?

11:25AM 25       WELL, IT'S GOING TO BE REAL DIFFICULT, WHICH LENDS ITSELF,

11:26AM   1    CANDIDLY WELL, OKAY, IT MUST BE -- THIS INFORMATION MUST EXIST

11:26AM   2    AND IT MUST BE SOMEWHERE THAT IS GOING TO BE SO DIFFICULT TO

11:26AM   3    OBTAIN THAT WE CAN'T EVEN -- IT'S INDESCRIBABLE AND SO IT

11:26AM   4    DID -- IT SEEMS TO LEND ITSELF THAT, YEAH, THE INFORMATION DID

11:26AM   5    EXIST.

11:26AM   6             MR. MOORE:  IT'S DIFFICULT TO ASSESS BECAUSE SONY

11:26AM   7    HAS -- SO WE'RE NOT JUST TALKING ABOUT U.S. PRODUCTS.  THIS IS

11:26AM   8    A CASE ABOUT WORLDWIDE PRODUCTS.

11:26AM   9             THE COURT:  SURE.

11:26AM  10             MR. MOORE:  MS. MCCORMICK IS CORRECT, SONY IS A

11:26AM  11    LARGE COMPANY.  SONY HAS THOUSANDS OR TENS OF THOUSANDS OF

11:26AM  12    PRODUCTS THAT IT SELLS THROUGHOUT THE WORLD.  IT SELLS

11:26AM  13    DIFFERENT VERSIONS OF PRODUCTS IN PRACTICALLY EVERY COUNTRY.

11:26AM  14    SO YOU HAVE -- THOSE ARE ALL SEPARATE PRODUCTS AND MANAGED BY

11:26AM  15    SEPARATE PEOPLE.  THERE ARE A MASSIVE AMOUNT OF PEOPLE INVOLVED

11:26AM  16    IN THIS PROJECT.

11:26AM  17         SONY DOESN'T HAVE A CENTRALIZED -- YOU CAN'T JUST GO AND

11:26AM  18    TYPE SOME P'S ON A COMPUTER AND TYPE IN ALL OF THIS

11:26AM  19    INFORMATION.  YOU LITERALLY GO TO PEOPLE AND ASK DO YOU HAVE

11:27AM  20    THIS?  THAT'S WHY IT'S BURDENSOME.  WE DID THIS PROCESS WHEN WE

11:27AM  21    WERE ORDERED TO.

11:27AM  22             THE COURT:  AND I THINK THAT'S WHAT JUDGE LLOYD WAS

11:27AM  23    WAITING TO HEAR.  THAT EXPLANATION THAT YOU JUST RECITED, IF

11:27AM  24    JUDGE LLOYD HEARD THAT, THAT WOULD HAVE BEEN HELPFUL TO HIM,

11:27AM  25    PERHAPS.

11:27AM 1          MR. MOORE:  WELL, THE PROBLEM WE HAVE WITH JUDGE

11:27AM 2    LLOYD'S PROCESS IS THAT IT'S VERY LIMITED TO WHAT YOU CAN

11:27AM 3    SUBMIT AND SO, FOR EXAMPLE, IT ACTUALLY SAYS YOU CAN'T SUBMIT

11:27AM 4    PAPERS OTHER THAN THE COMMON FILING SO WE DIDN'T UNDERSTAND

11:27AM 5    THAT WE COULD PUT IN A DECLARATION IN THAT PROCEDURE.

11:27AM 6          I GUESS I KNOW THAT I COULD OR WOULD OR AT LEAST OFFER TO

11:27AM 7    DO THAT BUT THAT'S THE REASON WHY THERE WAS NOT MORE EVIDENCE

11:27AM 8    BEFORE JUDGE LLOYD.

11:27AM 9          THE COURT:  I SEE.

11:27AM 10         MR. MOORE:  BUT WITH ALL OF THAT BEING SAID, WE DID

11:27AM 11   DO IT AND WE LOOKED AND IT'S NOT SURPRISING THAT SONY DOES NOT

11:27AM 12   HAVE THESE DOCUMENTS BECAUSE THEY'RE NOT MADE BY SONY.  THEY'RE

11:27AM 13   MADE BY OTHER PEOPLE.

