1  IRELL & MANELLA LLP
   Morgan Chu (70446) (mchu@irell.com)
2  Melissa R. McCormick (180384) (mmccormick@irell.com)
   Benjamin W. Hattenbach (186455) (bhattenbach@irell.com)
3  Lisa S. Glasser (223406) (lglasser@irell.com)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276          PUBLIC REDACTED VERSION
5  Telephone:  (310) 277-1010
   Facsimile:   (310) 203-7199
6
7  *Attorneys for Plaintiff Tessera, Inc.*

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  TESSERA, INC.,                  )  Case No. 5:11-CV-04399-EJD (HRL)
                                    )
12          Plaintiff,              )  **PLAINTIFF TESSERA, INC.'S MOTION**
                                    )  **FOR SANCTIONS AGAINST**
13      v.                          )  **DEFENDANT SONY CORPORATION**
                                    )  **FOR NON-COMPLIANCE WITH**
14  SONY CORPORATION,               )  **DISCOVERY ORDERS**
                                    )
15          Defendant.              )  Date:  January 10, 2014[1]
                                    )  Time:  9:00 a.m.
16                                  )  Ctrm:  Courtroom 4, Fifth Floor
                                    )
17  _____

18

19

20

21

22

23

24

25

26

27  _____
28      [1] Tessera's concurrently filed Motion to Change Time requests a hearing date of
    September 27, 2013 or earlier.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................2

II. STATEMENT OF THE ISSUES TO BE DECIDED ........................................3

III. FACTUAL BACKGROUND .................................................................................4

  A. The Sony/Tessera License Agreement. .................................................4

  B. Sony Refused To Provide Information To The Auditors. .....................5

  C. Tessera Sought Discovery About Sony's Products, But Sony Refused To Produce Any Information About Products Actually In Dispute. ...........................6

    1. Sony Was Ordered To Produce Technical And Financial Information Tessera Sought In Discovery. .................................6

    2. Judge Lloyd Ordered Sony To Produce Documents And Information Requested By, But Not Provided To, The Auditors. ...............9

  D. As A Result Of Sony's Refusal To Provide Discovery And Disregard Of The Court's Orders, Tessera's Experts Had To Engage In An Expensive And Laborious Analysis Of Public Information. ...................................10

  E. Sony Sought Unsuccessfully To Strike Tessera's Expert Reports On The Alleged Basis That Sony Did Not Possess The Ordered Information. ................11

IV. LEGAL STANDARD .........................................................................................11

V. ARGUMENT ......................................................................................................12

  A. Evidence And Testimony From Clech And Serwin Should Be Precluded Because Each Relied On Documents And Information Sony Was Ordered To Produce During Fact Discovery And Did Not. ..................................12

    1. Clech Relied On Documents Sony Was Ordered To Produce During Fact Discovery And Did Not. .......................................13

    2. Clech Relied On Information Obtained In Discussions With Unidentified Sony Personnel That Sony Was Ordered To Produce During Fact Discovery And Did Not. .........................................16

    3. Serwin Relied On Documents And Information Sony Was Ordered To Produce During Fact Discovery And Did Not. .....................19

  B. Evidence And Testimony From Clech Should Also Be Excluded Because Sony Instructed Clech Not To Answer Numerous Proper Deposition Questions. .........................................................................21

  C. The Court Should Award Tessera Its Reasonable Expenses Caused By Sony's Failure To Comply With The Court's Discovery Orders. ...........................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Allan Block Corp. v. Cnty. Materials Corp.*,
No. 05-2879JNE/JJG, 2009 WL 1955588 (D. Minn. Jul. 6, 2009)...................................23

*Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*,
2012 WL 1970017 (D. Nev. June 1, 2012) ......................................................................12

*Chanel, Inc. v. Veronique Idea Corp.*,
795 F. Supp. 2d 262 (S.D.N.Y. 2011) ..............................................................................12

*e360 Insight, Inc. v. Spamhaus Project*,
658 F.3d 637 (7th Cir. 2011) ............................................................................................11

*Galaxy Comp. Servs., Inc. v. Baker*,
325 B.R. 544 (E.D. Va. 2005) ..........................................................................................23

*In re Republic of Ecuador*,
No. 1:12-mc-00008 GSA, 2012 WL 487158 (E.D. Cal. Feb. 14, 2012)..........................22

*Jankins v. TDC Mgmt. Corp., Inc.*,
21 F.3d 436 (D.C. Cir. 1994) ...........................................................................................12

*Life Music, Inc. v. Broadcast Music, Inc.*,
41 F.R.D. 16 (S.D.N.Y 1966)...........................................................................................12

*Paradigm Alliance, Inc. v. Celeritas Techs., LLC*,
722 F. Supp. 2d 1250 (D. Kan. Jul. 2, 2010)...................................................................23

*Pulliam v. Shelby County, Tenn.*,
902 F. Supp. 797 (W.D. Tenn. 1995)................................................................................12

*Von Brimer v. Whirlpool Corp.*,
536 F.2d 838 (9th Cir. 1976).............................................................................................12

<u>Rules</u>

Fed. R. Civ. P. 26(b)(4)(C).........................................................................................................22, 23

Fed. R. Civ. P. 37(b)(2) ...........................................................................................................passim

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 10, 2014 at 9:00 a.m. or as soon thereafter as counsel may be heard before the Honorable Edward J. Davila in Courtroom 4 on the 5th Floor of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California, 95113, Plaintiff Tessera, Inc. ("Tessera") will and hereby does move pursuant to Federal Rule of Civil Procedure 37(b)(2) for sanctions against Defendant Sony Corporation ("Sony") prohibiting evidence and testimony from Jean-Paul Clech and Kenneth Serwin based on information Sony improperly withheld from discovery in violation of the Court's discovery orders, all related underlying documents and information about which Clech and Serwin testified, and for expenses.  The basis for the Motion is that Sony was ordered to produce documents and information during fact discovery, Sony did not do so, and Sony then provided the ordered documents and information to its expert witnesses Clech and Serwin.  Clech should also be prohibited from testifying because Sony improperly instructed him not to answer more than fifty proper deposition questions.

