*E-Filed: October 18, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC.,<br>a Delaware Corporation,<br><br>          Plaintiff,<br>   v.<br><br>SONY CORPORATION,<br>a Japanese Corporation,<br><br>          Defendant.<br>_____/ | No. C11-04399 EJD (HRL)<br><br>**ORDER (1) GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS; (2) DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S MOTION FOR SANCTIONS; AND (3) GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM**<br><br>**[Re: Docket Nos. 205, 215, 323]** |

      Tessera sues Sony for unpaid royalties on semiconductor packages it claims are owed pursuant to a licensing agreement, as found by an independent auditor. Presently before the Court is Tessera's motion for sanctions for Sony's failure to disclose information it was ordered to produce and subsequently providing the withheld information to its own experts, as well as for Sony's improper instructions to an expert witness not to answer questions at its deposition. Tessera seeks the exclusion of evidence and witness testimony in addition to monetary sanctions. Sony opposes the motion for sanctions and filed its own motion to strike Tessera's motion for sanctions. Both parties have moved to file parts of their papers and exhibits under seal. Upon consideration of the

moving and responding papers[1] as well as the arguments of counsel, this Court grants in part the motion for sanctions and denies the motion to strike.

## BACKGROUND

Tessera alleges that by failing to produce in discovery documents it later provided to its experts, Sony was in direct violation of this Court's Orders on Discovery Dispute Joint Reports Two and Four ("DDJR #2" and "DDJR #4"). In the Order on DDJR#2, this Court stated, in relevant part, "To the extent that Sony has information requested by the Auditor, but not provided to the Auditor, Sony is ordered to produce that information." Order on DDJRs 1-4 and Motion to Strike ("Order on DDJR #2"), Dkt. 72, at 2. The Order on DDJR #4 provided that "Sony shall produce responsive documents/information for all Sony products that contain the technology, including third-party-supplied off-the-shelf technology." Order on DDJR #4, Dkt. 83, at 2-3. The "technology" referred to "packages at issue," which are packages with certain specifications, including that the "thickness of the reinforced substrate is .36mm or less." DDJR #4 Supplement, Dkt. 77, at 2.

While Sony initially argued that it should not be required to produce the information related to third party products because it would be too burdensome, it later asserted that it did not have the information. Tessera then resorted to hiring an expert, Dr. John Bravman, to reverse-engineer, at great expense, a wide array of Sony products to determine whether they contained packages at issue. Bravman found that many Sony products contained packages at issue, including Sony-branded packages on which it had not paid royalties. Based on this sample, Bravman estimated the total number of Sony products containing packages at issue, and Tessera's damages expert, Julie Davis, relied on this estimate to calculate royalties still owed. Davis also resorted to publically available data to calculate damages because Sony failed to provide sales data on products containing packages at issue.

To counter Bravman's report, Sony's expert, Dr. Jean-Paul Clech, purported to show that many of the packages Bravman reported as packages at issue did not meet the definition because they had a substrate thickness greater than .36mm. In his report, Clech relied on documents given to

---

[1] Following the hearing, Sony moved for leave to file a supplemental memorandum in opposition to Tessera's motion for sanctions, which Tessera opposed. The Court grants the motion and will consider the supplemental memorandum.

1 him by Sony that provided the technical specifications of the chips in question and showed that the
2 packages were designed with substrate thicknesses greater than .36mm.

3 Another Sony expert, Dr. Kenneth Serwin, purported to show that the array of Sony products
4 Bravman reverse-engineered were not a representative sample of Sony products sold during the
5 lifetime of the agreement, and consequently the estimates of Tessera's experts based on that sample
6 were inaccurate. Serwin relied on sales data provided by Sony purportedly showing the specific
7 number of units of each model sold. Serwin also used this information to compute Sony's own
8 damages estimation.

## DISCUSSION

I. Sony's Motion to Strike

As an initial matter, the Court addresses Sony's motion to strike Tessera's motion for sanctions on the grounds that it is untimely under Local Rule 7-8 and not in compliance with Federal Rule of Civil Procedure 37. Sony raises the same arguments in opposition to Tessera's motion for sanctions. Local Rule 7-8 provides that a "motion for sanctions . . . must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." Here, Tessera first learned of the documents Sony withheld in April when Sony provided its expert reports. The experts were deposed in May and transcripts and errata were received in June and July. Tessera also opposed Sony's untimely summary judgment motion in July, and filed the instant motion in early August. Tessera's decision to conduct a thorough investigation of the situation by deposing Sony's experts before bringing the motion was a reasonable one, and further delay caused by its opposition to Sony's motion for summary judgment does not count against it. Thus, Tessera's motion complies with Local Rule 7-8.

Sony also moves to strike the portion of Tessera's motion for sanctions based on improper instructions to Clech because Rule 37 requires violation of a court order, and it is not alleged that one applies here. However, the Court has inherent authority independent of Rule 37 to award sanctions for discovery violations. *See Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("This circuit has recognized as part of a district court's inherent powers the broad discretion to make discovery and evidentiary rulings conducive to the

1  conduct of a fair and orderly trial.") (internal quotations omitted). Thus, Sony's motion to strike is
2  denied, and the same arguments raised in opposition to Tessera's motion for sanctions are likewise
3  rejected.