11:27AM 14         SO I THINK AN ANALOGY WE PUT IN OUR BRIEF WAS THAT, IT'S

11:27AM 15   AS THOUGH A CAR MANUFACTURER IS BEING ACCUSED OF A PATENT FOR A

11:27AM 16   COMBINATION OF A BRAKE PAD, WHERE THE MANUFACTURER JUST BUYS

11:27AM 17   THE BRAKE PAD FROM SOMEBODY AND WHAT THEY CARE ABOUT IS IT FITS

11:28AM 18   THE CAR AND STOPS THE CAR AND OTHER THAN THAT THEY DON'T CARE

11:28AM 19   WHAT IS IN THE BRAKE PAD.  SO THAT'S WHAT WE'RE LOOKING AT

11:28AM 20   HERE.

11:28AM 21         IN FACT, A LOT OF THESE PRODUCTS, A LOT OF THESE CHIPS ARE

11:28AM 22   WHAT SONY WOULD BUY BUT A LOT OF THESE ARE IN OTHER PRODUCTS

11:28AM 23   THAT SONY WOULD BUY.  SO THEY MIGHT BUY A DISK DRIVE FROM

11:28AM 24   ANOTHER MANUFACTURER THAT ALREADY HAS A CHIP IN IT.  SONY HAS

11:28AM 25   NO IDEA.  THEY DIDN'T ASK FOR THAT CHIP TO BE PUT IN THERE AND

11:28AM 1    WHEN THEY SAY IT'S A SONY PRODUCT AND SONY CHIPS.  SONY CHIPS

11:28AM 2    ARE A SMALL PIECE OF THIS.  I THINK THERE ARE ACTUALLY ONLY 24

11:28AM 3    SONY CHIPS.  THE VAST MAJORITY OF THE CLAIM HERE AND WHAT WE'RE

11:28AM 4    REALLY ALL FIGHTING ABOUT ARE THIRD PARTY CHIPS.  THEY'RE NOT

11:28AM 5    MADE BY SONY.

11:28AM 6        SO THEY'RE -- THEY WIND UP IN SONY PRODUCTS BUT SONY

11:28AM 7    DOESN'T KNOW WHAT IS IN THE CHIPS BECAUSE SOMEBODY ELSE MADE

11:28AM 8    THEM.

11:28AM 9            THE COURT:  OKAY.

11:29AM 10           MR. MOORE:  PART OF OUR PROBLEM IS WHAT

11:29AM 11   MS. MCCORMICK DESCRIBES WHAT THEY DID IS BREAD AND BUTTER

11:29AM 12   EXPERT WORK.  WHAT SHE FAILED TO EXPLAIN IS THAT DR. BRAVMAN,

11:29AM 13   THE PERSON THAT SHE TOUTS AS THEIR EXPERT, DIDN'T ACTUALLY DO

11:29AM 14   ANY OF THIS.  HE HAD SOMEBODY ELSE DO THE ACTUAL WORK.  HE

11:29AM 15   HIRED A COMPANY WHO HIRED ANOTHER COMPANY.  THEY GAVE HIM A

11:29AM 16   SUMMARY OF WHAT THEY DID.

11:29AM 17       SO WHEN THEY SAY THAT THEY PRODUCED TO US EVERYTHING THAT

11:29AM 18   HE RELIED ON, THAT'S ONLY BECAUSE THEY'RE EXCLUDING THE

11:29AM 19   DOCUMENTS FROM THE WORK THAT WAS ACTUALLY DONE, WHICH THEY TOLD

11:29AM 20   US IS NOT AVAILABLE TO US BECAUSE THEY SAY IT'S WORK OF

11:29AM 21   NON-TESTIFYING EXPERTS.

11:29AM 22       SO ONE OF THE SUPPOSED MISREPRESENTATIONS IN THEIR BRIEF

11:29AM 23   THAT THEY FILED AGAINST US AND, FRANKLY, AGAINST ME BECAUSE I

11:29AM 24   WROTE THAT BRIEF THAT WE'RE NOT BEING TRUTHFUL WHEN WE SAY WE

11:29AM 25   DON'T HAVE EVERYTHING, THAT'S THE REASON WE DON'T HAVE

11:29AM 1      EVERYTHING.

11:29AM 2          AND WE PUT THAT IN OUR OPPOSITION BRIEF AND THEY DIDN'T

11:29AM 3      EVEN ADDRESS IT IN THEIR REPLY.  THEY FILED A 15-PAGE REPLY TO

11:29AM 4      OUR 4-PAGE OPPOSITION BRIEF AND THEY DIDN'T EVEN ADDRESS THAT

11:30AM 5      KEY ISSUE WHICH IS THE WHOLE POINT.