Tessera's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Melissa R. McCormick filed herewith, all exhibits and other papers on file in this matter, such other evidence and argument as may be presented at or before the hearing on this Motion, and all matters of which the Court may take judicial notice.

Dated:  August 6, 2013

Respectfully submitted,

IRELL & MANELLA LLP

By: /s/ Melissa R. McCormick
Melissa R. McCormick
Attorneys for Plaintiff Tessera, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Sony Corporation ("Sony") has violated the Court's orders again, this time by providing its expert witnesses with documents and information Plaintiff Tessera, Inc. ("Tessera") sought in discovery, Sony was ordered to produce, and Sony did not produce.  Sony also falsely represented to the Court that Sony did not possess some of the documents and information Sony later provided to its experts.  Sony's violations of the Court's orders warrant severe sanctions.

\*       \*       \*

After improperly withholding documents and information from discovery despite three discovery orders, Sony provided its technical expert, Jean-Paul Clech, with Sony schematics, reports and other internal information encompassed by the discovery orders, which Clech relied upon to opine that various Sony products are not royalty-bearing.  Sony likewise provided its damages expert, Kenneth Serwin, with Sony sales data on which Serwin relied to opine that Tessera's technical expert, Dr. John Bravman, did not adequately support his conclusion that the sample he utilized is representative.  Tessera requested the documents and information on which Clech and Serwin relied in discovery, obtained Court orders directing Sony to produce them, and Sony did not.

As the direct result of Sony's failure to comply with the Court's orders, Tessera was forced to engage in a laborious and expensive reverse-engineering analysis, which included locating and purchasing 150 products from public sources and disassembling them to determine whether they contained royalty-bearing semiconductor packages, using equipment that included a specialized x-ray machine and two optical microscopes.  This work resulted in a series of images and reverse-engineering reports – more than 4,600 pages – containing the technical information necessary to determine the extent to which the subset of Sony products that Dr. Bravman was able to locate contained packages that were royalty-bearing under the parties' agreement.  From that information, Dr. Bravman and Tessera's damages expert, Julie Davis, calculated the unpaid royalties owed. Because Sony had also failed to produce its sales data (again despite Court orders), Ms. Davis was forced to rely on sales information that she was able to locate publicly, in industry analyst reports

1   and SEC filings.  This exceedingly arduous process would have been largely, if not entirely,

2   unnecessary had Sony complied with the Court's orders.

3        Sony's violation of the Court's orders has been flagrant.  Tessera sought information from

4   Sony, through all appropriate channels, to determine the amount of royalties Sony owed Tessera

5   under the parties' contract.  Sony's refusal to provide it to the independent auditors during

6   Tessera's 2010 audit of Sony ███████████████████.  Sony's refusal to provide it after

7   being ordered to do so is contempt.  Sony's efforts to hide its contempt through false

8   representations compounded the gravity of its misconduct, as did the extraordinary expense and

9   substantive prejudice to which Tessera has been subjected as a result of being forced to analyze

10  key issues without even basic information from Sony.  Sony's latest conduct – selectively

11  providing improperly withheld discovery to its experts, long after the close of fact discovery, so

12  that Sony's experts could use that information against Tessera – is beyond the pale.

13       The Court should sanction Sony by prohibiting Sony from presenting evidence or

14  testimony from Clech or Serwin based on information Sony improperly withheld from discovery

15  and from otherwise using or introducing the improperly withheld documents and information on

16  which Clech and Serwin relied.  The Court should also preclude Clech from testifying because

17  Sony's counsel improperly instructed him not to answer more than fifty proper questions at his

18  deposition.  Pursuant to Rule 37(b)(2)(C), the Court should further award Tessera its reasonable

19  expenses caused by Sony's failure to comply with the Court's discovery orders.

20  **II.     <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>**

21       1.     Pursuant to Federal Rule of Civil Procedure 37(b)(2), should the Court prohibit

22  evidence and testimony from Jean-Paul Clech based on documents and information Sony

23  improperly withheld from discovery in violation of the Court's discovery orders?

24       2.     Pursuant to Rule 37(b)(2), should the Court prohibit evidence and testimony from

25  Kenneth Serwin based on documents and information Sony improperly withheld from discovery

26  in violation of the Court's discovery orders?

27       3.     Pursuant to Rule 37(b)(2), should the Court exclude from evidence the improperly

28  withheld documents and information Sony provided to Clech and Serwin?

4. Should the Court prohibit Clech from testifying at trial because Sony improperly instructed him not to answer more than fifty proper deposition questions?

5. Pursuant to Rule 37(b)(2)(C), should the Court order Sony to pay Tessera's reasonable expenses caused by Sony's failure to comply with the Court's discovery orders?

## III.   FACTUAL BACKGROUND

### A.   The Sony/Tessera License Agreement.

In 1997, Tessera and Sony entered into a Master License Agreement and First Addendum to the Master License Agreement, to which they added a Second Addendum on January 28, 2004 (collectively, the "Agreement"). Exs. 1-3. Under the Agreement as amended, ███████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████
████████████████████████████████████
██████████████████████████████████████████████████████████████████
███
███
███
███
██████████████████████████████████████████████████

---

[2] Sony now claims that this clause does not require it to pay royalties on packages made by third parties and incorporated into Sony products. This argument is inconsistent with both (i) the negotiations, during which Tessera expressly *rejected* Sony's suggestion that the parties include language reflecting Sony's current contract interpretation, and (ii) Sony's conduct over the life of the Agreement, including that Sony never made any effort to evaluate its products based on a royalty definition of the sort for which Sony argues now.