4  II.   Tessera's Motion for Sanctions

5        A. Technical Documents

6  Tessera alleges that the schematic documents provided to Clech should have previously been
7  produced to it pursuant to the Court's Order on DDJR #2 because they were requested by the
8  Auditor but not produced. However, the Auditor did not specify the packages about which Sony
9  was withholding information. Thus, it is unknown whether the information later provided to Sony's
10 experts was specifically requested by the Auditor, and the Court does not find that Sony violated the
11 Order on DDJR #2.

12 As for the Order on DDJR #4, Tessera argues that, as evidenced by Bravman's report, the
13 technical documents provided to Clech related to products containing packages at issue and should
14 have been produced. Sony counters that the documents themselves show that they do not meet the
15 specifications of packages at issue and thus were not discoverable. Whether the technical
16 documents were subject to the Order on DDJR #4 depends on two issues over which the parties
17 disagree: (1) what is the proper measurement of the package substrate, and (2) whether Sony was
18 required to disclose information related to products which it had determined did *not* contain
19 packages at issue.

20 Only packages that have a reinforced substrate greater than .36mm meet the definition of a
21 package at issue. Tessera claims that Sony is improperly adding the thickness of the solder mask
22 layer in its measurement of the substrate, even though Sony's own expert reportedly admitted in his
23 deposition that the solder mask does not serve to reinforce the substrate. On the other hand, Sony
24 claims that this has been the standard of measurement consistently used by the parties throughout
25 the lifetime of the agreement, until Tessera and Bravman deviated from it to include only the *core* of
26 the substrate in its measurement. Neither side's argument is so unreasonable that this court can now
27 determine what constitutes the proper measurement of the reinforced substrate of a semiconductor
28 package. The issue is too technical and potentially determinative of the merits of the case to be

4

decided at this stage. Thus, the Court cannot definitively state that the technical documents related to packages at issue and that their disclosure was required by the Order on DDJR #4.

Regardless, Tessera claims that Sony was required to disclose information sufficient to allow Tessera to make the determination as to whether a product contained a package at issue. However, the DDJR #4 Supplement submitted by the parties specifically states that the definition of package at issue included both (1) packages that meet certain specifications, and (2) packages for which Sony has not determined whether it meets these specifications. Furthermore, Tessera noted that the latter category was "necessary to ensure that Sony does not seek to evade its . . . obligations by purporting not to know what it is selling. Sony can and should ascertain which packages meet the definition . . . . If Sony is unwilling to do that, then at a minimum it needs to provide Tessera with the information necessary for Tessera to make that determination." DDJR #4 Supplement at 2, n.3. Thus, the information Sony provided to Clech was not information related to products that contain packages at issue because Sony, as demanded by Tessera, independently made the determination that they were not packages at issue. Accordingly, Sony did not violate the Court's Order on DDJR #4 by failing to produce the technical documents.

B. Sales Data

In the parties' DDJR #4 Supplement, Tessera specifically requested the quantity of end products containing packages at issue sold, transferred, or used internally by Sony. The Court then ordered Sony to "produce responsive documents/information for all Sony products that contain [packages at issue]." Order on DDJR #4, at 2. Sony did not produce information about the quantity of end products as requested by Tessera and ordered by the Court, but it subsequently provided sales data to Serwin including this exact information. Thus, Sony failed to produce documents in its possession to Tessera in violation of this Court's Order on DDJR #4.

"If a party . . . fails to obey an order to provide or permit discovery . . . the court where action is pending may issue further just orders[which] may include . . . prohibiting the disobedient party from . . . introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). Accordingly, Tessera requests that the Court order exclusion of evidence and testimony from Serwin based on the withheld sales data. However, that sanction seems to this Court to be

5

1 disproportionate to Sony's offense. Tessera's prejudice is that the jury may tend to give more credit
2 to the conclusions of Sony's damages expert, who used actual internal sales data, than to Tessera's
3 expert, who used publically available data. This prejudice can be cured by an adverse inference
4 instruction.

Rule 37(c) provides that when a party fails to disclose or supplement an earlier response, a court "may inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(B). Although this is not a specific sanction listed under Rule 37(b) for failure to comply with a court order, the Court believes it is a "further just order." *See* Fed. R. Civ. P. 37(b); *see also Unigard Sec. Ins. Co.*, 982 F.2d at 368 (9th Cir. 1992) ("This circuit has recognized as part of a district court's inherent powers the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.") (internal quotations omitted). Accordingly, this Court recommends that the jury be instructed as follows:

> During pretrial discovery, the Court ordered Sony to produce its sales data to Tessera so Tessera could use it to arrive at a calculation of claimed damages. Sony did not comply with that order, and Tessera had to use publically available Sony sales information to calculate its claimed damages. Sony later gave its sales data to its own expert who used it to calculate a measure of damages different than Tessera claims. You may infer that Sony did not turn over its sales data to Tessera, as it should have, because it believed the actual, complete sales data would have helped Tessera and hurt Sony.