11:30AM 6          THE -- THIS IDEA THAT TESSERA IS JUST LOOKING TO DO THIS

11:30AM 7      QUICKLY AND GET IT OFF THE DOCKET, THAT'S CODE FOR WE'RE GOING

11:30AM 8      TO THROW A WHOLE BUNCH OF STUFF IN THE CASE AT THE END AND RUN

11:30AM 9      IT THROUGH, YOUR HONOR.  WE'RE ENTITLED, WE BELIEVE, TO EXPLORE

11:30AM 10     NOW THAT WE KNOW -- AT A MINIMUM, IF THE REPORTS ARE NOT KEPT

11:30AM 11     OUT, AND WE THINK THEY SHOULD BE BECAUSE TESSERA HAD AMPLE TIME

11:30AM 12     TO DO THIS, AGAIN, THEY HAD A DEPOSITION OF SONY AND THEY COULD

11:30AM 13     HAVE LEARNED WHETHER THESE DOCUMENTS EXISTED AT SONY OR NOT AND

11:30AM 14     THEY DIDN'T BOTHER.

11:30AM 15         BUT IF THE REPORTS ARE KEPT IN, WE MUST HAVE TIME TO

11:30AM 16     DISCOVER INFORMATION ABOUT THE TECHNICAL ASPECTS BECAUSE AS IT

11:30AM 17     STANDS THE ONLY EVIDENCE I GUESS OF THE TECHNICAL

11:30AM 18     CHARACTERISTICS OF THESE CHIPS IS EVIDENCE THAT WAS PREPARED BY

11:30AM 19     NOT TESSERA'S EXPERT BUT THE PEOPLE THAT SONY'S EXPERT HIRED

11:30AM 20     WHO WERE NOT EVEN GIVEN ACCESS TO AT THE MOMENT.  I THINK THAT

11:30AM 21     PROBABLY RENDERS THE REPORT INADMISSIBLE BUT THAT'S THE WAY IT

11:31AM 22     STANDS.

11:31AM 23         SO NOT ONLY WERE WE NOT ABLE TO USE THE DISCOVERY TOOLS TO

11:31AM 24     GET EVIDENCE OURSELVES, BUT THEY'RE SHIELDING THE EVIDENCE THAT

11:31AM 25     THEY OBTAINED BY THIS SORT OF SHELL GAME THAT THEY'RE PLAYING

11:31AM 1  WITH THEIR EXPERTS.

11:31AM 2      SO AT A MINIMUM, YOUR HONOR, WE BELIEVE THAT IF THE COURT

11:31AM 3  IS GOING TO STRIKE THE BRIEF, AND WE THINK THEY SHOULD, THEN WE

11:31AM 4  SHOULD BE GIVEN THE OPPORTUNITY TO TAKE DISCOVERY ON TESSERA

11:31AM 5  AND WHAT IS IN THEIR -- WHAT THEIR LICENSE FEES PAID THEM.

11:31AM 6      BECAUSE WHAT THEY HAVE DONE IS THEY HAVE TOLD US IN LIEU

11:31AM 7  OF PRODUCING ALL OF THE CORRESPONDENCE WITH THE LICENSEES, THEY

11:31AM 8  WOULD INSTEAD GIVE US A DATABASE OF ROYALTY PAYMENTS AND THEN

11:31AM 9  THEIR EXPERTS COMPARED THE CHIPS WITH THE SONY PRODUCTS TO THE

11:31AM 10  WORLD DATABASE AND THEY SAID, WHOOPS, THEY'RE ALMOST NOT IN

11:31AM 11  THERE, AND, LOOK, TESSERA HAS NOT BEEN PAID.

11:31AM 12      AND WHEN WE WENT TO THE LICENSEES, THE LICENSEES TOLD US

11:31AM 13  THEY WOULD BE PAID FOR THOSE CHIPS.  SO THE DATABASE THAT WE'VE

11:31AM 14  GIVEN IS INCOMPLETE AND THEY'RE TRYING TO RECOVER FROM SONY FOR

11:31AM 15  CHIPS FOR WHICH THEY HAVE ALREADY BEEN PAID FOR ROYALTIES BY

11:32AM 16  OTHERS.

11:32AM 17      I THINK THAT'S ALL I HAVE.