[3] An "IC" is an integrated circuit, also known as a semiconductor chip. An IC "package," also known as a semiconductor package, is a casing that serves as the electrical interface between semiconductor chips and the systems in which they operate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15    **B.**    <u>**Sony Refused To Provide Information To The Auditors.**</u>
16
17
18
19
20
21
22
23
24
25
26
27
28



1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████

4  ███████████████████████████████████████████████

5  ████████████████████████████████████████

6  █████████████████████████████████████████████████████

7  ██████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ███████████████████████████████████████████████

10 █████████████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ██████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ██████████████████

15 █████████████████████████████████████████████████████████

16 █████████████████████████████████████████████████████

17 ████████████  Tessera filed suit against Sony on May 26, 2011 in Santa Clara County Superior

18 Court, and Sony removed the case to this Court on September 2, 2011.  D.I. 1; D.I. 6.

19     **C.**    <u>**Tessera Sought Discovery About Sony's Products, But Sony Refused To**</u>

20             <u>**Produce Any Information About Products Actually In Dispute.**</u>

21         **1.**      **Sony Was Ordered To Produce Technical And Financial Information**
                    **Tessera Sought In Discovery.**

22 Tessera served discovery requests directed at determining which Sony products contained

23 packages that met the definition of "Royalty Bearing Tessera Licensed Product" and on which

24 Sony should have paid royalties.

25 For example, on July 18, 2012, Tessera propounded its Second Set of RFPs including:

26 18.    Documents sufficient to show the quantity of each Sony Product made, used, sold,

27 offered for sale, imported or exported, or transferred by Sony, by quarter from October 15,
1997 to September 24, 2010.

28

20.   Documents sufficient to show, for each BGA and LGA package included in any Sony Product, the manufacturer of the package.

21.   Documents sufficient to show, for each BGA and LGA package included in any Sony Product, the number of Billable Pins contained in the package.

22.   Documents sufficient to show, for each BGA and LGA package included in any Sony Product, whether the chip(s) within the package are in a face up or face down orientation; the location and pitch of the terminals relative to the IC(s) in the package; and whether the package substrate is reinforced, and if so, its thickness.

Ex. 7 at 5-6.  These requests were specifically designed to assess Sony's royalty obligations under the Agreement.  Request No. 22 intentionally ████████████████████████████████████ ██████████████████████████████████ and asked Sony to produce documents sufficient to show whether the packages in Sony's products met the definition of royalty-bearing products in the Agreement.  On the same date, Tessera propounded interrogatories seeking similar information ██████████████████████████████████████████████████ ███████████████  See Ex. 8 ("Separately for each BGA and LGA package included in any Sony Product, describe with specificity: whether the chip(s) within the package are in a face up or face down orientation; the location and pitch of the terminals relative to the IC(s) in the package; and whether the package substrate is reinforced, and if so, its thickness.").

Tessera's Third Sets of RFPs and Interrogatories, served September 5, 2012, similarly sought specific information tailored to identifying royalty-bearing packages in Sony products.  *See* Ex. 9 at 5 ("All Documents related to the designs or Specifications for BGA or LGA packages, manufactured by a third party, which have been incorporated into a Sony Product."); *id.* ("All requests for quotation and requests for proposal regarding the design or manufacture of any BGA or LGA packages, manufactured by a third party, that have been incorporated into a Sony Product."); Ex. 10 at 3 ("For each third party identified in Your response to Interrogatory No. 12, state on a quarterly basis the quantity of each BGA or LGA package made by each identified third party and included in a Sony Product, the Specifications of each such package, and the Sony Products in which each BGA or LGA package was incorporated.").

1    Sony served only objections to Tessera's Second Sets of discovery.  Ex. 11; Ex. 12.

2    Tessera promptly filed Discovery Dispute Joint Report #4 ("DDJR#4"), which requested an order

3    compelling Sony to comply with Tessera's Second Sets.  D.I. 69 at 1.[4]

4        On October 10, 2012, Judge Lloyd issued his Order on DDJR#4, finding that "Tessera is

5    entitled to reasonable damages discovery based on its [contract] interpretation" and directing Sony

6    to "produce responsive documents/information for all Sony products that contain the technology,

7    including third-party-supplied off-the-shelf technology, for the lifetime of the agreement."  D.I. 83

8    at 2-3.  Sony moved for reconsideration, which Judge Lloyd denied.  D.I. 103 ("the Court

9    concluded that Tessera was entitled to reasonable damages discovery *for the products as defined*

10   *by Tessera* and *for the full life of the license agreement*") (emphasis added).  Sony also appealed

11   the Order to this Court.  With its October 24 appeal, five days after the close of fact discovery,

12   Sony submitted a declaration from a previously undisclosed Sony employee who purported to

13   attest that providing the discovery Judge Lloyd ordered could be burdensome.  D.I. 95-1.