### C. Clech's Deposition

Tessera asserts that Sony's counsel improperly instructed Clech not to answer more than fifty questions at his deposition. As discussed above, Sony's conduct was not in violation of a court order and Rule 37 does not apply. Tessera asks the Court to invoke its inherent authority to award sanctions for Sony's improper instructions. Sony argues that its instructions were proper pursuant to Rule 26(b)(4)(B), which protects drafts of expert reports as work product, and Rule 26(b)(4)(C), which protects communications between a party's attorney and expert witness. However, Rule 26(b)(4)(C) expressly does not protect communications to the extent that they identify facts, data, or assumptions. As these rules were added as part of the 2010 amendments, little case law exists to provide guidance as to the scope of the protection they afford. Predictably, Tessera's interpretation

provides limited protection with far-reaching exceptions, while Sony reads the rules to provide broad protection with narrow exceptions.

Rule 26(b)(4)(B) extends work product protection to "drafts of any report or disclosure required under Rule 26(a)(2) [Disclosure of Expert Testimony], regardless of the form in which the draft is recorded." Sony interprets this rule as prohibiting discovery related to the *drafting* of the report, and instructed Clech not to answer any questions relating to the report's preparation. However, the rule makes clear that the protection applies only to the draft itself in its recorded form, not any information related to the preparation of the report. Thus, Sony's instructions not to answer such questions as, for example, whether Clech typed the report himself, were improper. However, it does not appear that these instructions prevented Tessera from fully exploring Clech's opinion, the bases for his opinions, and his credibility.

Rule 26(b)(4)(C) similarly protects as work product:

> communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Tessera points to the Advisory Committee Notes on the 2010 Amendments to support its narrow interpretation of the protection provided under this rule.

> Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. . . . Counsel are also free to question expert witnesses about alternative analyses, testing methods, or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the opinions expressed.

Tessera reads these notes as if they provide additional exceptions, that attorney-expert communication is discoverable to the extent it involves alternative analyses, testing methods, etc. But the text of the rule and other portions of the committee notes make clear that the protection is broad, and the exceptions are limited. "Although attorney-expert communications are generally protected by Rule 26(b)(4)(C), the protection does not apply to the extent the lawyer and the expert communicate about matters that fall within three exceptions. But the discovery authorized by the

7

exceptions does not extend beyond those specific topics." Fed. R. Civ. P. 26(b)(4) Advisory Committee Notes on 2010 Amendments. Furthermore, the exceptions are also very limited in their application. "The exception applies only to communications 'identifying' the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected." *Id.* Here, Sony even qualified some its instructions not to answer to account for the exceptions, telling Clech not to answer except to the extent the question calls for an assumption on which he is relying for his report. Thus, the Court does not find that Sony's counsel improperly instructed Clech not to answer questions as they pertained to his communications with counsel.

Because Sony's instructions related to attorney-expert communication were proper, and its improper instructions not to answer questions related to the drafting of the report did not prejudice Tessera, the Court will not award Tessera sanctions.

III. Costs

In addition to evidentiary sanctions, Tessera also requests an award of reasonable expenses caused by Sony's failure to comply with the Court's orders pursuant to Fed. R. Civ. P. 37(b)(2)(C). Specifically, it requests $640,000 for Bravman's reverse-engineering project. However, the Court found that Sony only improperly withheld sales data, not technical documents that would have eliminated the need for Bravman's project. Tessera did not request expenses specifically related to the withholding of the sales data, and the Court does not think that it could reasonably demonstrate what, if any, additional costs were incurred by having Davis rely on public information rather than Sony-provided sales data. Costs ("expenses") are denied.

CONCLUSION

1. Sony's Motion to Strike Tessera's Motion for Sanctions is denied;
2. Tessera's Motion for Sanctions is
    a. Granted to the extent the Court recommends an adverse inference instruction to the jury about Sony's failure to produce sales data, and
    b. Otherwise denied.

8

**IT IS SO ORDERED.**

Dated: October 18, 2013



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-04399 Notice will be electronically mailed to:**

Aaron William Moore     amoore@foley.com, cdownie@foley.com

Benjamin W. Hattenbach     bhattenbach@irell.com

Brandon Marsh     bmarsh@irell.com

Eileen Regina Ridley     eridley@foley.com, lsilva@foley.com, tschuman@foley.com, wdelvalle@foley.com

Ian Robert Washburn     iwashburn@irell.com

Lucas Isaac Silva     lsilva@foley.com

Matthew Burt Lowrie     mlowrie@foley.com

Melissa R McCormick     mmccormick@irell.com

Morgan Chu     mchu@irell.com

Richard William Krebs     rkrebs@irell.com, cmedina@irell.com, rbrown@tessera.com, Slee@irell.com, sveeraraghavan@tessera.com, tegarcia@tessera.com

Ruben J. Rodrigues     rrodrigues@foley.com

Victor de Gyarfas     vdegyarfas@foley.com, LACA-LitigationDocket@foley.com

William Joseph Robinson     wrobinson@foley.com, LACA-LitigationDocket@foley.com, lsaptoro@foley.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**