11:32AM 18       THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

11:32AM 19      LET ME INDICATE WHAT I'M GOING TO DO.  YOU'RE GOING TO GET

11:32AM 20  AN ORDER SHORTLY ON THIS BECAUSE I THINK YOU'RE DESERVING OF

11:32AM 21  THAT.

11:32AM 22      I'LL GET YOU AN ORDER OUT.  I JUST WANT TO INDICATE NOW

11:32AM 23  THAT I AM GOING TO DENY THE MOTIONS.  I DON'T SEE THAT THERE'S

11:32AM 24  A 26 -- RULE 26 VIOLATION HERE THAT RISES TO THE LEVEL THAT

11:32AM 25  WOULD AFFORD ME THE OPPORTUNITY TO STRIKE.  SO I'M GOING TO

11:32AM 1      DENY THAT REQUEST.

11:32AM 2          I'M GOING TO DENY BOTH REQUESTS.  I THINK IT IS

11:32AM 3      APPROPRIATE TO ALLOW SONY TO HAVE SOME ADDITIONAL TIME, AND

11:32AM 4      I'LL GIVE YOU NOW A SCHEDULE, WHICH YOU'LL GET IN THE ORDER

11:32AM 5      ALSO.  AND YOU'LL GET THE ORDER WITH MY THOUGHTS, COMPLETED

11:32AM 6      THOUGHTS ABOUT THIS MOTION IN THE ORDER, BUT I DO WANT TO GIVE

11:32AM 7      YOU SOME -- A NEW SCHEDULE HERE FOR YOU.

11:32AM 8          WE'RE GOING TO SET TRIAL IN THIS MATTER.  THE JURY TRIAL

11:33AM 9      WILL COMMENCE ON OCTOBER 28TH, OF THIS YEAR AT 9:00 A.M.  AND

11:33AM 10     I'VE LOOKED AT YOUR STATEMENTS AND IT SEEMS TO ME THAT THIS

11:33AM 11     TRIAL CAN -- THIS CASE CAN BE COMPLETED IN ABOUT FIVE AND A

11:33AM 12     HALF DAYS OF TRIAL.

11:33AM 13         SO I'M GOING TO SET TRIAL JURY SELECTION WILL BEGIN ON

11:33AM 14     OCTOBER 28TH, AT 9:00 A.M.; OUR TRIAL DAYS WILL BE

11:33AM 15     OCTOBER 29TH; OCTOBER 30TH, FULL DAYS; OCTOBER 31ST, WOULD BE A

11:33AM 16     HALF DAY, MORNING ONLY; NOVEMBER 4TH, WILL BE A HALF DAY,

11:33AM 17     MORNING ONLY; NOVEMBER 5TH AND NOVEMBER 6TH WILL BE FULL DAYS;

11:33AM 18     NOVEMBER 7TH, WILL BE A HALF DAY IN THE MORNING; AND JURY

11:33AM 19     DELIBERATIONS WILL THEN COMMENCE NOVEMBER 8TH.

11:33AM 20         NOW, I'M GOING TO AMEND THIS SCHEDULE AS FOLLOWS AND THIS

11:34AM 21     IS PROBABLY IMPORTANT FOR YOU.  THE DEADLINE FOR DESIGNATION OF

11:34AM 22     REBUTTAL EXPERTS WITH REPORTS IS APRIL 5TH, APRIL 5TH, OF THIS

11:34AM 23     YEAR.