14       This Court denied Sony's appeal of Judge Lloyd's Order.  D.I. 123.  This Court noted that

15   Sony had argued only "that the order compelling production *could* impose an extreme burden;"

16   that "[Sony] frames its claim of undue burden only with generalities based on the entire universe

17   of third-party products manufactured for [Sony]," rather than addressing the BGA and LGA

18   packages at issue; and that "[Sony's declarant] himself is only able to speculate as to the extent of

19   any burden."  D.I. 123 at 4 (emphasis in original).  The Court ordered Sony to make its production

20   by December 31, 2012.  D.I. 123 at 5.  Sony still produced nothing other than documents relating

21   to products on which Sony or one third party ████ allegedly had already paid royalties.[5]

22

---

23   [4] Sony also refused to provide any information or documents in response to Tessera's
     Third Sets.  Ex. 13 at 5-8; Ex. 14 at 5-6.  To resolve the parties' dispute over that, Sony
24   represented to Tessera that the Court's rulings with respect to Tessera's Second Sets would apply
     to Tessera's Third Sets.  Ex. 15 ("The issues of time and third-party products would be the same
25   for both sets and we are willing to abide by the ultimate resolution of those issues in DDJR#4 with
     respect to the second set of requests.").  Despite the Court's resolution of these issues in Tessera's
26   favor, Sony never provided any discovery in response to the Third Sets.

27   [5] In addition to seeking formal fact discovery, Tessera also proposed a representative
     products approach to make discovery and proof more efficient.  Ex. 16.  Sony did not respond.
     Judge Lloyd and Your Honor also specifically encouraged the parties to discuss a representative
28   products approach.  D.I. 83 at 2-3; D.I. 123 at 5.  Despite Judge Lloyd's and Your Honor's urging,
     Sony told Tessera it would never agree to a representative products approach.  Ex. 17 ("We do not

### 2.     Judge Lloyd Ordered Sony To Produce Documents And Information Requested By, But Not Provided To, The Auditors.

Tessera also served Sony with written discovery seeking documents Sony should have provided, but did not provide, to the auditors during the 2010 audit.  For example, Request No. 14 in Tessera's First Set of RFPs sought "All Documents relating to assessing, fulfilling, denying, considering, responding to, or otherwise addressing the Connor Group's requests for information in connection with the audit."  Ex. 18.  The only documents Sony produced were an implausibly small handful of e-mails between Sony and the Connor Group and Sony internal emails discussing the audit.  Notably absent from Sony's production were the categories of technical and financial information requested by, but not provided to, the auditors.

Tessera thus filed DDJR#2 on August 24, 2012.  Among other things, Tessera moved for an order compelling Sony to produce all information requested by, but not provided to, the auditors.  On October 1, 2012, Judge Lloyd granted Tessera's motion.  D.I. 72 at 3:7-15 ("To the extent that Sony has information requested by the Auditor, but not provided to the Auditor, Sony is ordered to produce that information").

Following the Court's Order on DDJR#2, Tessera asked Sony when it would complete the ordered production.  Ex. 19.  Sony responded that "[w]e are not aware of any information that was requested by the auditor, that exists, and that was not provided to the auditor."  Ex. 20.  Tessera immediately provided Sony with a detailed exemplary list of information requested by, but not provided to, the auditors, that was covered by the Court's order.  Ex. 21.  ███████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████  Sony never produced the ordered information.

---

agree, however, that results for any set of products selected for this discovery purpose would be conclusive as to liability for other products.").

**D.**     **As A Result Of Sony's Refusal To Provide Discovery And Disregard Of The Court's Orders, Tessera's Experts Had To Engage In An Expensive And Laborious Analysis Of Public Information.**

Tessera asked Dr. John Bravman, a former engineering professor at Stanford University and the current President of Bucknell University, to address the technical issues in the case.  Dr. Bravman's principal assignment was to analyze the extent to which Sony's products contained royalty bearing semiconductor packages, *i.e.*, packages that meet the Agreement's definition of "Royalty Bearing Tessera Licensed Products."  Ex. 22 ¶ 1.  Dr. Bravman was also asked to determine the number of "Billable Pins" in those packages so that Tessera's damages expert, Julie Davis, a CPA and recognized authority on intellectual property damages, could calculate the royalties owed.  *Id.* at 1 n.1; *see also* Ex. 3 ¶ IV.B (royalties calculated based on Billable Pins).

Dr. Bravman's assignments would have been impossible without technical information about Sony's products.  Ex. 22 ¶ 61.  Dr. Bravman therefore engaged and directed a team of reverse engineering assistants to obtain publicly available Sony products for analysis.  It was a costly and time-consuming process, requiring hundreds of hours of labor and costing several hundred thousand dollars.  *Id.* ¶ 94.  Dr. Bravman's assistants obtained and disassembled 150 products from 28 different product families, containing 868 BGA packages (684 of which were royalty bearing under the Agreement).  *Id.*; *see also* Ex. 23 (Bravman Tr. at 188:25-192:8) ("as I came to understand that Sony did not share that information, I embarked on this project that involved this massive tear down analysis").  This undertaking could have been largely (if not entirely) avoided had Sony provided the ordered discovery.

Dr. Bravman's analysis demonstrates what has motivated Sony's refusals to cooperate with the audit, to produce information about its products in discovery, or to agree to a representative products approach: *more than half* of the 150 products Dr. Bravman acquired and analyzed contained royalty bearing packages *on which Sony had never paid royalties*.  Ex. 22 App. A.  In addition, *more than fifty* of the royalty bearing packages Dr. Bravman found in Sony products were *Sony-branded*.  *Id.* App. E.

Ms. Davis, drawing partially on Dr. Bravman's analysis, calculated the royalties Sony owed for the packages Dr. Bravman found in Sony's products.  Part of Ms. Davis's analysis

necessarily depends on Sony sales data for the relevant royalty bearing products.  Because Sony

never produced relevant sales data during discovery, Ms. Davis calculated the royalties owed by

relying on estimates based on Sony's public filings, such as SEC filings, as well as other public

information sources, such as market research reports.

**E.     Sony Sought Unsuccessfully To Strike Tessera's Expert Reports On The Alleged Basis That Sony Did Not Possess The Ordered Information.**

On January 29, 2013, Sony moved to strike Dr. Bravman's and Ms. Davis's expert reports.