11:34AM 24         EXPERT DISCOVERY CUTOFF IS APRIL 30TH, APRIL --

11:34AM 25             MR. MOORE:  I'M SORRY, YOUR HONOR.  I MISSED THE

| | | |
|---|---|---|
| 11:34AM | 1 | FIRST DATE. |
| 11:34AM | 2 | THE COURT:  APRIL 5TH.  EXPERT DISCOVERY CUTOFF IS |
| 11:34AM | 3 | APRIL 30TH.  AND THIS WILL ALL BE IN THE ORDER THAT YOU |
| 11:34AM | 4 | RECEIVE, AND I EXPECT THAT THIS WILL BE POSTED THIS AFTERNOON. |
| 11:34AM | 5 | I AM GOING TO HAVE YOU GO TO ADR AND I THINK THAT'S |
| 11:34AM | 6 | APPROPRIATE IN THIS CASE.  I DON'T THINK YOU HAVE PARTICIPATED |
| 11:34AM | 7 | FORMALLY IN ADR IN THIS MATTER. |
| 11:34AM | 8 | AND I'M GOING TO ORDER THAT WITHIN TEN DAYS OF THIS ORDER |
| 11:34AM | 9 | THAT YOU RECEIVE, AND IT WILL BE TODAY, THAT YOU FILE A |
| 11:34AM | 10 | STIPULATION TO PRIVATE ADR, WHICH IDENTIFIES A PRIVATE |
| 11:34AM | 11 | MEDIATOR. |
| 11:34AM | 12 | IF YOU'RE UNABLE TO IDENTIFY, OR AGREE I SHOULD SAY, TO A |
| 11:35AM | 13 | PRIVATE MEDIATOR, THEN YOU'LL SUBMIT A JOINT LETTER TO THE |
| 11:35AM | 14 | COURT WITH TWO NAMES SUBMITTED, ONE BY EACH OF YOU, AND I'LL |
| 11:35AM | 15 | MAKE THE SELECTION IF YOU CAN'T AGREE ON A MEDIATOR. |
| 11:35AM | 16 | THE DESIGNATION OF COMPLETION WILL BE 90 DAYS FROM THE |
| 11:35AM | 17 | DATE THAT I FILE THE REFERRAL ORDER.  AND I'M GOING TO SET A |
| 11:35AM | 18 | STATUS CONFERENCE ON THAT AS WELL. |
| 11:35AM | 19 | AND WE'LL ALSO SEE WHETHER OR NOT THERE NEEDS TO BE A |
| 11:35AM | 20 | MAGISTRATE JUDGE SETTLEMENT CONFERENCE AS WELL. |
| 11:35AM | 21 | THOSE ARE ALL POSSIBILITIES. |
| 11:35AM | 22 | SO I'M GOING TO SET THE INTERIM STATUS CONFERENCE, THAT IS |
| 11:35AM | 23 | THE ADR CHECK-IN, IF YOU WILL, THAT WILL BE ON JULY 26TH, |
| 11:35AM | 24 | JULY 26TH, AND THAT IS AT 10:00 A.M. |
| 11:35AM | 25 | YOUR JOINT INTERIM STATUS CONFERENCE STATEMENT, WHICH WILL |

11:35AM 1    ALSO INCLUDE AN UPDATE AS TO THE PROGRESS OF ADR, WILL BE DUE

11:35AM 2    JULY 19TH.

11:35AM 3        I'LL SET OUR FINAL PRETRIAL CONFERENCE FOR 11:00 A.M. ON

11:35AM 4    SEPTEMBER 27, 11:00 A.M. SEPTEMBER 27TH, WHICH MEANS THAT YOUR

11:36AM 5    JOINT FINAL PRETRIAL CONFERENCE STATEMENT WILL BE DUE ON

11:36AM 6    SEPTEMBER 13TH.

11:36AM 7        NOW, MOTIONS IN LIMINE AND EXCHANGE OF EXHIBITS WILL BE

11:36AM 8    DUE ON SEPTEMBER 13TH; VOIR DIRE QUESTIONS AND PROPOSED JURY

11:36AM 9    INSTRUCTIONS AND PROPOSED JURY VERDICT FORMS WILL BE DUE

11:36AM 10   NOVEMBER 17TH -- EXCUSE ME, SEPTEMBER 17TH.  SEPTEMBER 17TH.

11:36AM 11   THOSE ARE SEPTEMBER DATES, SEPTEMBER 13TH AND SEPTEMBER 17TH.

11:36AM 12       AND I'LL REFER YOU TO STANDING ORDERS FOR FURTHER

11:36AM 13   DIRECTION AS TO TRIAL PREPARATION.  AND YOU WILL GET AN ORDER,

11:36AM 14   AS I SAID, YOU'LL GET AN ORDER TODAY THAT WILL INCORPORATE ALL

11:36AM 15   OF THESE DATES AS WELL AS THE ORDER ON MY DECISION ON YOUR --

11:36AM 16   BOTH OF YOUR MOTIONS.

11:36AM 17       ALL RIGHT.  GREAT.  WELL, THANK YOU VERY MUCH.

11:37AM 18           MS. MCCORMICK:  THANK YOU, YOUR HONOR.

11:37AM 19           THE COURT:  YOU'RE WELCOME.

11:37AM 20       (COURT CONCLUDED AT 11:37 A.M.)

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16        _____
          IRENE RODRIGUEZ, CSR, CRR
          CERTIFICATE NUMBER 8076
17

18        DATED:  APRIL 4, 2013
19

20

21

22

23

24

25