Despite opposing Tessera's discovery motions on the ground that providing the discovery would

be too burdensome, Sony asserted in its motion to strike that it did not possess the information it

had been ordered to produce.  Sony argued that Tessera's experts therefore should have gathered

and analyzed public information about Sony's products earlier.

The Court denied Sony's motion.  D.I. 178.  In its Order, the Court addressed Sony's

shifting (and conflicting) arguments about its failure to comply with the Court's orders:

> [D]espite two court orders compelling Sony to produce documents related to third-party products or agree on a representative sample of products for which documents would be produced, it chose not to do so.  While it later argued (and apparently maintains) that responsive documents were never in its possession, such an argument was not raised before the magistrate judge that decided the motion to compel or before this court in a subsequent request for *de novo* review.  To the contrary, Sony resisted production based on burden it allegedly imposed.  Its current position, therefore, seems to be an all too convenient excuse for continuing non-compliance.  Under these circumstances, and in the absence of Sony's production of responsive information – which Judge Lloyd, this court and Tessera were all led to believe was in Sony's possession – Tessera's choice to engage Bravman and Davis in the manner it did was a reasonable one.

D.I. 178 at 4.

## IV.     LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2) provides the Court with broad powers to remedy

a party's disobedience of a discovery order.  Rule 37(b)(2)(A)(ii) provides that a court may

"prohibit[ ] the disobedient party . . . from introducing designated matters into evidence."

Numerous courts have applied Rule 37(b)(2) to prohibit parties from introducing evidence

parties failed to produce in violation of a discovery order.  *See, e.g.*, *e360 Insight, Inc. v.

Spamhaus Project*, 658 F.3d 637, 642-644 (7th Cir. 2011) (affirming district court order striking

witnesses and damage calculation under Rule 37(b)(2) based on plaintiff's failure to comply with

1  discovery orders); *Jankins v. TDC Mgmt. Corp., Inc.*, 21 F.3d 436, 444 (D.C. Cir. 1994)

2  (affirming Rule 37(b)(2) order barring defendants from introducing evidence in opposition to

3  claims regarding which discovery had been "particularly resisted" despite court orders compelling

4  production); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 842-43 (9th Cir. 1976) (affirming

5  district court order striking late-produced documents under Rule 37(b)(2) based on plaintiff's

6  failure to comply with discovery order).[6]

7  **V.      ARGUMENT**

8        **A.      <u>Evidence And Testimony From Clech And Serwin Should Be Precluded</u>**

                   **<u>Because Each Relied On Documents And Information Sony Was Ordered To</u>**

9                     **<u>Produce During Fact Discovery And Did Not.</u>**

10        On April 5, 2013, Sony served five expert reports, including from Jean-Paul Clech and

11  Kenneth Serwin.[7]  Clech █████████████████████████████████████

12    Serwin ███████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████

14  █ Clech and Serwin cite and rely on documents and information Sony was ordered to produce

15  during fact discovery and did not, but which Sony nevertheless selectively provided to its experts.[8]

16

17

18       **[6]** *See also Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, No. 2:09-C-1182, 2012

19  WL 1970017, at *4 (D. Nev. June 1, 2012) (excluding plaintiffs' late-produced document under
Rule 37(b)(2) because plaintiffs did not comply with magistrate judge's order compelling

20  production); *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 270-71 (S.D.N.Y. 2011)
(granting Rule 37(b)(2)(A) motion to prohibit any evidence, "whether documents or testimony," in

21  support of defendants' claimed deductions from gross revenue due to failure to timely comply with
order compelling production of purchase and sale records); *Pulliam v. Shelby County, Tenn.*, 902

22  F. Supp. 797, 804-05 (W.D. Tenn. 1995) (finding Rule 37 sanctions barring testimony beyond
information produced in discovery justified:  "Despite all Orders of the Court to the contrary . . .

23  defendants refused to update answers to interrogatories, refused to adequately investigate to
determine responses to interrogatories, [and] refused to disclose documents to plaintiff,"

24  constituting "flagrant violation of this Court's Orders and disregard of the Federal Rules of Civil
Procedure"); *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 28-33 (S.D.N.Y 1966)

25  (precluding plaintiff under Rule 37(b)(2) from introducing any evidence relating to facts called for
by interrogatories plaintiff failed to answer in violation of discovery order).

26       **[7]** Sony served a revised Clech report on May 17, 2013, and a supplemental Serwin report
on May 28, 2013.

27       **[8]** Following receipt of Sony's April 5 expert reports, Tessera requested that Sony

28  immediately produce all unproduced documents and information cited or relied on in Sony's
experts' reports.  Ex. 26.  Sony never responded.

                                                              TESSERA'S MOTION FOR SANCTIONS
5:11-cv-04399-EJD (HRL)

1.      **Clech Relied On Documents Sony Was Ordered To Produce During Fact Discovery And Did Not.**

Clech reviewed information regarding numerous semiconductor packages found in Sony products, which Dr. Bravman had analyzed and concluded were royalty-bearing.  Clech opines that

1

2

3

4     Tessera sought exactly the kinds of Sony documents

5 in its Second Set of RFPs.  For example, Tessera requested "Documents sufficient to show, for

6 each BGA and LGA package included in any Sony Product, whether the chip(s) within the

7 package are in a face up or face down orientation; the location and pitch of the terminals relative

8 to the IC(s) in the package; and whether the package substrate is reinforced, and if so, ***its***

9 ***thickness***") (emphasis added).  Ex. 7 (No. 22).

10

11     When Sony refused to provide any documents in response to Tessera's Second Set of

12 RFPs, Tessera sought the Court's assistance.  *See, e.g.*, D.I. 69.  In DDJR#4, Tessera emphasized

13 the importance of the requested technical diagrams and documents to the case.  *E.g.*, D.I. 69 at

14 2:9-18 ("The requests are specifically tailored to a central issue in this litigation:  Sony's usage of

15 Royalty Bearing Tessera Licensed Products under Section IV.C of the Second Addendum to the

16 Agreement"); D.I. 77 at 2:6-8 ("for its damages case, Tessera needs to know which packages meet

17 the criteria above, how many of them were 'sold, transferred or used internally,' and how many

18 Billable Pins each package contains").  Judge Lloyd and Your Honor ordered Sony to produce

19 these documents and information.  *E.g.*, D.I. 83 at 3:3-5 ("Sony shall produce responsive

20 documents/information for all Sony products that contain the technology . . . for the lifetime of the

21 agreement"); D.I. 123 at 5:16-17.  Sony never did.

22     Judge Lloyd also ordered Sony to produce Exhibits L-Q in connection with DDJR#2.

23 Judge Lloyd ordered Sony to produce all information requested by, but not provided to, the

24 auditors.  D.I. 72 at 3:7-15.

25

26

27

28

- 14 -

1  ███████████████████████████████████████████████████

2  ███████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ██████████████████████████████████████████████

5  █████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ███████████████████████████████████████████████

8  ██████████████

9        Compounding its misconduct, Sony falsely told the Court that Sony had produced these

10  documents.  Sony told the Court in a February 4, 2013 filing that "Sony [had] produced the

11  technical information that it maintains concerning the chips it designs, whether the chips are made

12  by Sony or by someone else for Sony . . . ."  D.I. 137 at 4.  This representation is demonstrably

13  false.  ████████████████████████████████████████

14  ████████████████████████  Sony never produced these documents during fact discovery;

15  Tessera received them for the first time when Sony served Clech's rebuttal report on April 5, 2013.

16        Sony also falsely told the Court that it did not possess other documents Sony gave to

17  Clech.  Sony told the Court in a February 19, 2013 filing that Sony "does not have documents

18  showing the internal structures of chips that are *designed and made by others*."  D.I. 146 at 2:5-17

19  (emphasis in original); *see also* Ex. 30 (03/22/13 Hrg Tr.) at 7:8-12, 9:12-14 (Sony counsel:  "So

20  the fundamental issue, I think, Your Honor, is that there was the expectation on the part of the

21  plaintiff that Sony had documents about the structure of these chips that it just buys from others.

22  Sony doesn't have those documents . . . .").  Contrary to these representations,  ███████████████

23  ████████████████████████████████████████████████

24  ███████████████████████████████

25        Tessera will be prejudiced if Clech is permitted to testify about any of his opinions based

26  in whole or in part on Exhibits L-Q.  Tessera requested these documents and Sony was ordered to

27  produce them.  Sony refused to do so.  As the direct result of Sony's misconduct, Dr. Bravman

28  had to resort to a costly and time-consuming reverse-engineering analysis in an attempt to obtain

1    the same information Sony had in its possession all along.  Sony should not be permitted to profit

2    from its misconduct by presenting evidence and testimony from Clech that is based on information

3    Sony improperly withheld from discovery or by having Clech testify about the cherry-picked

4    documents and their contents.  In addition, Exhibits L-Q should be stricken and the following

5    sections of Clech's April 5, 2013 report and May 17, 2013 revised report which cite and/or rely in

6    whole or in part on Exhibits L-Q and information contained in them should be stricken: ███████

7    ███████████████████████████████████████[9] Exs. 24, 37.

8           **2.      Clech Relied On Information Obtained In Discussions With**
               **Unidentified Sony Personnel That Sony Was Ordered To Produce**
9              **During Fact Discovery And Did Not.**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27        [9] The following portions of Kenneth Serwin's reports, which cite or rely on the above
          portions of Clech's reports, should also be stricken:
28



2829286

The information these unidentified Sony employees provided to Clech is clearly covered by Tessera's Second Set of Interrogatories and the Court's orders compelling responses to them. For example, Interrogatory No. 7 sought the identities of the manufacturers of each BGA and LGA package included in a Sony product. ███████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

███████████ No. 9 sought the substrate thickness of each BGA and LGA package included in a Sony product. ████████████████████████████████████████ █████████████████████████████████████ No. 10 asked Sony to identify the reasons Sony contends any BGA or LGA package included in a Sony products is not royalty-bearing under the Agreement. █████████████████████████████████ ███████████████████████████████████████████████████ ██████████

Sony was ordered to produce this information. *E.g.*, D.I. 83 at 3:3-5 ("Sony shall produce responsive documents/information for all Sony products that contain the technology, including third-party-supplied-off-the-shelf technology, for the lifetime of the agreement"); D.I. 123 at 5:16-17. Sony also represented that it would abide by the Court's ruling on Tessera's Second Set of Interrogatories with respect to Tessera's Third Set of Interrogatories. Ex. 15. Tessera's Third Set of Interrogatories sought information about third-party manufacturers of packages included in Sony's products. *E.g.*, No. 12 ("Identify all third parties that have made BGA or LGA packages that have been included in a Sony Product"); No. 13 ("For each third party identified in Your response to Interrogatory No. 12, state on a quarterly basis the quantity of each BGA or LGA package made by each identified third party and included in a Sony Product, the Specifications of each such package, and the Sony Products in which each BGA or LGA package was incorporated"); No. 14 ("If You contend that any BGA or LGA package made by a third party and used in a Sony product is not a Royalty Bearing Tessera Licensed Product, identify any such package(s) and separately for each such package Set Forth The Complete Basis For Your contention"). These interrogatories sought ████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████     Despite the Court's orders, Sony never provided Tessera with substantive

3 responses to Tessera's Second or Third Sets of Interrogatories.

4      As discussed above, Tessera will be prejudiced if Clech is permitted to testify about

5 opinions based, in whole or in part, on information he learned from these unidentified Sony

6 employees.  Tessera sought the information these employees provided to Clech from Sony in

7 discovery, Sony was ordered to provide it, and Sony did not.  Clech's reliance on information

8 Tessera and its experts did not possess – information Sony moreover cherry-picked to provide to

9 Clech – would reward Sony's misconduct and unfairly disadvantage Tessera.  Clech should be

10 prohibited from testifying about any opinions based in whole or in part on information provided to

11 him by unidentified Sony employees and about the information itself, which should also be

12 excluded.  In addition, the following sections and paragraphs of Clech's April 5, 2013 report and

13 May 17, 2013 revised report which cite and/or rely in whole or in part on such information should

14 be stricken: ███████████████████████████████████

15 ████████████████████████████████████**12**

16      **3.      Serwin Relied On Documents And Information Sony Was Ordered To**
17      **Produce During Fact Discovery And Did Not.**

18      Sony's damages expert, Kenneth Serwin, also relied on documents and information the

19 Court ordered Sony to produce but which Sony did not. ████████████████████

20 ████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████

25      ██  ████████████████████

26 _____
**12**The following portions of Serwin's reports, which cite or rely on the above portions of
27 Clech's reports, should also be stricken: ████████████████████

28 ████████████████████████████████████████████



14    Tessera sought this information in discovery, as Tessera described in its brief to Judge

15  Lloyd in connection with DDJR#4:

16        [F]or its damages case, Tessera needs to know which packages meet the [technical]
          criteria above [definition of "Royalty Bearing Tessera Licensed Product" in the
17        Agreement], how many of them were "sold, transferred, or used internally," and how
          many Billable Pins each package contains. Because Sony has predominantly incorporated
18        the packages at issue into its end products, such as televisions, determining the number of
          pertinent packages "sold, transferred, or used internally" by Sony requires information
19        regarding which end products contain the packages at issue, how many of those packages
          each such end product contains (*e.g.*, a single television could include two or more of the
20        same package), ***and the quantity of each such end product "sold, transferred, or used
          internally" by Sony***.

21

22  D.I. 77 at 2:6-13 (emphasis added). *See also* Tessera's Second Set of Interrogatories No. 5 ("State

23  the quantity of each Sony Product made, used, sold, offered for sale, imported or exported, or

24  transferred by Sony, by quarter from October 15, 1997 through September 24, 2010"); Tessera's

25  Second Set of RFPs No. 18 ("Documents sufficient to show the quantity of each Sony Product

26  made, used, sold, offered for sale, imported or exported, or transferred by Sony, by quarter from

27  October 15, 1997 through September 24, 2010"). Judge Lloyd ordered Sony to provide the

28  requested information. D.I. 83.



11  Sony's failure to abide by the Court's discovery orders by refusing to produce its sales data,

12  but nevertheless providing that information to its expert, prejudiced Tessera.  Without Sony sales

13  data, Tessera's expert Ms. Davis had to collect sales information from public sources.

14  Specifically, Ms. Davis had to analyze Sony SEC filings, market research reports, and other

15  publicly available sources in an attempt to acquire the sales data necessary for her damages

16  calculations.  Permitting Sony to present evidence and testimony from Serwin relating in any way

17  to the sales data will increase the prejudice to Tessera.  Serwin should be prohibited from

18  testifying about any opinions based in whole or in part on the Sony sales data and about the data

19  itself, which should also be excluded.  In addition, the following paragraphs and appendices of

20  Serwin's report which cite and/or rely in whole or in part on the Sony sales data should be

21  stricken:

22

23  B.  **Evidence And Testimony From Clech Should Also Be Excluded Because Sony
        Instructed Clech Not To Answer Numerous Proper Deposition Questions.**

24

25

26

27

28

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 █████████████████████████████████████████████████████████

5 ████████   Sony's instructions not to answer, which prevented Tessera from fully exploring

6 Clech's opinions, the bases for his opinions, and his credibility, are an independent ground to

7 preclude evidence and testimony from Clech.[13]

8         Rule 26(b)(4)(C) expressly permits discovery of communications between a party's

9 attorney and expert witnesses to the extent the communications "identify facts or data that the

10 party's attorney provided and that the expert considered in forming the opinions to be expressed"

11 or "identify assumptions that the party's attorney provided and that the expert relied on in forming

12 the opinions to be expressed."  Fed. R. Civ. P. 26(b)(4)(C)(ii)-(iii).  The Advisory Committee

13 Notes make clear that even after the 2010 Amendments, which limited discovery of draft reports

14 and certain communications between a party's attorney and an expert, an opposing party remains

15 entitled to wide-ranging discovery from expert witnesses:

16       Rules 26(b)(4)(B) and (C) do not impede discovery about ***the opinions to be offered by the expert or the development, foundation, or basis of those opinions***.  For example, the

17       expert's testing of material involved in litigation, and ***notes*** of any such testing, would not be exempted from discovery by this rule. . . .  Counsel are also free to question expert

18       witnesses about ***alternative analyses, testing methods, or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the***

19       ***opinions expressed***.

20 *Id.* 2010 Amendments Advisory Comm. Notes (Subdivision (b)(4)) (emphasis added).  *See also In*

21 *re Republic of Ecuador*, No. 1:12-mc-00008 GSA, 2012 WL 487158, at *2 (E.D. Cal. Feb. 14,

22 2012) ("The ROE is entitled to all relevant discovery regarding the facts/data considered, reviewed

23 or relied upon for the development, foundation, or basis of [expert's] affidavits/declarations . . .

24 pursuant to amended Rules 26(b)(4)(B) and (C) and the 2010 Advisory Committee Note.").[14]

25 _____

26 ██ ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28     [14] Courts also routinely prevent a party from introducing evidence at trial about issues into which the party blocked discovery during a deposition.  *See, e.g.*, *Paradigm Alliance, Inc. v.*

1    Sony unjustifiably instructed Clech not to answer numerous questions falling squarely

2    within the scope of permissible expert discovery:

3         • "[T]he opinions to be offered by the expert or the development, foundation, or basis

4    of those opinions." ███████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████

6    █████████████████████████████████████████████████████████████████████

7    █████████████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████

14        • "[A]lternative analyses, testing methods, or approaches to the issues on which they

15   are testifying, whether or not the expert considered them in forming the opinions expressed."

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████

22   █████████████████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████████████████████████████

24

25   *Celeritas Techs., LLC*, 722 F. Supp. 2d 1250, 1271-72 (D. Kan. Jul. 2, 2010) (precluding
     testimony from witness who was instructed not to answer during deposition "a number of
26   questions concerning this action" based on improper privilege instructions); *Allan Block Corp. v.
     Cnty. Materials Corp.*, No. 05-2879JNE/JJG, 2009 WL 1955588, at *14-15 (D. Minn. Jul. 6,
27   2009) (excluding testimony from witness based on instructions not to answer at deposition);
     *Galaxy Comp. Servs., Inc. v. Baker*, 325 B.R. 544, 559-60 (E.D. Va. 2005) (limiting scope of trial
28   testimony to exclude issues on which deponent was instructed not to answer deposition questions).

1 ███████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 █████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████

7 ███████████████████████████████████

8      •      Communications between expert and counsel that "identify assumptions that the

9 party's attorney provided and that the expert relied on in forming the opinions to be expressed."

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ███████████████████████████████

15      •      Communications between expert and counsel that "identify facts or data that the

16 party's attorney provided and that the expert considered in forming the opinions to be expressed."

17 ██████████████████████████████████████████████

18 █████████████████████████████████████████████████

19 ██████████████████████████████████

20      •      Notes.  ██████████████████████████████████

21 ███████████████████████████████████

22    ████████████████████████████████████████████

23 ██████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ██████████████████████████████████████████████████

26 ██████████████████████████████████████████████████

27

28

1 ███████████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3       As Rule 26(b)(4)(C) and the Advisory Committee Notes make clear, the above questions

4 were clearly permissible expert discovery.  Furthermore, Tessera's questions went to the heart of

5 Clech's critique of the verifiability of the methods and results of Dr. Bravman's reverse-

6 engineering work.  They also bore directly on Clech's credibility, because, among other reasons,

7 ███████████████████████████████████████████████████████████

8 ████████████████████████████████████████████ Tessera was entitled to

9 learn whether Clech was aware of fundamental facts regarding his opinions, but Sony

10 impermissibly quashed that inquiry.  Clech should therefore not be permitted to testify and his

11 reports should be stricken.

12       **C.       The Court Should Award Tessera Its Reasonable Expenses Caused By Sony's Failure To Comply With The Court's Discovery Orders.**

13       Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above [in Rule

14 37(b)(2)(A)], the court *must* order the disobedient party, the attorney advising that party, or both to

15 pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with the

16 court's discovery orders], unless the failure was substantially justified or other circumstances make

17 an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  Sony's failure to

18 comply with the Court's orders caused Tessera to incur, among other expenses, hundreds of

19 thousands of dollars related to the purchase and disassembling of 150 products. Ex. 22 ¶¶ 79, 94;

20 Ex. 23 at 147:22-25.  Had Sony complied with the orders, Tessera would not have had to

21 commission and pay for Dr. Bravman's extensive reverse-engineering project.  Sony should be

22 ordered to reimburse Tessera $640,000, which is just a portion of the expenses Tessera incurred as

23 a result of Sony's misconduct.  McCormick Decl. ¶ 9.

24 Dated:  August 6, 2013                           Respectfully submitted,
                                                      IRELL & MANELLA LLP
25                                                    By:    /s/ Melissa R McCormick
26                                                          Melissa R. McCormick
                                                          Attorneys for Plaintiff Tessera, Inc.
27

28 ─────────────────────
   ■ ████████████████████████████████████████████████████████

1 | **<u>PROOF OF SERVICE</u>**

2 |      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1800 Avenue of the Stars, Suite 900,

3 | Los Angeles, California 90067-4276.

4 |      On August 6, 2013, I served the foregoing document described PLAINTIFF TESSERA, INC.'S MOTION FOR SANCTIONS AGAINST DEFENDANT SONY CORPORATION FOR

5 | NON-COMPLIANCE WITH DISCOVERY ORDERS on each interested party, as follows:

6 |                     Aaron W. Moore
  |                     Foley & Lardner LLP

7 |                     111 Huntington Avenue
  |                     Suite 2600

8 |                     Boston, Massachusetts  02199-7610
  |                     Email: amoore@foley.com

9 |

10 |    ☒       (BY ELECTRONIC MAIL)  I caused the foregoing document to be served electronically by electronically  mailing a true and correct copy through Irell &

11 | Manella LLP's electronic mail system to the e-mail address(es), as set forth above, and the transmission was reported as complete and no error was reported.

12 |

  |    ☒       (BY FILE TRANSFER PROTOCOL)  I caused the foregoing document to be

13 | served electronically by placing a true and correct copy on a file transfer protocol (FTP) site and emailing access information for the site to the email

14 | address as set forth above, and the transmission was reported as complete and no error was reported.

15 |      Executed on August 7, 2013, at Los Angeles, California.

16 |

17 |      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

18 |            Ian Washburn
  |           (iwashburn@irell.com)               /s/ Ian Washburn

19 |           (Type or print name)                (Signature)

2708235